UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| **FREDERICK MAWALLA** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **Civil No.: 1:07-cv-01538 (EGS)** |
| **v.** | : | |
| | : | **Oral Argument Requested** |
| **LINDA HOFFMAN** *et al.* | : | |
| | : | |
| **Defendants.** | : | |

### MOTION OF DEFENDANTS
### TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Linda Hoffman, Esquire and the law firm of Freilicher & Hoffman, P.C., by counsel and pursuant to Fed. R. Civ. P. 12 (b)(6), respectfully request that this Court dismiss plaintiff's Complaint in its entirety and with prejudice on several grounds.

First, plaintiff's legal malpractice claim is barred in its entirety by the expiration of the applicable statute of limitations. Second, any breach of fiduciary duty claim likewise fails as a matter of law because it is untimely, insufficiently plead and because of the absence of both a breach of legal duty and resulting injury. Finally, the entire Complaint fails to state a cause of action, as a matter of law, because plaintiff's alleged injury (his inability to obtain a visa, become a permanent resident and remain in this country) was not proximately caused by any alleged act or omission of his former immigration counsel.

In support of this Motion, defendants respectfully refer the Court to the attached Memorandum of Points and Authorities, which is incorporated by reference as if fully set forth herein.

WHEREFORE, defendants respectfully request the instant Motion be granted and that plaintiff's Complaint be dismissed in its entirety and with prejudice.

277501.3

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP

By:    */s/ Laura N. Steel*
       Laura N. Steel, Esquire (Bar No. 367174)
       Kathleen H. Warin, Esquire (Bar No. 492519)
       The Colorado Building, Suite 500
       1341 G. Street, N.W.
       Washington, D.C. 20005
       Tel.: (202) 626-7660
       Fax: (202) 628-3606
       *Counsel for defendants, Linda Hoffman and Freilicher & Hoffman, P.C.*

## CERTIFICATE OF SERVICE & ELECTRONIC FILING

I HEREBY CERTIFY that a true copy of the foregoing Motion to Dismiss, with Memorandum of Points and Authorities, Exhibits and proposed Order was served via electronic filing this 14th day of November 2007, to:

Matthew H. Simmons, Esquire
Simmons & Associates, Chartered
7347 Wisconsin Avenue
Suite 200
Bethesda, MD 20814

       */s/ Laura N. Steel*
       Laura N. Steel, Esquire

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| **FREDERICK MAWALLA** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **Civil No.: 1:07-cv-01538 (EGS)** |
| **v.** | : | |
| | : | **Oral Argument Requested** |
| **LINDA HOFFMAN** *et al.* | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OF POINTS & AUTHORITIES
## IN SUPPORT OF MOTION OF DEFENDANTS
## TO DISMISS PLAINTIFF'S COMPLAINT

Defendants, Linda Hoffman, Esquire and the law firm of Freilicher & Hoffman, P.C. (individually referred to respectively as "Ms. Hoffman" and "the firm," and collectively referred to as "defendants" or "former immigration counsel") submit this Memorandum of Points and Authorities in support of their Motion to Dismiss Plaintiff's Complaint and respectfully request that this Court dismiss the Complaint in its entirety and with prejudice.

## I.    INTRODUCTION

On August 20, 2007, plaintiff filed the instant two-count Complaint for legal malpractice (Count I) and breach of fiduciary duty (Count II) against defendants, his former immigration counsel (the pleadings will hereinafter be cited as "Compl. at __"). Plaintiff, a non-resident alien[1] from Tanzania, now seeks $1 million in compensatory damages stemming from the denial by the U.S. Citizenship and Immigration Service ("the Immigration Service") of his Application

---

[1] Throughout this Memorandum, the word "alien" is used because it is the term utilized in the immigration laws, statutes and regulations. An "alien" is a person who owes political allegiance to another country or government and is not a native or naturalized citizen. Examples of "alien" persons are: a legal alien, who is legally permitted to remain in the country which is foreign to him or her; a resident alien is one who has temporary or permanent residence in the U.S.; and a non-resident alien is a visitor with the legal right to visit the U.S. The Principal Alien is a nonimmigrant admitted to work exclusively for a foreign government international organization, or NATO in A, G or NATO status from whom family members derive their A, G or NATO status.

3

to Adjust Status to Permanent Resident, his inability to become a permanent resident of the United States and/or to adjust his immigration status, resulting in plaintiff leaving the country to Canada. Compl. at ¶¶ 1, 35, 38, 42, 51.

For the reasons set forth below, plaintiff's Complaint fails to state a cause of action under Fed.R.Civ.P. 12(b)(6) for several reasons. First, plaintiff's legal malpractice claim is barred by the expiration of the applicable statute of limitations. Second, any breach of fiduciary duty claim likewise fails as a matter of law because it is untimely, insufficiently plead and because of the absence of both a breach of a legal duty and resulting injury. Finally, the entire Complaint fails to state a cause of action, as a matter of law, because plaintiff's alleged injury (his inability to obtain a visa, become a permanent resident and/or remain in this country) resulted from his statutory ineligibility and was not proximately caused by any alleged act or omission of his former immigration counsel.

## II.    **PROCEDURAL HISTORY**

In order to place the legal issues in context and by way of historical background, the instant law suit represents a final last ditch effort by plaintiff to seek some relief from the denial by the Immigration Service of his Application to Adjust Status, which was denied by the United States Government because plaintiff no longer was employed by Intelsat, his former employer. Moreover, he had *no bona fide* offer of employment from a new employer in a same or similar occupation. The requirement of a valid or *bona fide* offer of employment by a sponsoring

277501.3

employer is one of the numerous specific regulatory prerequisites required to change one's immigration status for an employment based application.[2]

Having exhausted the administrative processes before the immigration agency, plaintiff (through successor counsel) filed in 2006 an action in this Court against the Government seeking administrative review of and to overturn the Immigration Service's denial determination[3] --- he sought the precise redress he now complains here he should have received, namely, a change in his status to permanent resident to allow him to remain in this country. *See Mawalla v. Chertoff, et al.,* Civil Action No. 06-584 (RMC)(January 5, 2007 Memorandum Opinion), attached as Exhibit 1. However, after considering the administrative record, the Honorable Rosemary Collyer granted the Government's Motion for Summary Judgment, finding that the Immigration Service's decision was legally sound and not arbitrary, capricious, or an abuse of discretion. Exhibit 1 at pp. 1, 10. This Order was not appealed and is now a final judgment. Exhibit 1.

Now that he has pursued, and lost, all available remedies to overturn the Government's denial of his attempt to become a permanent resident, he brings this legal malpractice case, which also fails as a matter of law.

## III.   FACTUAL BACKGROUND

Plaintiff's immigration saga commenced in connection with his former employment as a satellite engineer for Intelsat, one of the largest providers of fixed satellite and mobile

---

[2]  A citizen of a foreign country, wishing to enter the U.S., generally must first obtain a visa, either a non-immigrant visa for temporary stay or an immigrant visa for permanent residence. The type of visa required is defined by immigration law and relates to the purpose of the travel. Permanent resident status is conferred either through issuance of an immigrant visa by a U.S. consulate abroad (known as visa processing) or through approval of an adjustment of status application filed in the United States with the Immigration Service. Any unauthorized employment or period of unlawful stay in the U.S. bars the individual from adjustment of status. 8 U.S.C. §1255 (c)(2). If an alien adjusts his status in the U.S., he will cease being a G-4 visa holder upon submission of the adjustment application (I-485) to the Immigration Service. At this point, he and his applicable dependents will be permanent resident applicants until the application is approved (making them permanent residents).
[3]  Plaintiff filed the case under the Administrative Procedure Act, 5 U.S.C. §§ 7701-706 against the Director of Homeland Security (for the actions of its constituent agency) on March 30, 2006.

277501.3

commercial satellite services, where plaintiff worked from 1998 until late November 2002. Compl. at ¶¶ 2, 5, 15, 22. At the time of hire, plaintiff was a G-4 visa holder because he was an Intelsat employee (which, at the time, made him eligible for the semi-diplomatic G-4 visa available to foreign nationals who are employed by an international organization).[4] Compl. at ¶ 16; *see also*, 22 C.F.R. § 41.24; 8 C.F.R. § 214.2(g)(1).[5]

In July 2001, when Intelsat privatized and converted to a U.S. corporation (and became Intelsat Global Service Corporation),[6] it agreed to sponsor those of its G-4 visa holder employees who wished to change their immigration status and apply for normal immigrant visas, or "green cards," which would allow those employees to live in the United States permanently. Compl. at ¶¶ 3, 17. Intelsat agreed to reimburse the employees for the filing costs and attorneys' fees for those individuals who elected to convert their immigration status.[7] Compl. at ¶¶ 3, 17. The Company provided the name of one of the most experienced and knowledgeable immigration attorneys in this area, defendant, Linda Hoffman of the law firm of Freilicher & Hoffman, P.C., who specializes in this complex area of the law. Compl. at ¶ 11. In 2001, Mr. Mawalla

---

[4] International organizations are defined by U.S. Treaty and include entities such as The World Bank, United Nations, The Inter-American Development Bank, The Organization of American States and The International Monetary Fund. *See* 22 U.S.C. § 288. G-4 visas are administered by the Office of Protocol of the United States Department of State (not the Immigration Service), 22 C.F.R. §41.24, 8 C.F.R. § 214.2(g)(1) ---- contrary to the allegations in plaintiff's Complaint, there is no limit on the number of G-4 employees an international organization can employ. Rather, international organizations such as The World Bank, for example, employ thousands of individuals who hold G-4 status.

[5] Copies of portions of the relevant statutory provisions in numerical order are collectively attached as Exhibit 2 for the Court's ease of reference. The U.S. Code provisions are provided followed by the Code of Federal Regulations provisions.

[6] After doing so, Intelsat was no longer an "international organization," and was therefore only able to continue to employ G-4 visa holders pursuant to special legislation by Congress. *See* 22 C.F.R. § 41.24.

[7] Although not material to this Motion, Intelsat offered its employees the choice of whether to remain on G-4 status or apply for a "green card," and for those who chose the latter option, the Company agreed to pay for defendants' services as immigration counsel. Intelsat employees were advised that they were eligible to concurrently file their adjustment of status applications in 2002. Intelsat further informed its employees that the Company would not pay for legal or filing fees for employees who decided to file their adjustment of status applications in 2002 (but only for those employees who waited until after January 2003). After being informed of the required $5,580 for legal and filing fees, plaintiff chose not to file at his own expense. Mr. Mawalla decided to wait until 2003 to file his I-485 to avail himself of Intelsat's offer to pay his legal and filing fees. There was no reason to be concerned about the timing of this filing since plaintiff could always file a Form I-485 later during his employment.

6

requested that defendants assist him in connection with an attempt to convert his G-4 visa to a green card. Compl. at ¶¶ 3, 17, 18.

Under the complicated and intricate immigration scheme, in order to obtain an immigrant visa, an alien *must be sponsored by a United States citizen or an employer*, and only an employer or its representative can sponsor an employee if the employer intends to retain the alien indefinitely. The application process involves multiple phases --- the law does not guarantee an alien's right to obtain an immigrant visa and an alien cannot work in the United States without the appropriate authority from the Immigration Service to do so. Exhibit 1 at pp. 6-7, 8-10.

The first step is to obtain an Alien Employment Certification from the Department of Labor. *See* 8 U.S.C. § 1182 (a)(5)(A) and 20 C.F.R. § 656.1. Once certified, the employer petitions the Immigration Service for an immigrant visa and files an I-140 Immigrant Petition for Alien Worker ("I-140 Petition"), describing the special training or talent of a specific alien and the paucity of available similar workers in the United States as reflected by the labor certification. *See* 8 U.S.C. §§ 1153(b)(2) and 1154(a)(1)(F); 8 C.F.R. § 204.5. Upon approval of an I-140 Petition, the named alien receives a visa which allows him to work *for the named employer*. An alien with an I-140 visa can then petition for adjustment of his status to that of permanent resident, through a Form I-485. *See* Exhibit 3.

Intelsat filed an Application for Alien Employment Certification on behalf of plaintiff (who had unique, specialized training as a satellite engineer) in connection with its sponsorship of its employees; the application was certified by the Department of Labor on March 18, 2002. Compl. at ¶ 18. Thereafter, on May 15, 2002, Intelsat filed the I-140 Immigrant Petition on Mr. Mawalla's behalf pursuant to Section 203(b)(2) of the Immigration and Nationality Act. Exhibit 1 at pp. 1-2; Compl. at ¶ 20. However, while the lengthy immigration process was pending,

7

Intelsat discharged plaintiff from its employment in late November 2002, due to a reduction in force ("RIF"). Compl. at ¶ 22. When plaintiff's employment was terminated, his application for permanent residency was in jeopardy because of the loss of his position.

At this time, recognizing the potential hardship to its foreign national employees, Intelsat informed those employees who were subject to the RIF that, because of the termination, they would likely require legal advice on immigration matters. Compl. at ¶ 23. The Company agreed to reimburse each such employee up to $750 towards legal fees on such matters. *Id*. On December 20, 2002, plaintiff met with Ms. Hoffman to discuss any potentially available options for remaining in the United States now that he was no longer employed with Intelsat; thereafter, he executed a retainer agreement with defendants on January 23, 2003.[8] Compl. at ¶¶ 25, 26.

After the November 2002 RIF, plaintiff was no longer eligible for adjustment of status since he was pursuing an employment-based Immigrant Petition. Once terminated, plaintiff had no basis upon which to file an adjustment of status application – by virtue of the RIF, Intelsat did not intend to continue to sponsor him. Therefore, under the immigration law, plaintiff was not eligible to file an employment-based application for adjustment of status (Form I-485) since an

---

[8]    As of the time of the consultation, as a G-4 visa holder, plaintiff had a 60-day grace period after termination either to change his status to another non-immigrant category or leave the United States. Previously, defendants represented plaintiff only as an employee of Intelsat; after the RIF, defendants were representing him individually. When Mr. Mawalla decided to retain defendants to assist him with the change of status, he was sent a retainer agreement on December 30, 2002. However, plaintiff did not execute the agreement until January 23, 2003, several days before his grace period ended. Ms. Hoffman immediately dropped all other work and focused on preparing and filing his change of status application, which was done the following day, just barely within the 60-day grace period.

alien must demonstrate his eligibility for this status *at the time of filing*[9] and, at the time of filing

the I-485, must provide the Immigration Service certain "initial evidence."[10]

An alien is statutorily ineligible to file an adjustment of status application based on an

offer of employment that has been withdrawn by the sponsoring employer or where the

employee has been terminated from that employment. For an employment-based case, the Form

I-485 specifically requests a supporting "employment letter" as set forth in the instructions:

> If your adjustment of status application is related to an
> employment based visa petition (Form I-140), you must submit a
> letter on the letterhead of the petitioning employer *which confirms*
> *that the job on which the visa petition is based is still available to*
> *you.* The letter must also state the salary that will be paid.

Exhibit 3, Form I-485 at p. 3 (emphasis added).

From the time defendants were retained to explore the potential post-RIF options

regarding plaintiff's immigration status (in January 2003) and throughout the course of their

legal representation as immigration counsel (through the end of 2003)[11], plaintiff did *not* have a

sponsoring employer or substitute qualifying employment in the same or similar occupation,

which might allow for adjustment of his status. Indeed, the Complaint does not aver otherwise.

Compl., *passim*. To have pursued an I-485 application without the knowledge or support of the

---

[9] United States Code, Title 8, Chapter 12, Subchapter II, Part V, § 1255 provides that "...the status of any other alien having an approved petition for classification under subparagraph (A)(iii), (A)(iv), (B)(ii), or (B)(iii) of section 1154 (a)(1) of this title ... may be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, *(2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence,* and (3) an immigrant visa is immediately available to him at the time his application is filed. 8 U.S.C. § 1255 (emphasis supplied); *see also* 8 U.S.C. §1255 (c)(2)(precluding an alien from seeking an adjustment "who is in unlawful immigration status *on the date of filing the application* for adjustment of status").

[10] For the Court's ease of reference, a sample copy of Instructions and Forms I-485, I-140 and I-539 are attached collectively as Exhibit 3. The instructions to Form I-485, set forth on page 3, outline the specific statutory requirements.

[11] The Complaint alleges that plaintiff discharged defendants in "late 2003," Compl. ¶ 28, 20, although, in point of fact, defendants served as counsel through July, 2003 at which time the relationship was terminated. However, this factual clarification makes no material difference to the dispositive issues raised in this Motion since, even accepting the averments contained in the pleadings, the claims are time-barred.

9

previously sponsoring employer would be unethical, improper, and unlawful. *See* Immigration

and Naturalization Act, § 274C(a)(5) *Penalties for Document Fraud*; 8 U.S.C. § 1324c(f).[12]

As a foreign national, plaintiff had no lawful means to remain in the U.S. after the

November 2002 RIF. To try to obtain additional time to allow plaintiff to locate substitute

qualifying employment (to make him eligible for a non-immigrant H-1B visa[13]), defendants filed

an Application to Extend/Change Non-Immigrant Status (Form I-539) on behalf of Mr. Mawalla

in early 2003 and applied for a B-2 temporary visitor's visa. Compl. at ¶ 27.[14] Plaintiff needed

the B-2 temporary visa to legitimize remaining in this country after the expiration of his G-4 visa

upon the loss of employment. Had it been granted, a B-2 visitor's visa would have afforded

plaintiff only an additional six months to stay in the country *as a visitor*, without the ability to

---

[12] Section 274C of the Immigration and Nationality Act prohibits any person from filing or assisting another to file an application with the Immigration Service for which they are not eligible. Subsection (a)(5) *Penalties for Document Fraud* provides as follows: (a) It is unlawful for any person or entity knowingly .... (5) to prepare, file, or assist another in preparing or filing, any application for benefits under this Act, or any document required under this Act, or any document submitted in connection with such application or document, with knowledge or in reckless disregard of the fact that such application or document was falsely made or, in whole or in part, does not relate to the person on whose behalf it was or is being submitted. "Falsely make" is defined at 8 U.S.C. § 1324c(f) as: to prepare or provide an application or document with knowledge or in reckless disregard of the fact that the application or document contains a false, fictitious, or fraudulent statement or material representation, or has no basis in law or fact, or otherwise fails to state a fact which is material to the purpose for which it was submitted. Since plaintiff did not have the statutorily required job offer, no employment-based adjustment of status application could have been filed after he was terminated from Intelsat without violating the prohibitions of § 274C(a)(5).

[13] The H-1B is a non-immigrant visa category under Section 101(a)(15)(H) that allows domestic employers to seek temporary help from skilled foreigners who have the equivalent of a U.S. Bachelor's Degree education. H-1B employees are employed temporarily in a job category that is considered by the Immigration Service to be a "specialty occupation" --- one that requires theoretical and practical application of a body of specialized knowledge along with at least a bachelor's degree or its equivalent (such as architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, among others). Under current law, an alien can be in H-1B status for a maximum period of six years at a time; thereafter, an alien must typically remain outside the country for one year before another H-1B petition can be approved. H-1B visas are employer-specific, and aliens may only work for the petitioning employer and only in the H-1B activities described in the petition. An alien may change H-1B employers without affecting status, but the new H-1B employer must file a new Form I-129 petition for the alien before he or she begins working for the new employer. However, if a company change means that the alien is working in a capacity other than the specialty occupation upon which the petition was based, it is a status violation. Only the alien's H1B sponsor (employer) can file a visa application.

[14] Although not material to the instant motion, the Complaint incorrectly sets forth the date of the filing of Form I-539, which was not March 2003, but rather was properly filed with the Immigration Service on plaintiff's behalf on January 27, 2003 as evidenced by Form I-797C *Receipt Notice* from the agency.

work or earn a living. *See* 8 C.F.R. § 214.2(b). Because of its limited duration, the B-2 visa

request, had it been approved, would have expired on July 27, 2003, at which time Mr. Mawalla

would be required to leave the U.S.[15]

Ultimately, by the time the B-2 visa was denied in July 2003, plaintiff had already

remained in the country for an additional seven months beyond his employment termination date.

Despite defendants' efforts to request this change of visitor status, including administrative

challenges, Mr. Mawalla's I-539 change of status request was finally denied by the Immigration

Service in the Summer of 2003.[16] Compl. at ¶ 27. Plaintiff, in effect, got the additional six

months that he had originally requested. At that point, the Immigration Service determined that

plaintiff would not be able to remain in the country on a visitor's visa --- moreover, his I-140

application could not be pursued because he was no longer employed by Intelsat and lacked an

offer of qualifying substitute employment. [17]

According to the pleadings, later in 2003, plaintiff discharged defendants as counsel and

retained two other immigration attorneys, each of whom attempted unsuccessfully to effectuate a

change in his immigration status. Compl. at ¶¶ 28, 30, 32. Moreover, because plaintiff had not

---

[15] Based upon the phrasing of certain allegations, which refer to two separate and distinct matters, the Complaint is misleading since a reader who is unfamiliar with immigration practice would assume that the B-2 visitor's visa issue is related to Intelsat's actions in 2004 officially withdrawing the employer-sponsored I-140 --- *it is not*. The green card matter has nothing to do with the B-2 visitor's visa issue. *See e.g.,* Compl. at ¶7.

[16] The I-539 was ultimately denied by the Immigration Service on July 9, 2003 because the U.S. Department of State, which controls the admission of diplomats and international organization employees (including G-4s) into the United States, would not recommend Mr. Mawalla's change of status from G-4 to B-2 visitor. The Immigration Service, in turn, will not change a G-4 to another non-immigrant status until it confirms that the G-4 has been terminated from the State Department's records. To confirm the termination, the Immigration Service sends the applicant a Form I-566 and asks that the Department of State confirm the termination and endorse the Form I-566. In March 2003, defendants sent another Form I-566 to plaintiff for his signature so that they could include it with an appeal to the State Department. On appeal, defendants asserted that there were compelling reasons for plaintiff to remain temporarily in the U.S. due to a family illness. Notwithstanding Ms. Hoffman's multiple and extensive communications and zealous advocacy, the Department of State saw no reason to allow Mr. Mawalla additional time in the United States. The State Department made it clear that it would not endorse his application and, without State's endorsement, the B-2 visitor's application was not approvable.

[17] Alternatively, G-4s who were eligible for another nonimmigrant visa could apply at a U.S. consulate abroad and return to the U.S. if the visa is granted. 22 CFR § 41.11.

11

located substitute employment in his industry ("in the same or similar occupation"), there was no available potential 'employer' to sponsor him for a "green card," as required under the immigration laws. Federal law may have permitted plaintiff to adjust his status to that of permanent resident *if* he could establish that he had a *bona fide* offer of employment from a new employer "in a same or similar occupation." *See* Exhibit 1 at 2; Section 106(C) of the American Competitiveness in the Twenty-First Century Act of 2002, codified at 8 U.S.C. §1154(j). Plaintiff was unable to demonstrate such an offer.

Successor counsel's efforts to adjust plaintiff's status were ultimately rejected on March 11, 2005. Exhibit 1 at p. 2.[18] However, it is entirely unclear from the pleadings or the *Mawalla* Opinion how, as of 2004, plaintiff could have conceivably been eligible to file an application for adjustment of status. Mr. Mawalla could not legitimately pursue the prior I-140 application because he did not have an offer of employment from Intelsat which was required *at the time of filing* (and he had been terminated nearly two years earlier). The Immigration Service specifically found that the I-140 Petition that was originally filed to change plaintiff's status had been "automatically revoked" because plaintiff was no longer employed by Intelsat, a prerequisite to the filing for a green card. Exhibit 1 at p. 2; 8 C.F.R. § 205.1(a)(3)(iii)(c).

Additionally, based upon the rejection of his request for change of status to that of a B-2 visitor (in the Summer of 2003), plaintiff's visa had expired and he was out-of-status in the U.S. and therefore ineligible to file an adjustment of status because any unauthorized employment or

---

[18] The history reveals that plaintiff, though successor counsel made multiple and repeated attempts to become a permanent resident, all of which were unsuccessful. On April 24, 2004, he filed another Form I-485 Application to Adjust Status to Permanent Resident, and on March 11, 2005, the Immigration Service issued a Notice of Intent to Deny because of his ineligibility. Exhibit 1 at p. 2. After considering a subsequent submission from Mr. Mawalla, the application was denied on June 29, 2005. *Id.* Thereafter, plaintiff filed a Motion to Reopen and/or Reconsider on July 18, 2005, which was denied by the Immigration Service on August 29, 2005 because Mr. Mawalla had failed to provide new facts or demonstrate that the decision was based on incorrect application of law. *Id.* at 3. A second Motion to Reopen/Reconsider was filed on September 27, 2005, and again denied by the Immigration Service on March 13, 2006 for the same reason. *Id.* at 3.

277501.3

period of unlawful stay in the U.S. bars an individual from adjustment of status. 8 U.S.C. §1255

(c)(2)(precludes adjustment of status for an alien "who is in unlawful immigration status *on the*

*date of filing the application* for adjustment of status"). In denying his application, the

Immigration Service does not appear to have addressed the latter issue. Exhibit 1, *passim*.[19]

Thereafter, plaintiff left the United States. Compl. at ¶ 38.

## III.    ARGUMENT

### A.    Legal Standard For Dismissal Under Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint will be dismissed for failure to state a claim

if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that

will entitle him to relief. *Perez v. Goldin,* 360 F. Supp.2d 12, 15 (D.D.C. 2003). When

evaluating a motion to dismiss, the courts must construe the complaint in the light most favorable

to the plaintiff and must accept the complaint's allegations as true. *Id.*

Generally, courts may not look outside the facts contained within the four corners of the

complaint when considering a motion to dismiss. However, it is well-settled that courts may

take judicial notice of matters of a general public nature, such as court records, without

converting a motion to dismiss into a summary judgment motion. *New v. Rumsfeld,* Case No.

96-0033, 2004 U.S. Dist. LEXIS 25605, *16 (D.D.C. December 22, 2004)(court considers

military court records in evaluating motion to dismiss); *Primorac v. Central Intelligence Agency,*

277 F. Supp. 2d 117, 119 (D.D.C. 2003) (holding that court "may take judicial notice of matters

of a general public nature, such as court records, without converting the motion to dismiss into

one for summary judgment."); *Veg-Mix Inc. v. U.S. Department of Agriculture,* 832 F.2d 601,

---

[19] Throughout the course of the legal representation, it was clear that plaintiff desperately wanted to prolong his stay in the United States and suggested that Ms. Hoffman file papers that she considered to be frivolous or without factual merit. Her views were confirmed by the subsequent history of Mr. Mawalla's immigration proceedings, which finally terminated unfavorably to plaintiff. Exhibit 1 at pp. 2-3, 10.

607 (D.C. Cir. 1987) ("[i]t is settled law that the court may take judicial notice of other cases including the same subject matter or questions of a related nature between the same parties."). "Among other things, a court may take judicial notice of the factual findings of another court as part of the public record." *New*, 2004 U.S. Dist. LEXIS at 19.

**B.      Plaintiff's Legal Malpractice Claim (Count I) Is Barred By The Expiration Of The Statute of Limitations**

A legal malpractice action must be brought within three years "from the time the right to maintain the cause of action accrues." D.C. Code § 12-301(8)(2007); *Knight v. Furlow*, 553 A.2d 1232, 1233 (D.C. 1989); *Hunt v. Bittman*, 482 F. Supp. 1017, 1020 (D.D.C. 1980); *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 994 (D.C. 1978); *Fort Myers Seafood Packers, Inc. v. Steptoe & Johnson*, 381 F.2d 261, 262 (D.C. Cir. 1967), *cert. denied*, 390 U.S. 946, 88 S.Ct. 1033, 19 L.Ed.2d 1135 (1968). The statute of limitations applicable to plaintiff's breach of fiduciary duty action is also three (3) years. D.C. Code § 12-301(8).

A legal malpractice action accrues when the former client/plaintiff suffers actual injury. *Poole v. Lowe*, 615 A.2d 589, 592-3 (D.C. 1992); *Byers v. Burleson*, 713 F.2d 856, 859-860 (D.C. Cir. 1983). Where an injury is not readily apparent, the "discovery" rule applies. Under the discovery rule, cause of action accrues when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of: (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Knight*, 553 A.2d at 1234; *Galucci v. Schaffer*, No. 06-20, 2007 U.S. Dist. LEXIS 63050, *9 (D.D.C. August 28, 2007); *Jung v.

*Mundy Holt, & Mance, P.C.*, 372 F.3d 429, 433-434 (D.C. Cir. 2004); *Wagner v. Sellinger*, 847

A.2d 1151, 1154 (D.C. 2004); *Nwachukwu v. Karl*, 223 F.Supp 2d 60, 70 (D.D.C. 1990).[20]

In this context, the District of Columbia has adopted the continuous representation rule.

Under this rule, a claim for legal malpractice does not accrue until the attorney's representation

concerning the particular matter at issue is terminated. *Wagner*, 847 A.2d at 1155; *R.D.H.*

*Communications Ltd v Winston.*, 700 A.2d 766, 768 (D.C. 1997); *Galucci*, 2007 U.S. Dist.

LEXIS 63050 at *13-14. The purpose of the rule is to avoid disrupting the attorney-client

relationship unnecessarily, giving the lawyer an opportunity to remedy, avoid or establish that

there was no error and/or to attempt to mitigate the damages. Mallen & Smith, *Legal*

*Malpractice*, § 22.13 at pp. 370-71. The end of the legal relationship may be evidenced by the

client's express or implied discharge of counsel, the completion of agreed tasks, client consent to

the termination, and/or hiring of new counsel. *Id.* at pp. 384, 386-87.

Applying these principles to the instant case, it is clear that plaintiff's legal malpractice

case is barred by the expiration of the statute of limitations. Defendants need only show that

plaintiff had knowledge of, or by the exercise of reasonable diligence should have had

knowledge of, the existence of an *injury,* its cause in fact and some evidence of wrongdoing.

*Knight*, 553 A.2d at 1234; Mallen & Smith, *Legal Malpractice*, § 22.15 at pp. 427.

The pleadings establish that plaintiff knew he had been "injured" by virtue of the denial

by the Immigration Service of his request for a change in status to that of a visitor's visa (I-539)

which according to the Complaint, occurred in the Summer of 2003. Compl. at ¶ 27. The denial

of the I-539 required plaintiff to leave the country since he no longer possessed a valid visa, was

---

[20] The "knowledge" element of the discovery rule does not mandate that plaintiff know either the precise nature of the wrong or the correct legal theory. *Knight*, 553 A.2d at 1236; Mallen & Smith, *Legal Malpractice*, § 22.15 at pp.427, Thompson/West (6th Ed. 2006); *Melgard v. Hanna*, 45 Ore. App. 133, 607 P.2d 795 (1980); *see also, Levin v. Berley*, 728 F.2d 551 (1st Cir. 1984). A plaintiff need not sustain or identify all of his damages for a cause of action to accrue. *Galucci*, 2007 U.S. Dist. LEXIS 63050 at *10.

"out of status" and subject to deportation.  8 U.S.C. § 1227(a)(1)(C)(i).  Thereafter, in 2003, plaintiff discharged defendants as counsel and retained the first of his two other immigration attorneys in late 2003.  Compl. at ¶¶ 28, 30.  His new attorney filed a motion to "reopen" the application, which was subsequently denied.  Compl. at ¶ 30.  Indeed, the Complaint reveals that plaintiff consulted with another immigration lawyer to explore and pursue his rights by late 2003, thus impliedly questioning the legal representation provided by his former immigration counsel, a point Mawalla must be deemed to concede.

Based on the pleadings, plaintiff knew, or by the exercise of due diligence could have known, that he sustained an injury in the Summer of 2003, when his effort to extend his stay was rejected by the Immigration Service.  Even under the "continuous representation rule," plaintiff was required to bring this action within 3 years after the termination of defendants' legal representation, which according to the pleadings occurred in "late 2003."  Compl. at ¶¶ 27, 30.  Thus, plaintiff should have filed the instant lawsuit by the end of 2006, three years thereafter, which he failed to do.  The operative date of the Complaint is August 20, 2007, which is more than eight months late and unquestionably untimely.

Plaintiff's malpractice claim is therefore barred by the expiration of the applicable statute of limitations.

### C.    Any Breach Of Fiduciary Duty Claim (Count II) Likewise Fails As A Matter Of Law.

In Count II of the Complaint, plaintiff raises three perceived 'breaches' of duty, namely: 1) an alleged failure to timely and correctly file documents with the Immigration Service and to advise regarding available options (Paragraph 45); 2) an alleged conflict of interest (Paragraphs 46-48); and 3) some undefined 'sabotage' of his immigration case allegedly occurring on August 20, 2004 (after the termination of the attorney-client relationship) that "made it impossible for

16

Mr. Mawalla to adjust his status" (Paragraphs 49-50).[21]  Compl., Count II.  However, none of these so-called 'breaches' is actionable for separate reasons, which defendants address *seriatim.*

### 1. Any Allegations Regarding Filing of Documents with the Immigration Service and/or Providing Advice are Duplicative of the Legal Malpractice Claim and are Time Barred.

As to the first alleged breach of fiduciary duty, any criticism regarding defendants' filing of documents with the Immigration Service and/or providing legal advice, are duplicative of the allegations of legal malpractice and are time barred.  In this context, if plaintiff's underlying malpractice claim fails, his breach of fiduciary duty claim fails as well.  *Macktal v. Garde,* 111 F. Supp. 2d 18, 21-22 (D.D.C. 2000).  In professional malpractice cases, allegations of negligence under different theories of recovery are based on the same duty of care and therefore cannot survive if the professional malpractice claim fails.  *Id.*

Here, as demonstrated, any acts or omissions regarding filings and advice that are pled in the Complaint took place during the course of defendants' legal representation, which ended in 'late 2003.'  Compl. ¶¶ 28, 30.  The Complaint makes clear that plaintiff knew that he sustained an injury in the Summer of 2003, and had retained new immigration counsel in "late 2003."  Compl. at ¶¶ 27, 30.  As a result, plaintiff should have brought any breach of fiduciary duty claim (concerning the filing of documents with the Immigration Service and/or providing legal advice) by "late 2006," three years thereafter, which he failed to do.  D.C. Code § 12-301(8).  Because the instant lawsuit was not filed until August 20, 2007, this claim is also time barred.

---

[21] In response to a complaint from Mr. Mawalla, the Office of Bar Counsel of the District of Columbia considered and found that he had not shown, by clear and convincing evidence, that Ms. Hoffman unnecessarily delayed the filing of an adjustment of status application or that she did not obtain informed consent from plaintiff. Bar Counsel further found that none of the other allegations had merit and dismissed the complaint by letter dated November 5, 2007.

2.    **Any Breach of Fiduciary Duty Claim based upon an Alleged Conflict Of Interest, is Likewise Time Barred.**

The second component of plaintiff's perceived breach of fiduciary duty claim concerns an alleged conflict of interest. Compl. at ¶¶ 46-48. As demonstrated, any alleged conflict existed and was known to plaintiff during the course of defendants' legal representation, which ended in 'late 2003.'[22] Moreover, the pleadings make clear that plaintiff knew that he sustained an injury in 2003, and had retained with new immigration counsel by "late 2003." Compl. at ¶¶ 27, 30. Therefore, any breach of fiduciary duty claim (concerning an alleged conflict of interest) should have been filed three years thereafter or by "late 2006," which was not done. D.C. Code § 12-301(8). This breach of fiduciary duty claim, filed on August 20, 2007, is also untimely under the statute of limitations.[23]

3.    **Any Allegation of "Sabotage" of Plaintiff's Immigration Case Fails for Lack of Specificity, the Absence Of Both a Breach of a Legal Duty and Resulting Injury**

As to plaintiff's final breach of fiduciary duty theory, the pleadings aver some undefined and unspecified 'sabotage' of the immigration case that supposedly "made it impossible for Mr. Mawalla to adjust his status." Compl. at ¶¶ 49, 50. Any so-called "sabotage" is nowhere spelled out in Count II, except to the extent that it occurred on August 20, 2004. Compl. at ¶ 50.

Even applying the liberalized concept of notice pleading, this allegation is so vague and ambiguous that defendants cannot reasonably be expected to prepare a responsive pleading to

---

[22] It cannot be legitimately disputed that plaintiff knew that defendants had represented Intelsat, his former employer. Not only did defendants submit the requests for labor certifications and the I-140 on the Company's behalf (to sponsor plaintiff and convert his G-4 visa), but the Intelsat later referred its employees to its immigration lawyer (Ms. Hoffman) to explore change of status after it became a private U.S. company in 2001.
[23] Although not dispositive at this juncture, defendants will establish that, before commencing the representation in January 2003, Ms. Hoffman explained any potential conflict and obtained a waiver thereof from both from Intelsat and from plaintiff as permitted under D.C. Bar Rules of Professional Conduct, Rule 1.7(c). Moreover, at no time did plaintiff ever request that defendants withdraw from the representation because of some perceived conflict and he should be deemed to have waived any conflict.

18

meet the allegations of some unspecified act of "sabotage." In that regard, proper pleading under Rule 8 requires an enumeration of allegations of each element of the breach of fiduciary duty claim. If it does not, and if the deficiency is so material, the pleading should be dismissed under Rule 12(b)(6). Volume 2, *Moore's Federal Practice*, § 12.36[1] (Matthew Bender, 3d ed.). *See e.g. Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992)(copyright infringement claim complaint must allege four basic elements).

As is apparent, plaintiff's pleading is fundamentally deficient even under the liberal rules of "notice pleading." With respect to any act of "sabotage," the Complaint gives no clue as to the particulars of the conduct complained of, let alone what duty was owed to plaintiff or how any conduct in any way affected his immigration status. Compl., *passim.* Indeed, conspicuously absent from the Complaint is any enumeration from which defendants can glean the basis, if any, for this aspect of the breach of fiduciary duty claim.

The only gossamer of any purported "wrongdoing" is an assertion that it occurred on August 20, 2004. Compl. at ¶ 50. Elsewhere in the pleadings, the only passing reference to that date is provided in Paragraph 33 that "Intelsat sent a letter to [the Immigration Service] withdrawing Mr. Mawalla's I-140 application. Ms. Hoffman and her firm were listed as the recipients of the copy of this letter." Compl. at ¶ 33. Such a vague and essentially meaningless assertion about a submission by the former employer simply does not set forth any act or omission on the part of former immigration counsel that could conceivably give rise to a breach of fiduciary duty. Even if plaintiff could cure the fundamental defect in his pleadings, which he cannot, any claim for breach of fiduciary duty (stemming from events in August 2004) fails as a matter of law based upon the absence of both a breach of any legal duty owed to a former client and the lack of resulting injury.

Where alleged acts are asserted to be adverse to a former client, a plaintiff must show an actual fiduciary breach that was the proximate cause of the injury. Mallen & Smith, *Legal Malpractice*, §17.28, at pp. 1085-86. A breach is either one of confidentiality or loyalty, although the duty of loyalty has limited application. *Id.* The general rule is that a prior representation alone does not create a present attorney-client relationship for purposes of evaluating whether a duty of loyalty exists. Mallen & Smith, *Legal Malpractice*, §17.28, at p. 1087. [24]

In any event, as to breach of duty, a former client would still have to show that the breach proximately caused some damage. *Chrysler Corp. v. Carey*, 5 F. Supp. 2d 1023 (E.D. Mo. 1998) *aff'd*, 186 F.3d 1016 (8th Cir. 1999)(plaintiff must prove that breach of duty of confidentiality caused damage); *Wilbourn v. Stennett, Wilkinson & Ward P.C.*, 687 So. 2d 1205 (Miss. 1996)(client could not show that former lawyer had obtained a confidence or that confidences were used); *SPSS, Inc. v. Carnahan-Walsh*, 267 Ill.App.3d 586, 641 N.E.2d 984 (1994)(no cause of action where information was publicly available); *Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W. 2d 400 (Tenn. 1991)(because there was no present attorney-client relationship, plaintiff bears burden to show that previous, confidential disclosures were used adversely to former client); *Barre v. St. Martin*, 636 So. 2d 1061 (La. App. 1994)(there must be both possession and misuse of confidential information by former client).

Applying these principles to the instant case, as a matter of law, after the termination of the prior attorney-client relationship and in the absence of such relationship, there was no breach of any legal duty owed to plaintiff as of August 2004. Even read in the light most favorable to

---

[24] In the context of negligence actions, the courts uniformly recognize that ethics rules do not necessarily set the standard for a legal malpractice action and that a violation of an ethics rule alone does not create a cause of action, constitute legal malpractice *per se* or necessarily create a duty, although the rules may be relevant regarding an applicable standard of care. Mallen & Smith *Legal Malpractice*, §§17.28 and 19.7, at p. 1088, 1212-13; *Smith v. Haden*, 872 F. Supp. 1040 (D.D.C. 1994) *aff'd*, 314 U.S.App.D.C. 442, 69 F.3d 606 (D.C. Cir. 1995); *Stratagene v. Parsons, Behle & Latimer*, 315 F. Supp. 2d 765(D. Md. 2004). *See also*, D.C. Bar R. 1.16; *Benikas v. Custom Print, Inc.*, 117 W.L.R. 2389 (Super. Ct. 1989)(the prior existence of a lawyer-client relationship does not automatically preclude an attorney from appearing in subsequent litigation in a posture adverse to the former client).

plaintiff, nothing that occurred in August 2004 could have harmed Mr. Mawalla or impacted his immigration case in light of his statutory ineligibility.

First, as to any possible claim of breach of loyalty, there is no allegation that defendants had knowledge that plaintiff, through successor counsel, had filed an adjustment application in April 2004. Nor is there any averment that former immigration counsel did anything that was improper, adverse to or inconsistent with the interests of their former client. Compl., *passim*. It stands to reason that, after defendants were discharged as counsel in the end of 2003, they had no knowledge that plaintiff had, in 2004, improperly filed and/or pursued an adjustment application based on a job offer that had been withdrawn years earlier in 2002, let alone that he would try to proceed with a prior sponsorship after having been terminated, which is wholly impermissible under the immigration laws.[25]

Moreover, as immigration practitioners, defendants have an ongoing obligation of candor owed to the immigration authorities regarding changes in employment circumstances of immigrant applicants. *See* Immigration and Naturalization Act, § 274C(a)(5), Penalties for Document Fraud; D.C. Bar R. 3.3(a)(Candor to Tribunal)("A lawyer shall not knowingly: (1) . . . fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . .)[26]; D.C. Bar R. 3.3(d)(Candor to Tribunal)("A lawyer who receives information

---

[25] Defendants are prepared to submit Affidavits, both from Ms. Hoffman as well as the General Counsel of Intelsat, attesting to the fact that neither the Counsel nor former immigration counsel were aware that plaintiff was pursuing an adjustment application based upon a job that terminated in 2002. Moreover, the affidavits will further show that Ms. Hoffman did not advise Intelsat in August 2004 regarding the withdrawal of plaintiff's I-140 Petition, nor did she take any action that was in any way adverse to her former client.

[26] Rule 3.3 mandates the correction of such false statement unless correction would require disclosure of information that is prohibited by Rule 1.6, which forbids the knowing disclosure of client confidences or secrets, subject to certain necessary exclusions such as to the extent reasonably necessary to prevent certain criminal acts and fraud. Rule 1.6 also permits the use or revelation of client confidences or secrets "when required by law or court order" or when the "client has impliedly authorized disclosure of a confidence or secret in order to carry out the representation." D.C. Bar R. 16(e)(2)(A) and (e)(4). However, as noted, the 2002 RIF and plaintiff's termination were not client confidences or secrets as defined by D.C. Bar R. 1.6(b). Moreover, as discussed, it was necessary for plaintiff to disclose the RIF in order to file for a B-2 visitor's visa in January 2003, which must be

277501.3

clearly establishing that a fraud has been perpetrated upon the tribunal shall promptly take reasonable remedial measures, including disclosure to the tribunal to the extent disclosure is permitted by Rule 1.6(d)).

Second, with respect to confidentiality, there is absolutely no allegation in the pleadings that Ms. Hoffman disclosed any confidential information that had been obtained during the prior representation. Compl., *passim.* In that regard, plaintiff's loss of employment was in no way "confidential" and was fully known by Intelsat as the ex-petitioning employer. After the RIF, Intelsat had the absolute right --- and indeed the obligation --- to inform the immigration authorities of changes in employment circumstances and withdraw its previous support for plaintiff's employment-based immigration visa.[27] It is of no moment that Intelsat waited until August 20, 2004 to "officially" notify the Immigration Service of the withdrawal of plaintiff's I-140 petition. Under the immigration regulations, Intelsat could have properly done so in November 2002 at the time of the RIF, or at any time thereafter.[28]

Indeed, by virtue of having filed for B-2 visitor's status (to allow plaintiff to remain in the country), the immigration authorities were *already aware* that plaintiff no longer was employed by Intelsat. In point of fact, *both the Immigration Service and the Department of State had been informed --- long before August 2004 ---* that plaintiff had been terminated from the job

---

deemed as an authorized disclosure by Mr. Mawalla. *See* Exhibit 4, Plaintiff's I-539 Form submitted to the Immigration Service in January 2003.

[27] When the termination of employment impacts an alien's legal nonimmigrant status in the U.S., the employer must disclose such a change. In the case of a G-4 visa holder, it is the termination report to the State Department that satisfies the obligation to disclose to the authorities that the person is no longer eligible for that status. *See* Exhibit 6, USCIS Adjudicator's Field Manual, Chapter 30, Section 30.5, Status as a Foreign Government Official or Employee of An International Organization; Exhibit 7, Memorandum dated October 31, 1991 from the Office of Protocol, U.S. Department of State. In the case of the H-IB, it is a letter to the Immigration Service revoking the I-140 petition.

[28] There is no regulation that specifically sets forth a time table for withdrawing the I-140 petition; however 8 CFR 205.1(a)(3)(iii)(c) provides for automatic revocation of ...Petitions under section 203(b), other than special immigrant juvenile petitions....(C) Upon written notice of the withdrawal filed by the petitioner, in employment-based preference cases, with any officer of the Service who is authorized to grant or deny petitions.

at Intelsat (as required under the immigration laws) and therefore he could no longer proceed on the prior I-140 petition, a conclusion plaintiff himself acknowledged in one of his own filings.

In that regard, in early 2003, plaintiff himself disclosed the termination by filing an I-539 to request a visitor's visa to temporarily extend his stay in the U.S. In a submission *signed by Mr. Mawalla* and filed with the Immigration Service *on January 23, 2003,* he clearly notifies the immigration authorities that his employment had been terminated. *See* Exhibit 4, Form I-539 and relevant attachments. Specifically, in Part 4, plaintiff states that he was previously employed at Intelsat "from August 1998 until December 2002 when my employment was terminated." *Id.* The law is clear that neither plaintiff nor former immigration counsel could request a change of status from G-4 to B-2 unless there was termination in the employment of the G-4 principal, making the Mawalla family no longer eligible for the G-4 status. *See* 8 C.F.R. § 214.2(b).

The other disclosure in Attachment to Form I-539 is of even greater significance since plaintiff expressly acknowledges that he knew that he could no longer proceed on his I-140 petition because he no longer worked for Intelsat. He concedes that "Intelsat Global Service Corporation submitted an I-140 Immigrant Petition for Alien Worker on May 17, 2002 (EAC-02-192-50905), which was approved on November 1, 2002. Since my employment has terminated, I cannot proceed on the petition." Exhibit 4.

In that regard, Mr. Mawalla's termination had also been reported to the Department of State by Intelsat in 2002 since international organizations are required to report both the hiring and the termination of G visa holders. Under 8 C.F.R. 214.2(g)(1), the Secretary of State is responsible for the proper classification of G-4 visa holders and must be kept apprised of the status of the employees of international organizations. *Id.*; 8 U.S.C. §§ 101(a)(15)(G)(i),(ii),(iii) and (iv). *See also* Exhibit 7, Memorandum dated October 30, 1991 from Richard Gookin,

23

Associate Chief of Protocol, U.S. Department of State (requiring expeditious notification of, among other events, the termination of employment of employees of international organizations) and Memorandum dated December 8, 2003 from U.S. Department of State (requiring prompt notification of any change in immigration status of members).   As required, Intelsat (through defendants as its Visa Administrator) notified the State Department on December 16, 2002, effective December 3, 2002, of the terminations of plaintiff and all other G-4 visa holders who were subject to the RIF. *See* Exhibit 5. Once a former employer has reported the termination, this ends the international organization's responsibility to track its former workers.

Finally, plaintiff was not in any way injured by Intelsat's August 2004 notification to the immigration authorities of the withdrawal of the I-140 petition. This is so because the prior RIF in 2002 automatically revoked plaintiff's ability to apply for a green card, which was not approvable either in 2004 or when it was filed (since the adjustment application was filed after the November 2002 RIF).   In point of fact, the Immigration Service itself determined that the Petition was "automatically revoked" by virtue of Intelsat's termination of plaintiff's employment.   Exhibit 1 at p. 2; 8 C.F.R. § 205.1(a)(3)(iii)(C).   Thus, plaintiff was statutorily not eligible to proceed with an adjustment of status application based upon a job that had ended some two years before, a circumstance that was not impacted by Intelsat's August 2004 communication to the immigration authorities. Moreover, as noted, plaintiff's own January 2003 filing of the I-539 to obtain a temporary visitor's visa had already notified the Immigration Service that his job had been terminated and that he was ineligible to proceed with the I-140 petition. *See* Exhibit 4.

In sum, Intelsat's 2004 correspondence was completely proper, legitimate and merely a subsequent formalized notification to the Immigration Service of the previous cessation of its

employer sponsorship of 2002, which had already and automatically revoked the I-140 petition as of the time of the RIF. In light of the pre-existing and incurably fatal statutory defects in plaintiff's I-140 application, there was nothing that occurred in August 2004 that in any way impacted Mr. Mawalla's immigration case. Moreover, plaintiff's termination had already been disclosed to immigration authorities well prior to that time --- first, to the State Department at the time of the RIF in 2002 and thereafter by Mawalla himself in January 2003, when he filed the I-539 form for a visitor's visa to temporarily extend his stay in the U.S. Therefore, any breach of duty claim stemming from the events of August 2004 fails as a matter of law.

### D.    The Entire Complaint Fails, As A Matter Of Law, Because Plaintiff's Alleged Injury Was Not Proximately Caused By Any Alleged Act Or Omission Of His Former Immigration Attorney.

The essential elements of a legal malpractice claim are that: (1) there is an attorney-client relationship; (2) the attorney neglected a reasonable duty; and (3) the attorney's negligence resulted in and was the proximate cause of a loss to the client. *Chase v. Gilbert*, 499 A.2d 1203, 1211 (D.C. 1985) *citing Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. 1949). In order to prevail in an action for legal malpractice, plaintiff bears the burden of presenting evidence to establish the applicable standard of care; that this standard was violated; and that there was a causal relationship between the violation and the harm alleged. *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979); *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982).

The law is clear that plaintiff must show that, *but for* a defendant's negligence, he sustained a legally cognizable injury. *Chase*, 499 A.2d at 1211-12 (citing *Parksville Mobile Modular, Inc. v. Fabricant*, 73 A.D. 2d 595, 599, 422 N.Y.Supp.2d 710, 716 (1979)); *Waldman v. Levine*, 544 A.2d 683, 691-692 (D.C. 1988); *McCord v. Bailey*, 636 F.2d 606, 611 (D.C. Cir. 1980), *cert. denied*, 451 U.S. 983, 101 S. Ct. 2314, 68 L.Ed. 2d 839 (1981). This same principle applies to Mawalla's breach of fiduciary duty claim against these defendants since "[w]hether

25

the complaint is based on tort or breach of contract, liability of an attorney for failure to properly perform his duties is governed by the same general standard of care." *O'Neil*, 452 A.2d at 343.

To establish causation in a legal malpractice case, the District of Columbia Court of Appeals in *Niosi,* 69 A.2d at 60 plainly stated:

> The rule to be applied in a case where an attorney is accused of negligence in the conduct of litigation is that such attorney is not liable for negligence if, notwithstanding the negligence, *the client had no cause of action or meritorious defense as the case may be… [u]nless a party has a good cause of action against the party proposed to be sued, the first party loses nothing by the conduct of his attorney* even though the latter were guilty of gross negligence.

69 A.2d at 60 (emphasis added).

In this context, proximate cause requires proof that the "case within the case" would have been successful. *Jacobsen v. Oliver*, 451 F. Supp. 2d 181, 187 (D.D.C. 2006). A legal malpractice plaintiff is said to have a multiple burden of proof and must present *two* cases: (1) one showing that his attorney performed negligently; and (2) a second or underlying predicate case, showing that plaintiff had a meritorious claim that he lost due to his attorney's negligence. *Jacobsen*, 451 F. Supp. 2d at 187; *Mallen & Smith,* §33.10, pp. 1035-6 (2006). Only by proving both cases can a former client demonstrate proximate cause in a legal malpractice case. *Id.*

"This means that plaintiff must establish not only the attorney's negligence, but also that there should have been a better result in the underlying lawsuit or matter." Mallen & Smith, *Legal Malpractice*, §33.10, p. 1035. If the underlying matter (the "case-within-the-case") would not have been successful, then the claim of legal malpractice must fail. *Macktal*, 111 F. Supp. 2d at 21. Thus, proof that he would have prevailed in the underlying case absent the alleged underlying negligence, is necessary. *Id.*

26

Here, as a matter of law, plaintiff cannot establish that he would have prevailed in the underlying case before the Immigration Service, but for the alleged acts or omissions of defendants --- to the contrary, he was statutorily ineligible as a matter of law and he lost all efforts to become a permanent resident despite multiple filings, requests for reconsideration and appeals. Exhibit 1, at pp. 1-3. Therefore, any alleged injuries (an inability to obtain a visa, change his immigration status, obtain permanent residency and remain in this Country) were not proximately caused by his former immigration counsel and the entire Complaint fails as a matter of law.

An alien cannot work in the United States without the appropriate authority from the Immigration Service to do so. Exhibit 1 at pp. 6-7, 8-10. As discussed above, *an employer* may sponsor an alien who has special training or talent if there is a paucity of available similar workers in the United States. *See* 8 U.S.C. §§ 1153(b)(2) and 1154(a)(1)(F); 8 C.F.R. § 204.5. If approved, an I-140 Petition only allows the alien to work *for the named employer* and, possibly thereafter petition for adjustment to permanent resident, through Form I-485. *See* 8 U.S.C. § 1225. Thus, the existence of a qualifying job is the lynchpin.

As Judge Collyer observed in connection with plaintiff's judicial challenge to the Immigration Service's denials, it is difficult for an alien with an I-140 visa to change jobs since it invalidates the visa:

> Under the [Immigration and Nationality Act] and its implementing regulations, it is difficult for an alien with an I-140 visa to change U.S. employers; *if the alien switches jobs, his I-140 visa is usually subject to revocation.* This is significant because an alien must have a valid I-140 visa to be eligible to have his status adjusted; *loss of the job with the petitioning employer has meant loss of the I-140 visa and loss of the opportunity to become a permanent resident. See* 8 U.S.C. §§ 1255(a). In response to the needs of U.S. business for skilled aliens, Congress passed AC 21. One of AC21's amendments to [the Act] now allows an alien whose Form I-485

> application for adjustment of status has been pending for 180 days or more, and who leaves the job on which the I-140 petition was based, to continue to pursue adjusted status *as long as he has another job in the same or similar occupational category*. *See* 8 U.S.C. § 1154(j). Having left his position with Intelsat, Mr. Mawalla seeks to take advantage of this provision in AC 21 to achieve permanent residency status.

Exhibit 1 at pp. 6-7 (emphasis added).

Here, the pleadings are fatally silent regarding proximate causation and do not aver any eligibility for a change in plaintiff's immigration status. Compl. *passim*. Nor does the Complaint allege that plaintiff had found a qualifying job and/or substitute sponsoring employer (so as to enable him to qualify under AC21 or convert to an H-1 non-immigrant visa to work at another special occupation). Compl. *passim;* footnote 12, *infra*. Because plaintiff has not averred, and cannot prove, that he had another job in the same or similar occupational category -- - namely satellite engineering --- he was *ineligible for adjustment of status.*

Without such allegations, plaintiff has not set forth the required causation element of his claims ---namely that he would have been successful in his underlying immigration case and would have obtained permanent residency, a visa, or a change in status, *but for* the conduct of his former immigration counsel. Not only was plaintiff statutorily ineligible for permanent residency (in the absence of a qualifying job) but the adjustment decision is reserved to the discretion of the Attorney General, 8 U.S.C. §1255, which does not guarantee that he would have prevailed in any underlying immigration case. On the contrary, he lost all of his multiple immigration appeals and motions to reopen/reconsider. Exhibit 1 at pp. 2-3. Therefore, as a matter of law, plaintiff has not alleged, and cannot prove, the essential element of proximate cause.

In that regard, the Complaint fails to mention, whether inadvertently or by design, that plaintiff has already fully litigated the Immigration Service's denial of his adjustment of status application. Conspicuously absent from the pleadings is any mention of Judge Collyer's January 5, 2007, finding that "Mr. Mawalla was ineligible to adjust status and USCIS [the Immigration Service] properly denied his I-485 application." Exhibit 1 at pp. 9-10. This alone is dispositive of the proximate cause issue and definitively establishes, as a matter of law, that plaintiff was not entitled to permanent residency status.

On this issue, the court held that "the key date in determining eligibility for the benefit of AC21 is the date on which the alien *changes jobs* (*i.e.*, the date on which he takes an action that could otherwise make him ineligible for adjustment of status)." Exhibit 1 at p. 9 (emphasis added). However, it appears from reading the Opinion that neither plaintiff nor his counsel fully disclosed to the Court all of the relevant information, and withheld the critical and dispositive fact that Mawalla *filed his employment-based* adjustment of status application in 2004 *after his termination from Intelsat.*[29] Exhibit 1, *passim.*

As Judge Collyer observed, "the record is silent as to when Mr. Mawalla left his employment at Intelsat," *Id.* at 9, but the Court nevertheless correctly found that plaintiff was not eligible to adjust his status to permanent resident. Had the Court had known that he had been terminated in 2002, well before the filing by successor counsel of his I-140 adjustment of status application on April 29, 2004, *Id.* at 2, Judge Collyer would not have had to reach the AC21

---

[29] Rule 3.3 (Candor to Tribunal) of the D.C. Rules of Professional Conduct provides that "[a] lawyer shall not knowingly: . . . (2) Counsel or assist a client to engage in conduct that the lawyer knows is criminal or fraudulent . . . . or (4) offer evidence that the lawyer knows to be false . . . ." D.C. Bar R. 3.3. Applicants are likewise expressly advised in the Instructions for the I-140, I-485 and I-539 that "[i]f you knowingly and willfully falsify or conceal a material fact ... the Form ... and may deny any other immigration benefit. In addition, you will face severe penalties provided by law and may be subject to criminal prosecution." Exhibit 3. In the immigration context, "a misrepresentation is material ... if it tends to shut off a line of inquiry which is relevant to the alien's eligibility, and which might have resulted in a proper determination that he be excluded." *Matter of Ng*, 17 I&N Dec. 536, 537 (BIA 1980); *see also Matter of Bosuego*, 17 I&N Dec. 125, 130 (BIA 1979, 1980) (same holding).

29

argument since AC21 benefits are only granted to aliens who have *properly filed* an adjustment application.

The *Mawalla* Opinion clearly states that AC21 benefits are available for aliens whose adjustment "has been filed." *Id.* at 9; 8 U.S.C. § 1154 (j).  However, *plaintiff was statutorily ineligible to file an adjustment of status application* based on a previous and "automatically revoked" sponsorship by Intelsat because the Company had long before withdrawn its offer of employment at the time of the 2002 RIF.  Plaintiff's adjustment application, filed nearly two years after his termination from Intelsat, was simply not proper.  Moreover, without a current and valid visa, he was ineligible to seek adjustment to status under 8 U.S.C. §1255 (c)(2), which precludes adjustment of status for an alien "who is in unlawful immigration status *on the date of filing the application* for adjustment of status."

Here, plaintiff *was precluded by law* from obtaining the relief requested ---- namely an adjustment to permanent residency status --- based on his statutory ineligibility.  The decision regarding adjustment of status, which is left to the discretion of the Attorney General, has now been judicially affirmed by Judge Collyer as legally sound and not arbitrary, capricious, or an abuse of discretion. Exhibit 1 at pp. 1, 10.  Plaintiff did *not* prevail in his immigration case and he was *not* successful in obtaining permanent residency status --- nor could he have been. Therefore he has not, and cannot as a matter of law, show that he suffered any injury that was proximately caused by the legal representation of former immigration counsel.

Based on the pleadings, proximate causation --- the essential "but for" element of his malpractice and breach of fiduciary duty claims --- is fatally lacking, warranting the dismissal of the Complaint with prejudice.

IV.    **CONCLUSION**

For these reasons, coupled with those appearing to the court, defendants Linda Hoffman,

Esquire and the law firm of Freilicher & Hoffman, P.C. respectfully request the instant Motion

be granted and that plaintiff's Complaint be dismissed in its entirety and with prejudice.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP

By:    */s/ Laura N. Steel*
Laura N. Steel, Esquire (Bar No. 367174)
Kathleen H. Warin, Esquire (Bar No. 492519)
The Colorado Building, Suite 500
1341 G. Street, N.W.
Washington, D.C. 20005
Tel.: (202) 626-7660
Fax: (202) 628-3606
*Counsel for defendants, Linda Hoffman and Freilicher & Hoffman, P.C.*

31

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| **FREDERICK MAWALLA** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **Civil No.: 1:07-cv-01538 (EGS)** |
| **v.** | : | |
| | : | **Oral Argument Requested** |
| **LINDA HOFFMAN** *et al.* | : | |
| | : | |
| **Defendants.** | : | |

### DEFENDANTS' LIST OF EXHIBITS SUBMITTED
### IN SUPPORT OF MOTION TO DISMISS

Defendants respectfully submit the following List of Exhibits in support of their Motion

to Dismiss Plaintiff's Complaint:

| EXHIBIT | DESCRIPTION |
|---|---|
| 1. | Memorandum Opinion dated January 5, 2007 by Judge Rosemary Collyer in *Mawalla v. Chertoff, et al.,* Civil Action No. 06-584 (RMC); |
| 2. | Copies of the relevant statutory and regulatory provisions regarding immigration; |
| 3. | Sample copy of Forms I-485, I-140 and I-539 with Instructions; |
| 4. | Plaintiff's executed I-539 Form and relevant attachment submitted to the Immigration Service in January 2003; |
| 5. | Letter dated December 16, 2002, effective December 3, 2002, by which Intelsat (through its Visa Administrator) notified the U.S. Department of State of the terminations of plaintiff and all other G-4 visa holders who were subject to the RIF. |
| 6. | USCIS Adjudicator's Field Manual, Chapter 30, Section 30.5, Status as a Foreign Government Official or Employee of An International Organization; |
| 7. | Memorandum dated October 30, 1991 from Richard Gookin, Associate Chief of Protocol, U.S. Department of State (requiring expeditious notification of, among other events, the termination of employment of employees of international organizations) and Memorandum dated December 8, 2003 from U.S. Department |

32

of State (requiring prompt notification of any change in immigration status of members).

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP

By:    /s/ Laura N. Steel
Laura N. Steel, Esquire (Bar No. 367174)
Kathleen H. Warin, Esquire (Bar No. 492519)
The Colorado Building, Suite 500
1341 G. Street, N.W.
Washington, D.C. 20005
Tel.: (202) 626-7660
Fax: (202) 628-3606
*Counsel for defendants, Linda Hoffman and Freilicher & Hoffman, P.C.*

33

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FREDERICK MAWALLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-584 (RMC) |
| | ) | |
| MICHAEL CHERTOFF, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Frederick Mawalla is an alien who complains that the Department of Homeland Security ("DHS"), through its constituent agency, the U.S. Citizenship and Immigration Service ("USCIS"), improperly denied his Application to Adjust Status to Permanent Resident. Defendants move for summary judgment, which Mr. Mawalla opposes through his counsel. Because USCIS's denial of Mr. Mawalla's application was based on a pure question of law, not on the exercise of discretion, review is available under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, which allows reversal of agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). USCIS's decision, however, was legally sound and Defendants are therefore entitled to judgment as a matter of law.

## I. FACTUAL BACKGROUND

The facts are presented in Defendants' Statement of Material Facts With Respect to Which There Is No Genuine Issue ("Defs.' Facts") (Dkt. # 7-1), to which Mr. Mawalla makes no objection. On May 15, 2002, Intelsat Global Service Corporation filed an Immigrant Visa Petition (Form I-140) for Mr. Mawalla, pursuant to section 203(b)(2) of the Immigration and Nationality Act



("INA"). Defs.' Facts ¶ 1. USCIS approved the I-140 on October 31, 2002, thereby allowing Mr.

Mawalla to work for Intelsat. *Id.* ¶ 2.

On April 29, 2004, Mr. Mawalla filed a Form I-485, Application to Adjust Status to

Permanent Resident. *Id.* ¶ 3. On September 17, 2004 — 141 days later — USCIS received a letter

from Intelsat stating that Mr. Mawalla was no longer employed by Intelsat and that it wanted to

withdraw its I-140 petition on his behalf. *Id.* ¶ 4. On March 11, 2005, USCIS advised Intelsat that

the I-140 petition had been automatically revoked as of the date of its initial approval (October 31,

2002), pursuant to 8 C.F.R. § 205.1(a)(3)(iii)(C). *Id.* ¶ 5. On that same day, USCIS sent to Mr.

Mawalla a Notice of Intent to Deny ("NOID") his I-485 application because there was no longer a

visa immediately available to him and he was, therefore, ineligible for adjustment of status. *Id.* ¶ 6.

The NOID stated that the American Competitiveness in the Twenty-First Century Act of 2002

("AC21") Section 106(C) (codified at 8 U.S.C. § 1154(j)), would still permit Mr. Mawalla to adjust

his status to that of permanent resident if his I-485 application "has been pending for 180 days or

more and [he] can establish that [he] ha[s] a bona fide offer of employment from a new employer

in a same or similar occupation." *Id.* ¶ 7; Admin. Record ("AR") at 261.

Mr. Mawalla responded on April 6, 2005, requesting that his I-485 application be

considered under AC21. Defs.' Facts ¶ 8. He included an offer of employment from Bethesda

Asphalt & Bituminous Company for the position of Testing Engineer. *Id.* USCIS denied Mr.

Mawalla's I-485 application on June 29, 2005 because the I-485 had been pending for a period of

less than 180 days when the withdrawal of the I-140 was requested by Intelsat on September 17,

2004. *Id.* ¶ 9. Without a valid I-140 visa petition, Mr. Mawalla was deemed ineligible to receive

an adjusted status under AC21. *Id.*

Mr. Mawalla filed a Motion to Reopen and/or Reconsider on July 18, 2005. *Id.* ¶ 10. USCIS

dismissed the motion on August 29, 2005 on the ground that Mr. Mawalla failed to provide new

facts or demonstrate that the decision was based on an incorrect application of the law. *Id.* ¶ 11. On

September 27, 2005, Mr. Mawalla filed another Motion to Reopen and/or Reconsider regarding the

revocation of the Form I-140, but USCIS dismissed that motion on March 13, 2006 for the same

reason it dismissed the previous motion. *Id.* ¶¶ 12-13.

Mr. Mawalla filed this action on March 30, 2006. He challenges USCIS's June 29,

2005 denial of his I-495 Application for Adjustment and asks the Court to enter judgment ordering

DHS to adjust his status to a lawful permanent resident. Defendants moved for summary judgment

on June 21, 2006. That motion has now been fully briefed and is ripe for decision.

## II. LEGAL STANDARDS

### A. Summary Judgment — Rule 56.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be

granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material,"

a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248

(1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense

and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at

248.

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position, *id.* at 252, and may not rely solely on allegations or conclusory statements, *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**B.    Lack of Subject Matter Jurisdiction — Rule 12(b)(1).**

Defendants have also moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Court must accept as true all of the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. *See Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999). But because a Rule 12(b)(1) motion challenges the court's power to hear the claim, the court must give the plaintiff's factual allegations closer scrutiny than would be required for a Rule 12(b)(6) motion. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003).

-4-

Moreover, the court is not limited to the allegations contained in the complaint; it may consider materials outside the pleadings to determine whether it has jurisdiction. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). The court may dismiss a complaint for lack of subject matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### III. ANALYSIS

The resolution of this motion is fairly simple, although Defendants raise two arguments that require a more thorough analysis than might otherwise be required.

### A.   Jurisdiction.

First, Defendants argue that this Court lacks jurisdiction to review USCIS's decisions to deny Plaintiff's motions to reopen and reconsider. Defs.' Mem. at 9-11. The Court rejects this argument because it is the underlying decision denying Plaintiff's I-485 application, not the denials of his motions to reopen, that is presented to this Court for review. Defendants further argue that the Court lacks jurisdiction to review the underlying decision to deny adjustment of status because, under 8 U.S.C. § 1252(a)(2)(B)(i), "no court shall have jurisdiction to review — (i) any judgment regarding the granting of relief under section . . . 1255 . . . ." *Id.* at 11-13. According to Defendants, Plaintiff's application for adjustment of status was made under § 1255 and, as a result, this Court lacks jurisdiction to review it. *Id.* at 12.

This argument may appear correct on the surface, but a review of the case law reveals that it is not. Although the D.C. Circuit has yet to decide the question, other federal courts of appeal have consistently held that § 1252(a)(2)(B)(i) "does not strip courts of jurisdiction to review

nondiscretionary decisions regarding an alien's eligibility for" adjustment of status under § 1255.

*Sepulveda v. Gonzales*, 407 F.3d 59, 62-63 (2d Cir. 2005); *see also, e.g., Succar v. Ashcroft*, 394

F.3d 8, 19 (1st Cir. 2005) ("Both the Supreme Court and this court have consistently rejected

arguments that Congress has eliminated judicial review of the legal question of interpretation of the

statute as to whether an alien is eligible for consideration of relief."); *Iddir v. INS*, 301 F.3d 492, 497

(7th Cir. 2002) ("we find section 1252(a)(2)(B)(i) . . . only bars review of actual discretionary

decisions to grant or deny relief"). That is, the jurisdiction-stripping provision in § 1252 does not

deprive federal courts of jurisdiction to review pure questions of law. *See Gonzales*, 407 F.3d at 62.

Thus, this Court has jurisdiction under 5 U.S.C. § 704 to review USCIS's decision to deny Plaintiff's

I-485 application because it was based on the legal conclusion that he was statutorily ineligible for

adjustment of status, not on an exercise of discretion. *See id.*

### B.    The Merits of Plaintiff's I-485 Application.

An alien cannot work in the United States without the appropriate authority from

USCIS to do so. One way for an alien to receive permission to work is for an employer to file an I-

140 Petition for Alien Worker, describing the special training or talent of a specific alien and the

paucity of available similar workers in the United States. *See* 8 U.S.C. §§ 1153(b)(2) and

1154(a)(1)(F); 8 C.F.R. § 204.5. Upon approval of an I-140 Petition, the named alien receives a visa

which allows him to work for the named employer. An alien with an I-140 visa can then petition

for adjustment of his status to that of permanent resident, through Form I-485. *See* 8 U.S.C. § 1255.

Under the INA and its implementing regulations, it is difficult for an alien with an

I-140 visa to change U.S. employers; if the alien switches jobs, his I-140 visa is usually subject to

revocation. This is significant because an alien must have a valid I-140 visa to be eligible to have

-6-

his status adjusted; loss of the job with the petitioning employer has meant loss of the I-140 visa and

loss of the opportunity to become a permanent resident. *See* 8 U.S.C. § 1255(a). In response to the

needs of U.S. businesses for skilled aliens, Congress passed AC21. One of AC21's amendments to

the INA now allows an alien whose Form I-485 application for adjustment of status has been

pending for 180 days or more, and who leaves the job on which the I-140 petition was based, to

continue to pursue adjusted status as long as he has another job in the same or similar occupational

category. *See* 8 U.S.C. § 1154(j). Having left his position with Intelsat, Mr. Mawalla seeks to take

advantage of this provision in AC21 to achieve permanent residency status.

  USCIS argues that it was correct to deny Mr. Mawalla's I-485 application because

it had not been pending for 180 days when his I-140 visa application was revoked. USCIS bases this

argument on 8 C.F.R. § 205.1(a)(3)(iii)(C), which states that an I-140 visa application is

automatically "revoked as of the date of approval . . . upon written notice of withdrawal filed by the

petitioner . . . ." In its opening brief, USCIS takes the position that Plaintiff's I-140 was revoked on

the date it was originally approved — October 31, 2002 — and "[s]ince the [I-485] application was

not filed until April 29, 2004, long after the date that the [I-140] visa petition was . . . revoked, it

could not have been pending for 180 days as required under AC21." Defs.' Mem. at 16-17. In other

words, USCIS argues that because Plaintiff's I-140 was retroactively revoked as of its initial

approval date, there is no way that it could have been pending 180 days after he filed his I-485

application, which was filed after the approval/revocation date. *See id.* at 17 n.9.

  Plaintiff responds that if this argument is correct, it would render AC21 "completely

ineffective and useless" because "all eligible aliens whom the remedial statute sought to protect

would be preemptively disqualified from the benefits of AC21." Pl.'s Mem. at 1-2. Plaintiff's

argument probably goes too far, but he is correct that under Defendants' view any alien whose I-140 application is revoked under 8 C.F.R. § 205.1 would always be ineligible for the flexibility benefits of AC21 because an I-485 application can be filed only on or after the date on which I-140 application was retroactively revoked by operation of law. That is, no alien whose I-140 petition is revoked under 8 C.F.R. § 205.1 could ever satisfy the 180-day requirement.

This reading is contrary to Congress's intent in passing AC21. The purpose of § 1154(j) is to give aliens with approved I-140s the flexibility to change jobs if USCIS takes more than 180 days to process their applications for adjusted status. What AC21 says, in essence, is that if an alien's I-485 application has been pending for 180 days, the alien may change jobs without losing the benefit of his previously approved I-140 so long as the new job is in the same occupational category as the old job. Under USCIS's reading of § 1154(j), however, an alien whose I-140 application is revoked under 8 C.F.R. 205.1(a)(3)(iii)(C) would always lose the benefit of the previously approved I-140, regardless of whether the alien changed jobs more than 180 days after he filed his I-485 application, because the I-140 revocation is retroactive to the date of its approval. There is nothing in the language or logic of AC21 to suggest that Congress meant to disqualify categorically such a large group of potentially eligible aliens from AC21's flexibility provision. Indeed, USCIS's reading is contrary to its own policy memorandum, which states that "if the employer withdraws the approved Form I-140 on or after the date that the Form I-485 has been pending 180 days, the approved Form I-140 shall remain valid under the provisions of . . . AC21." Defs.' Mem. Ex. A at p. 3.

Perhaps recognizing that its reading of AC21 is unreasonable, USCIS backs off this position in its reply brief — although it is careful not to abandon completely its initial argument that

Plaintiff's I-140 petition was revoked, for purposes of AC21, a year and half before Plaintiff even

filed his I-485 application. *See* Reply Mem. at 4.  In order to eliminate any confusion that might be

caused by USCIS's lack of clarity, the Court now holds that the correct interpretation of § 1154(j)

is the one adopted in USCIS's policy memorandum:

> Pursuant to [AC21], the approval of a Form I-140 employment-based
> (EB) immigrant petition shall remain valid when an alien changes
> jobs, if:
>
> - A Form I-485, Application to Adjust Status, on the basis of
>   the EB immigrant petition has been filed and remained
>   unadjudicated for 180 days or more; and
>
> - The new job is in the same or similar occupational
>   classification as the job for which the certification or approval
>   was initially made.

Defs.' Mem. Ex. A at p. 4.  Thus, the key date in determining eligibility for the benefit of AC21 is

the date on which the alien changes jobs (*i.e.*, the date on which he takes an action that could

otherwise make him ineligible for adjustment of status).  If the job change occurs 180 days or more

after the date on which the alien filed an application for adjustment of status, the alien's previously

approved I-140 application will remain in effect with respect to the new job.  The automatic date-

back regulation for withdrawn I-140 petitions, 8 C.F.R. 205.1(a)(3)(iii)(C), does not bear on the

issue.  The question is not how long the I-140 petition was on file but whether the I-485 application

for adjustment was pending for 180 days or more "when [the] alien change[d] jobs." *Id.*

　　　　　Now that the legal standard is clear, the Court can apply it to Plaintiff's application.

Plaintiff filed his I-485 application on April 29, 2004.  Although the record is silent as to when Mr.

Mawalla left his employment at Intelstat, the record is clear that on September 17, 2004 Intelstat

submitted a letter to USCIS stating that Plaintiff no longer worked there and that it wanted to

withdraw its I-140 petition. (AR 196.) Thus, it is beyond dispute that Mr. Mawalla's job change

occurred on or before September 17, 2004 — 141 days after he filed his I-485 application. Because

he changed jobs before his I-485 application had been pending for 180 days, Mr. Mawalla's I-140

did not remain valid under AC21. USCIS therefore correctly denied his I-485 application on the

ground that he did not have a valid and current visa to support his adjustment of status. The fact that

USCIS did not actually adjudicate his application until June 2005 is of no moment because the 180-

day provision pertains to the date of the employment change, not the date of adjudication.

## IV. CONCLUSION

Simply put, the single dispositive fact in this case is that Mr. Mawalla left his job at

Intelsat fewer than 180 days after he filed his I-485 application. USCIS therefore acted in

accordance with law when it refused to apply 8 U.S.C. § 1154(j) to Mr. Mawalla's I-140 visa

petition. As a result, Mr. Mawalla was ineligible to adjust status and USCIS properly denied his I-

485 application under 8 U.S.C. § 1255(a). Because these actions were not arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law, Defendants' motion for summary

judgment must be granted. A memorializing order accompanies this Memorandum Opinion.

/s/
_____
ROSEMARY M. COLLYER
United States District Judge

DATE: January 5, 2007

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREDERICK MAWALLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-584 (RMC) |
| | ) |
| MICHAEL CHERTOFF, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### ORDER

For the reasons stated in the Memorandum Opinion filed separately and contemporaneously herewith, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Dkt. # 7] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is dismissed from the docket of the Court. This is a final appealable order. Fed. R. App. P. 4(a).

**SO ORDERED**.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: January 5, 2007

LEXSTAT

UNITED STATES CODE SERVICE
Copyright © 2007 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 110-113, APPROVED 11/8/2007 ***

TITLE 8. ALIENS AND NATIONALITY
CHAPTER 12. IMMIGRATION AND NATIONALITY
IMMIGRATION
SELECTION SYSTEM

**Go to the United States Code Service Archive Directory**

8 USCS § 1153

Review expert commentary from The National Institute for Trial Advocacy



§ 1153. Allocation of immigrant visas

(a) Preference allocation for family-sponsored immigrants. Aliens subject to the worldwide level specified in section 201(c) [8 USCS § 1151(c)] for family-sponsored immigrants shall be allotted visas as follows:

(1) Unmarried sons and daughters of citizens. Qualified immigrants who are the unmarried sons or daughters of citizens of the United States shall be allocated visas in a number not to exceed 23,400, plus any visas not required for the class specified in paragraph (4).

(2) Spouses and unmarried sons and unmarried daughters of permanent resident aliens. Qualified immigrants--
   (A) who are the spouses or children of an alien lawfully admitted for permanent residence, or
   (B) who are the unmarried sons or unmarried daughters (but are not the children) of an alien lawfully admitted for permanent residence,
   shall be allocated visas in a number not to exceed 114,200, plus the number (if any) by which such worldwide level exceeds 226,000, plus any visas not required for the class specified in paragraph (1); except that not less than 77 percent of such visa numbers shall be allocated to aliens described in subparagraph (A).

(3) Married sons and married daughters of citizens. Qualified immigrants who are the married sons or married daughters of citizens of the United States shall be allocated visas in a number not to exceed 23,400, plus any visas not required for the classes specified in paragraphs (1) and (2).

(4) Brothers and sisters of citizens. Qualified immigrants who are the brothers or sisters of citizens of the United States, if such citizens are at least 21 years of age, shall be allocated visas in a number not to exceed 65,000, plus any visas not required for the classes specified in paragraphs (1) through (3).

(b) Preference allocation for employment-based immigrants. Aliens subject to the worldwide level specified in section 201(d) [8 USCS § 1151(d)] for employment-based immigrants in a fiscal year shall be allotted visas as follows:

(1) Priority workers. Visas shall first be made available in a number not to exceed 28.6 percent of such worldwide level, plus any visas not required for the classes specified in paragraphs (4) and (5), to qualified immigrants who are aliens described in any of the following subparagraphs (A) through (C):
   (A) Aliens with extraordinary ability. An alien is described in this subparagraph if--
      (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,
      (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and
      (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

(B) Outstanding professors and researchers. An alien is described in this subparagraph if--

   (i) the alien is recognized internationally as outstanding in a specific academic area,

   (ii) the alien has at least 3 years of experience in teaching or research in the academic area, and

   (iii) the alien seeks to enter the United States--

      (I) for a tenured position (or tenure-track position) within a university or institution of higher education to teach in the academic area,

      (II) for a comparable position with a university or institution of higher education to conduct research in the area, or

      (III) for a comparable position to conduct research in the area with a department, division, or institute of a private employer, if the department, division, or institute employs at least 3 persons full-time in research activities and has achieved documented accomplishments in an academic field.

  (C) Certain multinational executives and managers. An alien is described in this subparagraph if the alien, in the 3 years preceding the time of the alien's application for classification and admission into the United States under this subparagraph, has been employed for at least 1 year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and the alien seeks to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive.

(2) Aliens who are members of the professions holding advanced degrees or aliens of exceptional ability.

  (A) In general. Visas shall be made available, in a number not to exceed 28.6 percent of such worldwide level plus any visas not required for the classes specified in paragraph (1), to qualified immigrants who are members of the professions holding advanced degrees or their equivalent or who because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States, and whose services in the sciences, arts, professions, or business are sought by an employer in the United States.

  (B) (i) Subject to clause (ii), the Attorney General may, when the Attorney General deems it to be in the national interest, waive the requirements of subparagraph (A) that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States.

   (ii) (I) The Attorney General shall grant a national interest waiver pursuant to clause (i) on behalf of any alien physician with respect to whom a petition for preference classification has been filed under subparagraph (A) if--

      (aa) the alien physician agrees to work full time as a physician in an area or areas designated by the Secretary of Health and Human Services as having a shortage of health care professionals or at a health care facility under the jurisdiction of the Secretary of Veterans Affairs; and

      (bb) a Federal agency or a department of public health in any State has previously determined that the alien physician's work in such an area or at such facility was in the public interest.

    (II) No permanent resident visa may be issued to an alien physician described in subclause (I) by the Secretary of State under section 204(b) [8 USCS § 1154(b)], and the Attorney General may not adjust the status of such an alien physician from that of a nonimmigrant alien to that of a permanent resident alien under section 245 [8 USCS § 1255], until such time as the alien has worked full time as a physician for an aggregate of 5 years (not including the time served in the status of an alien described in section 101(a)(15)(J) [8 USCS § 1101(a)(15)(J)]), in an area or areas designated by the Secretary of Health and Human Services as having a shortage of health care professionals or at a health care facility under the jurisdiction of the Secretary of Veterans Affairs.

    (III) Nothing in this subparagraph may be construed to prevent the filing of a petition with the Attorney General for classification under section 204(a) [8 USCS § 1154(a)], or the filing of an application for adjustment of status under section 245 [8 USCS § 1255], by an alien physician described in subclause (I) prior to the date by which such alien physician has completed the service described in subclause (II).

    (IV) The requirements of this subsection do not affect waivers on behalf of alien physicians approved under section 203(b)(2)(B) [subsec. (b)(2)(B) of this section] before the enactment date of this subsection. In the case of a physician for whom an application for a waiver was filed under section 203(b)(2)(B) [subsec. (b)(2)(B) of this section] prior to November 1, 1998, the Attorney General shall grant a national interest waiver pursuant to section 203(b)(2)(B) [subsec. (b)(2)(B) of this section] except that the alien is required to have worked full time as a physician for an aggregate of 3 years (not including time served in the status of an alien described in section 101(a)(15)(J) [8 USCS § 1101(a)(15)(J)]) before a visa can be issued to the alien under section 204(b) [8 USCS § 1154(b)] or the status of the alien is adjusted to permanent resident under section 245 [8 USCS § 1255].

  (C) Determination of exceptional ability. In determining under subparagraph (A) whether an immigrant has exceptional ability, the possession of a degree, diploma, certificate, or similar award from a college, university, school, or

other institution of learning or a license to practice or certification for a particular profession or occupation shall not by itself be considered sufficient evidence of such exceptional ability.

(3) Skilled workers, professionals, and other workers.

(A) In general. Visas shall be made available, in a number not to exceed 28.6 percent of such worldwide level, plus any visas not required for the classes specified in paragraphs (1) and (2), to the following classes of aliens who are not described in paragraph (2):

(i) Skilled workers. Qualified immigrants who are capable, at the time of petitioning for classification under this paragraph, of performing skilled labor (requiring at least 2 years training or experience), not of a temporary or seasonal nature, for which qualified workers are not available in the United States.

(ii) Professionals. Qualified immigrants who hold baccalaureate degrees and who are members of the professions.

(iii) Other workers. Other qualified immigrants who are capable at the time of petitioning for classification under this paragraph, of performing unskilled labor, not of a temporary or seasonal nature, for which qualified workers are not available in the United States.

(B) Limitation on other workers. Not more than 10,000 of the visas made available under this paragraph in any fiscal year may be available for qualified immigrants described in subparagraph (A)(iii).

(C) Labor certification required. An immigrant visa may not be issued to an immigrant under subparagraph (A) until the consular officer is in receipt of a determination made by the Secretary of Labor pursuant to the provisions of section 212(a)(5)(A) [8 USCS § 1182(a)(5)(A)].

(4) Certain special immigrants. Visas shall be made available, in a number not to exceed 7.1 percent of such worldwide level, to qualified special immigrants described in section 101(a)(27) [8 USCS § 1101(a)(27)] (other than those described in subparagraph (A) or (B) thereof), of which not more than 5,000 may be made available in any fiscal year to special immigrants described in subclause (II) or (III) of section 101(a)(27)(C)(ii) [8 USCS § 1101(a)(27)(C)(ii)(II) or (III)], and not more than 100 may be made available in any fiscal year to special immigrants, excluding spouses and children, who are described in section 101(a)(27)(M) [8 USCS § 1101(a)(27)(M)].

(5) Employment creation.

(A) In general. Visas shall be made available, in a number not to exceed 7.1 percent of such worldwide level, to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise (including a limited partnership)--

(i) in which such alien has invested (after the date of the enactment of the Immigration Act of 1990 [enacted Nov. 29, 1990]) or, is actively in the process of investing, capital in an amount not less than the amount specified in subparagraph (C), and

(ii) which will benefit the United States economy and create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters).

(iii) [Redesignated]

(B) Set-aside for targeted employment areas.

(i) In general. Not less than 3,000 of the visas made available under this paragraph in each fiscal year shall be reserved for qualified immigrants who invest in a new commercial enterprise described in subparagraph (A) which will create employment in a targeted employment area.

(ii) Targeted employment area defined. In this paragraph, the term "targeted employment area" means, at the time of the investment, a rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate).

(iii) Rural area defined. In this paragraph, the term "rural area" means any area other than an area within a metropolitan statistical area or within the outer boundary of any city or town having a population of 20,000 or more (based on the most recent decennial census of the United States).

(C) Amount of capital required.

(i) In general. Except as otherwise provided in this subparagraph, the amount of capital required under subparagraph (A) shall be $ 1,000,000. The Attorney General, in consultation with the Secretary of Labor and the Secretary of State, may from time to time prescribe regulations increasing the dollar amount specified under the previous sentence.

(ii) Adjustment for targetted employment areas. The Attorney General may, in the case of investment made in a targeted employment area, specify an amount of capital required under subparagraph (A) that is less than (but not less than 1/2 of) the amount specified in clause (i).

(iii) Adjustment for high employment areas. In the case of an investment made in a part of a metropolitan statistical area that at the time of the investment--

(I) is not a targeted employment area, and

LEXSTAT

UNITED STATES CODE SERVICE
Copyright © 2007 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 110-113, APPROVED 11/8/2007 ***

TITLE 8. ALIENS AND NATIONALITY
CHAPTER 12. IMMIGRATION AND NATIONALITY
IMMIGRATION
SELECTION SYSTEM

**Go to the United States Code Service Archive Directory**

8 USCS § 1154

Review expert commentary from The National Institute for Trial Advocacy following 8 USCS § 1153 (relating to applications for permanent residence).

§ 1154.  Procedure for granting immigrant status [Caution: See prospective amendment note below.]

(a) Petitioning procedure.
  (1) (A) (i) Except as provided in clause (viii), any citizen of the United States claiming that an alien is entitled to classification by reason of a relationship described in paragraph (1), (3), or (4) of section 203(a) [8 USCS § 1153(a)] or to an immediate relative status under section 201(b)(2)(A)(i) [8 USCS § 1151(b)(2)(A)(i)] may file a petition with the Attorney General for such classification.
    (ii) An alien spouse described in the second sentence of section 201(b)(2)(A)(i) [8 USCS § 1151(b)(2)(A)(i)] also may file a petition with the Attorney General under this subparagraph for classification of the alien (and the alien's children) under such section.
    (iii) (I) An alien who is described in subclause (II) may file a petition with the Attorney General under this clause for classification of the alien (and any child of the alien) if the alien demonstrates to the Attorney General that--
      (aa) the marriage or the intent to marry the United States citizen was entered into in good faith by the alien; and
      (bb) during the marriage or relationship intended by the alien to be legally a marriage, the alien or a child of the alien has been battered or has been the subject of extreme cruelty perpetrated by the alien's spouse or intended spouse.
    (II) For purposes of subclause (I), an alien described in this subclause is an alien--
    (aa) (AA) who is the spouse of a citizen of the United States;
      (BB) who believed that he or she had married a citizen of the United States and with whom a marriage ceremony was actually performed and who otherwise meets any applicable requirements under this Act to establish the existence of and bona fides of a marriage, but whose marriage is not legitimate solely because of the bigamy of such citizen of the United States; or
      (CC) who was a bona fide spouse of a United States citizen within the past 2 years and--
      (aaa) whose spouse died within the past 2 years;
      (bbb) whose spouse lost or renounced citizenship status within the past 2 years related to an incident of domestic violence; or
      (ccc) who demonstrates a connection between the legal termination of the marriage within the past 2 years and battering or extreme cruelty by the United States citizen spouse;
    (bb) who is a person of good moral character;

petitioner with the same priority date as that assigned to the petitioner in any petition described in clause (ii). No new petition shall be required to be filed.

(IV) Any individual described in subclause (III) and any derivative child of a petition described in clause (ii) is eligible for deferred action and work authorization.

(ii) The petition referred to in clause (i)(III) is a petition filed by an alien under subparagraph (A)(iii), (A)(iv), (B)(ii) or (B)(iii) in which the child is included as a derivative beneficiary.

(iii) Nothing in the amendments made by the Child Status Protection Act shall be construed to limit or deny any right or benefit provided under this subparagraph.

(iv) Any alien who benefits from this subparagraph may adjust status in accordance with subsections (a) and (c) of section 245 [8 USCS § 1255] as an alien having an approved petition for classification under subparagraph (A)(iii), (A)(iv), (B)(ii), or (B)(iii).

(v) For purposes of this paragraph, an individual who is not less than 21 years of age, who qualified to file a petition under subparagraph (A)(iv) or (B)(iii) as of the day before the date on which the individual attained 21 years of age, and who did not file such a petition before such day, shall be treated as having filed a petition under such subparagraph as of such day if a petition is filed for the status described in such subparagraph before the individual attains 25 years of age and the individual shows that the abuse was at least one central reason for the filing delay. Clauses (i) through (iv) of this subparagraph shall apply to an individual described in this clause in the same manner as an individual filing a petition under subparagraph (A)(iv) or (B)(iii).

(E) Any alien desiring to be classified under section 203(b)(1)(A) [8 USCS § 1153(b)(1)(A)], or any person on behalf of such an alien, may file a petition with the Attorney General for such classification.

(F) Any employer desiring and intending to employ within the United States an alien entitled to classification under section 203(b)(1)(B), 203(b)(1)(C), 203(b)(2), or 203(b)(3) [8 USCS § 1153(b)(1)(B), (C), (2), or (3)] may file a petition with the Attorney General for such classification.

(G) (i) Any alien (other than a special immigrant under section 101(a)(27)(D) [8 USCS § 1101(a)(27)(D)] desiring to be classified under section 203(b)(4) [8 USCS § 1153(b)(4)], or any person on behalf of such an alien, may file a petition with the Attorney General for such classification.

(ii) Aliens claiming status as a special immigrant under section 101(a)(27)(D) [8 USCS § 1101(a)(27)(D)] may file a petition only with the Secretary of State and only after notification by the Secretary that such status has been recommended and approved pursuant to such section.

(H) Any alien desiring to be classified under section 203(b)(5) [8 USCS § 1153(b)(5)] may file a petition with the Attorney General for such classification.

(I) (i) Any alien desiring to be provided an immigrant visa under section 203(c) [8 USCS § 1153(c)] may file a petition at the place and time determined by the Secretary of State by regulation. Only one such petition may be filed by an alien with respect to any petitioning period established. If more than one petition is submitted all such petitions submitted for such period by the alien shall be voided.

(ii) (I) The Secretary of State shall designate a period for the filing of petitions with respect to visas which may be issued under section 203(c) [8 USCS § 1153(c)] for the fiscal year beginning after the end of the period.

(II) Aliens who qualify, through random selection, for a visa under section 203(c) [8 USCS § 1153(c)] shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected.

(III) The Secretary of State shall prescribe such regulations as may be necessary to carry out this clause.

(iii) A petition under this subparagraph shall be in such form as the Secretary of State may by regulation prescribe and shall contain such information and be supported by such documentary evidence as the Secretary of State may require.

(J) In acting on petitions filed under clause (iii) or (iv) of subparagraph (A) or clause (ii) or (iii) of subparagraph (B), or in making determinations under subparagraphs (C) and (D), the Attorney General shall consider any credible evidence relevant to the petition. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.

(K) Upon the approval of a petition as a VAWA self-petitioner, the alien--

(i) is eligible for work authorization; and

(ii) may be provided an "employment authorized" endorsement or appropriate work permit incidental to such approval.

(L) Notwithstanding the previous provisions of this paragraph, an individual who was a VAWA petitioner or who had the status of a nonimmigrant under subparagraph (T) or (U) of section 101(a)(15) [8 USCS § 1101(a)(15)] may not file a petition for classification under this section or section 214 [8 USCS § 1184] to classify any person who committed

LEXSTAT 8 USC 1255

UNITED STATES CODE SERVICE
Copyright © 2007 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 110-113, APPROVED 11/8/2007 ***

TITLE 8. ALIENS AND NATIONALITY
CHAPTER 12. IMMIGRATION AND NATIONALITY
ADJUSTMENT AND CHANGE OF STATUS

**Go to the United States Code Service Archive Directory**

*8 USCS § 1255*

Review expert commentary from The National Institute for Trial Advocacy

§ 1255.  Adjustment of status of nonimmigrant to that of person admitted for permanent residence

(a) Status as person admitted for permanent residence on application and eligibility for immigrant visa.  The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

(b) Record of lawful admission for permanent residence; reduction of preference visas.  Upon the approval of an application for adjustment made under subsection (a), the Attorney General shall record the alien's lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made, and the Secretary of State shall reduce by one the number of the preference visas authorized to be issued under sections 202 and 203 [*8 USCS §§ 1152, 1153*] within the class to which the alien is chargeable for the fiscal year then current.

(c) Alien crewmen, aliens continuing or accepting unauthorized employment, and aliens admitted in transit without a visa.  Other than an alien having an approved petition for classification as a VAWA self-petitioner, subsection (a) shall not be applicable to (1) an alien crewman; (2) subject to subsection (k), an alien (other than an immediate relative as defined in section 201(b) [*8 USCS § 1151(b)*] or a special immigrant described in section 101(a)(27)(H), (I), (J), or (K) [*8 USCS § 1101(a)(27)(H)*, (I), (J), or (K)]) who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States; (3) any alien admitted in transit without visa under section 212(d)(4)(C) [*8 USCS § 1182(d)(4)(C)*]; (4) an alien (other than an immediate relative as defined in section 201(b) [*8 USCS § 1151(b)*]) who was admitted as a nonimmigrant visitor without a visa under section 212(l) or section 217 [*8 USCS § 1182(l)* or *1187*]; (5) an alien who was admitted as a nonimmigrant described in section 101(a)(15)(S) [*8 USCS § 1101(a)(15)(S)*],[;] (6) an alien who is deportable under section 237(a)(4)(B) [*8 USCS § 1227(a)(4)(B)*]; (7) any alien who seeks adjustment of status to that of an immigrant under section 203(b) [*8 USCS § 1153(b)*] and is not in a lawful nonimmigrant status; or (8) any alien who was employed while the alien was an unauthorized alien, as defined in section 274A(h)(3) [*8 USCS § 1324a(h)(3)*], or who has otherwise violated the terms of a nonimmigrant visa.

(d) Alien admitted for permanent residence on conditional basis; fiancee or fiance of citizen. The Attorney General may not adjust, under subsection (a), the status of an alien lawfully admitted to the United States for permanent residence on a conditional basis under section 216 [*8 USCS § 1186a*]. The Attorney General may not adjust, under subsection (a), the status of a nonimmigrant alien described in section 101(a)(15)(K) [*8 USCS § 1101(a)(15)(K)*] except to that of an alien lawfully admitted to the United States on a conditional basis under section 216 [*8 USCS § 1186a*] as a result of the marriage of the nonimmigrant (or, in the case of a minor child, the parent) to the citizen who filed the petition to accord that alien's nonimmigrant status under section 101(a)(15)(K) [*8 USCS § 1101(a)(15)(K)*].

(e) Restriction on adjustment of status based upon marriages entered while in admissibility or deportation proceedings; bona fide marriage exception.

(1) Except as provided in paragraph (3), an alien who is seeking to receive an immigrant visa on the basis of a marriage which was entered into during the period described in paragraph (2) may not have the alien's status adjusted under subsection (a).

(2) The period described in this paragraph is the period during which administrative or judicial proceedings are pending regarding the alien's right to be admitted or remain in the United States.

(3) Paragraph (1) and section 204(g) [*8 USCS § 1154(g)*] shall not apply with respect to a marriage if the alien establishes by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of procuring the alien's admission as an immigrant and no fee or other consideration was given (other than a fee or other consideration to an attorney for assistance in preparation of a petition) for the filing of a petition under section 204(a) [*8 USCS § 1154(a)*] or subsection (d) or (p) of section 214 [*8 USCS § 1184*] with respect to the alien spouse or alien son or daughter. In accordance with regulations, there shall be only one level of administrative appellate review for each alien under the previous sentence.

(f) Limitation on adjustment of status. The Attorney General may not adjust, under subsection (a), the status of an alien lawfully admitted to the United States for permanent residence on a conditional basis under section 216A [*8 USCS § 1186b*].

(g) Special immigrants. In applying this section to a special immigrant described in section 101(a)(27)(K) [*8 USCS § 1101(a)(27)(K)*], such an immigrant shall be deemed, for purposes of subsection (a), to have been paroled into the United States.

(h) Application with respect to special immigrants. In applying this section to a special immigrant described in section 101(a)(27)(J) [*8 USCS § 1101(a)(27)(J)*]--

(1) such an immigrant shall be deemed, for purposes of subsection (a), to have been paroled into the United States; and

(2) in determining the alien's admissibility as an immigrant--

(A) paragraphs (4), (5)(A), and (7)(A) of section 212(a) [*8 USCS § 1182(a)(4)*, (5)(A), and (7)(A)] shall not apply, and

(B) the Attorney General may waive other paragraphs of section 212(a) [*8 USCS § 1182(a)*] (other than paragraphs (2)(A), (2)(B), (2)(C) (except for so much of such paragraph as related to a single offense of simple possession of 30 grams or less of marijuana), (3)(A), (3)(B), (3)(C), and (3)(E)) in the case of individual aliens for humanitarian purposes, family unity, or when it is otherwise in the public interest.

The relationship between an alien and the alien's natural parents or prior adoptive parents shall not be considered a factor in making a waiver under paragraph (2)(B). Nothing in this subsection or section 101(a)(27)(J) [*8 USCS § 1101(a)(27)(J)*] shall be construed as authorizing an alien to apply for admission or be admitted to the United States in order to obtain special immigrant status described in such section.

(i) Adjustment in status of certain aliens physically present in the United States.

(1) Notwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States--

(A) who--

(i) entered the United States without inspection; or

(ii) is within one of the classes enumerated in subsection (c) of this section;

(B) who is the beneficiary (including a spouse or child of the principal alien, if eligible to receive a visa under section 203(d) [*8 USC § 1153(d)*]) of--

(i) a petition for classification under section 204 [*8 USC § 1154*] that was filed with the Attorney General on or before April 30, 2001; or

(ii) an application for a labor certification under section 212(a)(5)(A) [*8 USC § 1182(a)(5)(A)*] that was filed pursuant to the regulations of the Secretary of Labor on or before such date; and

(C) who, in the case of a beneficiary of a petition for classification, or an application for labor certification, described in subparagraph (B) that was filed after January 14, 1998, is physically present in the United States on the date of the enactment of the LIFE Act Amendments of 2000 [enacted Dec. 21, 2000];

may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence. The Attorney General may accept such application only if the alien remits with such application a sum equalling $ 1,000 as of the date of receipt of the application, but such sum shall not be required from a child under the age of seventeen, or an alien who is the spouse or unmarried child of an individual who obtained temporary or permanent resident status under section 210 or 245A of the Immigration and Nationality Act [*8 USCS § 1160 or 1255a*] or section 202 of the Immigration Reform and Control Act of 1986 [*8 USCS § 1255a* note] at any date, who--

(i) as of May 5, 1988, was the unmarried child or spouse of the individual who obtained temporary or permanent resident status under section 210 or 245A of the Immigration and Nationality Act [*8 USCS § 1160 or 1255a*] or section 202 of the Immigration Reform and Control Act of 1986 [*8 USCS § 1255a* note];

(ii) entered the United States before May 5, 1988, resided in the United States on May 5, 1988, and is not a lawful permanent resident; and

(iii) applied for benefits under section 301(a) of the Immigration Act of 1990 [*8 USCS § 1255a* note]. The sum specified herein shall be in addition to the fee normally required for the processing of an application under this section.

(2) Upon receipt of such an application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if--

(A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and

(B) an immigrant visa is immediately available to the alien at the time the application is filed.

(3) (A) The portion of each application fee (not to exceed $ 200) that the Attorney General determines is required to process an application under this section and is remitted to the Attorney General pursuant to paragraphs (1) and (2) of this subsection shall be disposed of by the Attorney General as provided in subsections (m), (n), and (o) of section 286 [*8 USCS § 1356*].

(B) Any remaining portion of such fees remitted under such paragraphs shall be deposited by the Attorney General into the Breached Bond/Detention Fund established under section 286(r) [*8 USCS § 1356(r)*], except that in the case of fees attributable to applications for a beneficiary with respect to whom a petition for classification, or an application for labor certification, described in paragraph (1)(B) was filed after January 14, 1998, one-half of such remaining portion shall be deposited by the Attorney General into the Immigration Examinations Fee Account established under section 286(m) [*8 USCS § 1356(m)*].

(j) Adjustment to permanent resident status.

(1) If, in the opinion of the Attorney General--

(A) a nonimmigrant admitted into the United States under section 101(a)(15)(S)(i) [*8 USCS § 1101(a)(15)(S)(i)*] has supplied information described in subclause (I) of such section; and

(B) the provision of such information has substantially contributed to the success of an authorized criminal investigation or the prosecution of an individual described in subclause (III) of that section,

the Attorney General may adjust the status of the alien (and the spouse, married and unmarried sons and daughters, and parents of the alien if admitted under that section) to that of an alien lawfully admitted for permanent residence if the alien is not described in section 212(a)(3)(E) [*8 USCS § 1182(a)(3)(E)*].

(2) If, in the sole discretion of the Attorney General--

(A) a nonimmigrant admitted into the United States under section 101(a)(15)(S)(ii) [*8 USCS § 1101(a)(15)(S)(ii)*] has supplied information described in subclause (I) of such section, and

(B) the provision of such information has substantially contributed to--

(i) the prevention or frustration of an act of terrorism against a United States person or United States property, or

(ii) the success of an authorized criminal investigation of, or the prosecution of, an individual involved in such an act of terrorism, and

8 USCS § 1255

(C) the nonimmigrant has received a reward under section 36(a) of the State Department Basic Authorities Act of 1956 [*22 USCS § 2708(a)*],

the Attorney General may adjust the status of the alien (and the spouse, married and unmarried sons and daughters, and parents of the alien if admitted under such section) to that of an alien lawfully admitted for permanent residence if the alien is not described in section 212(a)(3)(E) [*8 USCS § 1182(a)(3)(E)*].

(3) Upon the approval of adjustment of status under paragraph (1) or (2), the Attorney General shall record the alien's lawful admission for permanent residence as of the date of such approval and the Secretary of State shall reduce by one the number of visas authorized to be issued under sections 201(d) and 203(b)(4) [*8 USCS §§ 1151(d) and 1153(b)(4)*] for the fiscal year then current.

(k) Inapplicability of certain provisions for certain employment-based immigrants. An alien who is eligible to receive an immigrant visa under paragraph (1), (2), or (3) of section 203(b) [*8 USCS § 1153(b)(1)*, (2), or (3)] (or, in the case of an alien who is an immigrant described in section 101(a)(27)(C) [*8 USCS § 1101(a)(27)(C)*], under section 203(b)(4) [*8 USCS § 1153(b)(4)*]) may adjust status pursuant to subsection (a) and notwithstanding subsection (c)(2), (c)(7), and (c)(8), if--

   (1) the alien, on the date of filing an application for adjustment of status, is present in the United States pursuant to a lawful admission;

   (2) the alien, subsequent to such lawful admission has not, for an aggregate period exceeding 180 days--

      (A) failed to maintain, continuously, a lawful status;

      (B) engaged in unauthorized employment; or

      (C) otherwise violated the terms and conditions of the alien's admission.

(l) Adjustment of status for victims of trafficking.

   (1) If, in the opinion of the Secretary of Homeland Security, or in the case of subparagraph (C)(i), the Attorney General,[,] a nonimmigrant admitted into the United States under section 101(a)(15)(T)(i) [*8 USCS § 1101(a)(15)(T)(i)*]--

      (A) has been physically present in the United States for a continuous period of at least 3 years since the date of admission as a nonimmigrant under section 101(a)(15)(T)(i) [*8 USCS § 1101(a)(15)(T)(i)*], or has been physically present in the United States for a continuous period during the investigation or prosecution of acts of trafficking and that, in the opinion of the Attorney General, the investigation or prosecution is complete, whichever period of time is less[,]

      (B) has, throughout such period, been a person of good moral character, and

      (C) (i) has, during such period, complied with any reasonable request for assistance in the investigation or prosecution of acts of trafficking, or

         (ii) the alien would suffer extreme hardship involving unusual and severe harm upon removal from the United States,

   the Secretary of Homeland Security, or in the case of subparagraph (C)(i), the Attorney General, may adjust the status of the alien (and any person admitted under section 101(a)(15)(T)(ii) [*8 USCS § 1101(a)(15)(T)(ii)*] as the spouse, parent, sibling, or child of the alien) to that of an alien lawfully admitted for permanent residence.

   (2) Paragraph (1) shall not apply to an alien admitted under section 101(a)(15)(T) [*8 USCS § 1101(a)(15)(T)*] who is inadmissible to the United States by reason of a ground that has not been waived under section 212 [*8 USCS § 1182*], except that, if the Secretary of Homeland Security considers it to be in the national interest to do so, the Secretary of Homeland Security, in the Attorney General's [Secretary's] discretion, may waive the application of--

      (A) paragraphs (1) and (4) of section 212(a) [*8 USCS § 1182(a)*]; and

      (B) any other provision of such section (excluding paragraphs (3), (10)(C), and (10[)](E)), if the activities rendering the alien inadmissible under the provision were caused by, or were incident to, the victimization described in section 101(a)(15)(T)(i)(I) [*8 USCS § 1101(a)(15)(T)(i)(I)*].

   (3) An alien shall be considered to have failed to maintain continuous physical presence in the United States under paragraph (1)(A) if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

   (4) (A) The total number of aliens whose status may be adjusted under paragraph (1) during any fiscal year may not exceed 5,000.

      (B) The numerical limitation of subparagraph (A) shall only apply to principal aliens and not to the spouses, sons, daughters, siblings, or parents of such aliens.

   (5) Upon the approval of adjustment of status under paragraph (1), the Secretary of Homeland Security shall record the alien's lawful admission for permanent residence as of the date of such approval.

(m) Adjustment of status for victims of crimes against women.

(1) The Secretary of Homeland Security may adjust the status of an alien admitted into the United States (or otherwise provided nonimmigrant status) under section 101(a)(15)(U) [*8 USCS § 1101(a)(15)(U)*] to that of an alien lawfully admitted for permanent residence if the alien is not described in section 212(a)(3)(E) [*8 USCS § 1182(a)(3)(E)*], unless the Attorney General determines based on affirmative evidence that the alien unreasonably refused to provide assistance in a criminal investigation or prosecution, if--

(A) the alien has been physically present in the United States for a continuous period of at least 3 years since the date of admission as a nonimmigrant under clause (i) or (ii) of section 101(a)(15)(U) [*8 USCS § 1101(a)(15)(U)*]; and

(B) in the opinion of the Secretary of Homeland Security, the alien's continued presence in the United States is justified on humanitarian grounds, to ensure family unity, or is otherwise in the public interest.

(2) An alien shall be considered to have failed to maintain continuous physical presence in the United States under paragraph (1)(A) if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days unless the absence is in order to assist in the investigation or prosecution or unless an official involved in the investigation or prosecution certifies that the absence was otherwise justified.

(3) Upon approval of adjustment of status under paragraph (1) of an alien described in section 101(a)(15)(U)(i) [*8 USCS § 1101(a)(15)(U)(i)*] the Secretary of Homeland Security may adjust the status of or issue an immigrant visa to a spouse, a child, or, in the case of an alien child, a parent who did not receive a nonimmigrant visa under section 101(a)(15)(U)(ii) [*8 USCS § 1101(a)(15)(U)(ii)*] if the Secretary considers the grant of such status or visa necessary to avoid extreme hardship.

(4) Upon the approval of adjustment of status under paragraph (1) or (3), the Secretary of Homeland Security shall record the alien's lawful admission for permanent residence as of the date of such approval.

LEXSTAT 8 U.S.C. 1324C

UNITED STATES CODE SERVICE
Copyright © 2007 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 110-113, APPROVED 11/8/2007 ***

TITLE 8. ALIENS AND NATIONALITY
CHAPTER 12. IMMIGRATION AND NATIONALITY
ADJUSTMENT AND CHANGE OF STATUS
GENERAL PENALTY PROVISIONS

**Go to the United States Code Service Archive Directory**

*8 USCS § 1324c*

§ 1324c.  Penalties for document fraud

(a) Activities prohibited.  It is unlawful for any person or entity knowingly--

(1) to forge, counterfeit, alter, or falsely make any document for the purpose of satisfying a requirement of this Act or to obtain a benefit under this Act,

(2) to use, attempt to use, possess, obtain, accept, or receive or to provide any forged, counterfeit, altered, or falsely made document in order to satisfy any requirement of this Act or to obtain a benefit under this Act,

(3) to use or attempt to use or to provide or attempt to provide any document lawfully issued to or with respect to a person other than the possessor (including a deceased individual) for the purpose of satisfying a requirement of this Act or obtaining a benefit under this Act,

(4) to accept or receive or to provide any document lawfully issued to or with respect to a person other than the possessor (including a deceased individual) for the purpose of complying with section 274A(b) [*8 USCS § 1324a(b)*] or obtaining a benefit under this Act, or

(5) to prepare, file, or assist another in preparing or filing, any application for benefits under this Act, or any document required under this Act, or any document submitted in connection with such application or document, with knowledge or in reckless disregard of the fact that such application or document was falsely made or, in whole or in part, does not relate to the person on whose behalf it was or is being submitted, or

(6) (A) to present before boarding a common carrier for the purpose of coming to the United States a document which relates to the alien's eligibility to enter the United States, and (B) to fail to present such document to an immigration officer upon arrival at a United States port of entry.

(b) Exception.  This section does not prohibit any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a State, or a subdivision of a State, or of an intelligence agency of the United States, or any activity authorized under chapter 224 of title 18, United States Code [*18 USCS §§ 3521* et seq.].

(c) Construction.  Nothing in this section shall be construed to diminish or qualify any of the penalties available for activities by this section but proscribed as well in title 18, United States Code.

(d) Enforcement.

(1) Authority in investigations. In conducting investigations and hearings under this subsection--

(A) immigration officers and administrative law judges shall have reasonable access to examine evidence of any person or entity being investigated,

(B) administrative law judges, may, if necessary, compel by subpoena the attendance of witnesses and the production of evidence at any designated place or hearing, and

(C) immigration officers designated by the Commissioner may compel by subpoena the attendance of witnesses and the production of evidence at any designated place prior to the filing of a complaint in a case under paragraph (2).

In case of contumacy or refusal to obey a subpoena lawfully issued under this paragraph and upon application of the Attorney General, an appropriate district court of the United States may issue an order requiring compliance with such subpoena and any failure to obey such order may be punished by such court as a contempt thereof.

(2) Hearing.

(A) In general. Before imposing an order described in paragraph (3) against a person or entity under this subsection for a violation of subsection (a), the Attorney General shall provide the person or entity with notice and, upon request made within a reasonable time (of not less than 30 days, as established by the Attorney General) of the date of the notice, a hearing respecting the violation.

(B) Conduct of hearing. Any hearing so requested shall be conducted before an administrative law judge. The hearing shall be conducted in accordance with the requirements of *section 554 of title 5, United States Code*. The hearing shall be held at the nearest practicable place to the place where the person or entity resides or of the place where the alleged violation occurred. If no hearing is so requested, the Attorney General's imposition of the order shall constitute a final and unappealable order.

(C) Issuance of orders. If the administrative law judge determines, upon the preponderance of the evidence received, that a person or entity has violated subsection (a), the administrative law judge shall state his findings of fact and issue and cause to be served on such person or entity an order described in paragraph (3).

(3) Cease and desist order with civil money penalty **[Caution: For inflation-adjusted civil monetary penalties, see *8 CFR 270.3(b)(1)(ii)*.].** With respect to a violation of subsection (a), the order under this subsection shall require the person or entity to cease and desist from such violations and to pay a civil penalty in an amount of--

(A) not less than $ 250 and not more than $ 2,000 for each document that is the subject of a violation under subsection (a), or

(B) in the case of a person or entity previously subject to an order under this paragraph, not less than $ 2,000 and not more than $ 5,000 for each document that is the subject of a violation under subsection (a).

In applying this subsection in the case of a person or entity composed of distinct, physically separate subdivisions each of which provides separately for the hiring, recruiting, or referring for employment, without reference to the practices of, and not under the control of or common control with, another subdivision, each such subdivision shall be considered a separate person or entity.

(4) Administrative appellate review. The decision and order of an administrative law judge shall become the final agency decision and order of the Attorney General unless either (A) within 30 days, an official delegated by regulation to exercise review authority over the decision and order modifies or vacates the decision and order, or (B) within 30 days of the date of such a modification or vacation (or within 60 days of the date of decision and order of an administrative law judge if not so modified or vacated) the decision and order is referred to the Attorney General pursuant to regulations, in which case the decision and order of the Attorney General shall become the final agency decision and order under this subsection.

(5) Judicial review. A person or entity adversely affected by a final order under this section may, within 45 days after the date the final order is issued, file a petition in the Court of Appeals for the appropriate circuit for review of the order.

(6) Enforcement of orders. If a person or entity fails to comply with a final order issued under this section against the person or entity, the Attorney General shall file a suit to seek compliance with the order in any appropriate district court of the United States. In any such suit, the validity and appropriateness of the final order shall not be subject to review.

(7) Waiver by Attorney General. The Attorney General may waive the penalties imposed by this section with respect to an alien who knowingly violates subsection (a)(6) if the alien is granted asylum under section 208 [*8 USCS § 1158*] or withholding of removal under section 241(b)(3) [*8 USCS § 1251(b)(3)*].

(e) Criminal penalties for failure to disclose role as document preparer.

(1) Whoever, in any matter within the jurisdiction of the Service, knowingly and willfully fails to disclose, conceals, or covers up the fact that they have, on behalf of any person and for a fee or other remuneration, prepared or assisted in preparing an application which was falsely made (as defined in subsection (f)) for immigration benefits, shall be fined in accordance with title 18, United States Code, imprisoned for not more than 5 years, or both, and prohibited from preparing or assisting in preparing, whether or not for a fee or other remuneration, any other such application.

(2) Whoever, having been convicted of a violation of paragraph (1), knowingly and willfully prepares or assists in preparing an application for immigration benefits pursuant to this Act, or the regulations promulgated thereunder, whether or not for a fee or other remuneration and regardless of whether in any matter within the jurisdiction of the Ser-

8 USCS § 1324c

vice, shall be fined in accordance with title 18, United States Code, imprisoned for not more than 15 years, or both, and prohibited from preparing or assisting in preparing any other such application.

(f) Falsely make. For purposes of this section, the term "falsely make" means to prepare or provide an application or document, with knowledge or in reckless disregard of the fact that the application or document contains a false, fictitious, or fraudulent statement or material representation, or has no basis in law or fact, or otherwise fails to state a fact which is material to the purpose for which it was submitted.

LEXSTAT

UNITED STATES CODE SERVICE
Copyright © 2007 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 110-113, APPROVED 11/8/2007 ***

TITLE 22. FOREIGN RELATIONS AND INTERCOURSE
CHAPTER 7. INTERNATIONAL BUREAUS, CONGRESSES, ETC.
PRIVILEGES AND IMMUNITIES OF INTERNATIONAL ORGANIZATIONS

**Go to the United States Code Service Archive Directory**

22 USCS § 288

§ 288. Definition of "international organization"; authority of President

For the purposes of this title, the term "international organization" means a public international organization in which the United States participates pursuant to any treaty or under the authority of any Act of Congress authorizing such participation or making an appropriation for such participation, and which shall have been designated by the President through appropriate Executive order as being entitled to enjoy the privileges, exemptions, and immunities herein provided. The President shall be authorized, in the light of the functions performed by any such international organization, by appropriate Executive order to withhold or withdraw from any such organization or its officers or employees any of the privileges, exemptions, and immunities provided for in this title (including the amendments made by this title) or to condition or limit the enjoyment by any such organization or its officers or employees of any such privilege, exemption, or immunity. The President shall be authorized, if in his judgment such action should be justified by reason of the abuse by an international organization or its officers and employees of the privileges, exemptions, and immunities herein provided or for any other reason, at any time to revoke the designation of any international organization under this section, whereupon the international organization in question shall cease to be classed as an international organization for the purposes of this title.

**HISTORY:**
    (Dec. 29, 1945, ch 652, Title I, § 1, 59 Stat. 669.)

1 of 1 DOCUMENT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2007, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE OCTOBER 25, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 204 -- IMMIGRANT PETITIONS
SUBPART A -- IMMIGRANT VISA PETITIONS

**Go to the CFR Archive Directory**

*8 CFR 204.5*

§ 204.5 Petitions for employment-based immigrants.

(a) General. A petition to classify an alien under section 203(b)(1), 203(b)(2), or 203(b)(3) of the Act must be filed on Form I-140, Petition for Immigrant Worker. A petition to classify an alien under section 203(b)(4) (as it relates to special immigrants under section 101(a)(27)(C)) must be filed on kForm I-360, Petition for Amerasian, Widow, or Special Immigrant. A separate Form I-140 or I-360 must be filed for each beneficiary, accompanied by the applicable fee. A petition is considered properly filed if it is:

(1) Accepted for processing under the provisions of part 103;

(2) Accompanied by any required individual labor certification, application for Schedule A designation, or evidence that the alien's occupation qualifies as a shortage occupation within the Department of Labor's Labor Market Information Pilot Program; and

(3) Accompanied by any other required supporting documentation.

(b) Jurisdiction. Form I-140 or I-360 must be filed with the Service Center having jurisdiction over the intended place of employment, unless specifically designated for local filing by the Associate Commissioner for Examinations.

(c) Filing petition. Any United States employer desiring and intending to employ an alien may file a petition for classification of the alien under section 203(b)(1)(B), 203(b)(1)(C), 203(b)(2), or 203(b)(3) of the Act. An alien, or any person in the alien's behalf, may file a petition for classification under section 203(b)(1)(A) or 203(b)(4) of the Act (as it relates to special immigrants under section 101(a)(27)(C) of the Act).

(d) Priority date. The priority date of any petition filed for classification under section 203(b) of the Act which is accompanied by an individual labor certification from the Department of Labor shall be the date the request for certification was accepted for processing by any office within the employment service system of the Department of Labor. The priority date of a petition filed for classification as a special immigrant under section 203(b)(4) of the Act shall be the date the completed, signed petition (including all initial evidence and the correct fee) is properly filed with the Service. The priority date of an alien who filed for classification as a special immigrant prior to October 1, 1991, and who is the beneficiary of an approved I-360 petition after October 1, 1991, shall be the date the alien applied for an immigrant visa or adjustment of status. In the case of a special immigrant alien who applied for adjustment before October 1, 1991, Form I-360 may be accepted and adjudicated at a Service District Office or sub-office.

(e) Retention of section 203(b) (1), (2), or (3) priority date. -- A petition approved on behalf of an alien under sections 203(b) (1), (2), or (3) of the Act accords the alien the priority date of the approved petition for any subsequently

filed petition for any classification under sections 203(b) (1), (2), or (3) of the Act for which the alien may qualify. In the event that the alien is the beneficiary of multiple petitions under sections 203(b) (1), (2), or (3) of the Act, the alien shall be entitled to the earliest priority date. A petition revoked under sections 204(e) or 205 of the Act will not confer a priority date, nor will any priority date be established as a result of a denied petition. A priority date is not transferable to another alien.

(f) Maintaining the priority date of a third or sixth preference petition filed prior to October 1, 1991 -- Any petition filed before October 1, 1991, and approved on any date, to accord status under section 203(a)(3) or 203(a)(6) of the Act, as in effect before October 1, 1991, shall be deemed a petition approved to accord status under section 203(b)(2) or within the appropriate classification under section 203(b)(3), respectively, of the Act as in effect on or after October 1, 1991, provided that the alien applies for an immigrant visa or adjustment of status within the two years following notification that an immigrant visa is immediately available for his or her use.

(g) Initial evidence -- (1) General. Specific requirements for initial supporting documents for the various employment-based immigrant classifications are set forth in this section. In general, ordinary legible photocopies of such documents (except for labor certifications from the Department of Labor) will be acceptable for initial filing and approval. However, at the discretion of the director, original documents may be required in individual cases. Evidence relating to qualifying experience or training shall be in the form of letter(s) from current or former employer(s) or trainer(s) and shall include the name, address, and title of the writer, and a specific description of the duties performed by the alien or of the training received. If such evidence is unavailable, other documentation relating to the alien's experience or training will be considered.

(2) Ability of prospective employer to pay wage. Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence. Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements. In a case where the prospective United States employer employs 100 or more workers, the director may accept a statement from a financial officer of the organization which establishes the prospective employer's ability to pay the proffered wage. In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service.

(h) Aliens with extraordinary ability. (1) An alien, or any person on behalf of the alien, may file an I-140 visa petition for classification under section 203(b)(1)(A) of the Act as an alien of extraordinary ability in the sciences, arts, education, business, or athletics.

(2) Definition. As used in this section:

Extraordinary ability means a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor.

(3) Initial evidence. A petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise. Such evidence shall include evidence of a one-time achievement (that is, a major, international recognized award), or at least three of the following:

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

(4) If the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility.

(5) No offer of employment required. Neither an offer for employment in the United States nor a labor certification is required for this classification; however, the petition must be accompanied by clear evidence that the alien is coming to the United States to continue work in the area of expertise. Such evidence may include letter(s) from prospective employer(s), evidence of prearranged commitments such as contracts, or a statement from the beneficiary detailing plans on how he or she intends to continue his or her work in the United States.

(i) Outstanding professors and researchers. (1) Any United States employer desiring and intending to employ a professor or researcher who is outstanding in an academic field under section 203(b)(1)(B) of the Act may file an I-140 visa petition for such classification.

(2) Definitions. As used in this section:

Academic field means a body of specialized knowledge offered for study at an accredited United States university or institution of higher education.

Permanent, in reference to a research position, means either tenured, tenure-track, or for a term of indefinite or unlimited duration, and in which the employee will ordinarily have an expectation of continued employment unless there is good cause for termination.

(3) Initial evidence. A petition for an outstanding professor or researcher must be accompanied by:

(i) Evidence that the professor or researcher is recognized internationally as outstanding in the academic field specified in the petition. Such evidence shall consist of at least two of the following:

(A) Documentation of the alien's receipt of major prizes or awards for outstanding achievement in the academic field;

(B) Documentation of the alien's membership in associations in the academic field which require outstanding achievements of their members;

(C) Published material in professional publications written by others about the alien's work in the academic field. Such material shall include the title, date, and author of the material, and any necessary translation;

(D) Evidence of the alien's participation, either individually or on a panel, as the judge of the work of others in the same or an allied academic field;

(E) Evidence of the alien's original scientific or scholarly research contributions to the academic field; or

(F) Evidence of the alien's authorship of scholarly books or articles (in scholarly journals with international circulation) in the academic field;

(ii) Evidence that the alien has at least three years of experience in teaching and/or research in the academic field. Experience in teaching or research while working on an advanced degree will only be acceptable if the alien has acquired the degree, and if the teaching duties were such that he or she had full responsibility for the class taught or if the research conducted toward the degree has been recognized within the academic field as outstanding. Evidence of teach-

8 CFR 204.5

ing and/or research experience shall be in the form of letter(s) from current or former employer(s) and shall include the name, address, and title of the writer, and a specific description of the duties performed by the alien; and

(iii) An offer of employment from a prospective United States employer. A labor certification is not required for this classification. The offer of employment shall be in the form of a letter from:

(A) A United States university or institution of higher learning offering the alien a tenured or tenure-track teaching position in the alien's academic field;

(B) A United States university or institution of higher learning offering the alien a permanent research position in the alien's academic field; or

(C) A department, division, or institute of a private employer offering the alien a permanent research position in the alien's academic field. The department, division, or institute must demonstrate that it employs at least three persons full-time in research positions, and that it has achieved documented accomplishments in an academic field.

(j) Certain multinational executives and managers. (1) A United States employer may file a petition on Form I-140 for classification of an alien under section 203(b)(1)(C) of the Act as a multinational executive or manager.

(2) Definitions. As used in this section:

Affiliate means:

(A) One of two subsidiaries both of which are owned and controlled by the same parent or individual;

(B) One of two legal entities owned and controlled by the same group of individuals, each individual owning and controlling approximately the same share or proportion of each entity; or

(C) In the case of a partnership that is organized in the United States to provide accounting services, along with managerial and/or consulting services, and markets its accounting services under an internationally recognized name under an agreement with a worldwide coordinating organization that is owned and controlled by the member accounting firms, a partnership (or similar organization) that is organized outside the United States to provide accounting' services shall be considered to be an affiliate of the United States partnership if it markets its accounting services under the same internationally recognized name under the agreement with the worldwide coordinating organization of which the United States partnership is also a member.

Doing business means the regular, systematic, and continuous provision of goods and/or services by a firm, corporation, or other entity and does not include the mere presence of an agent or office.

Executive capacity means an assignment within an organization in which the employee primarily:

(A) Directs the management of the organization or a major component or function of the organization;

(B) Establishes the goals and policies of the organization, component, or function;

(C) Exercises wide latitude in discretionary decisionmaking; and

(D) Receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

Managerial capacity means an assignment within an organization in which the employee primarily:

(A) Manages the organization, or a department, subdivision, function, or component of the organization;

(B) Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

(C) If another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization), or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

(D) Exercises direction over the day-to-day operations of the activity or function for which the employee has authority.

Multinational means that the qualifying entity, or its affiliate, or subsidiary, conducts business in two or more countries, one of which is the United States.

Subsidiary means a firm, corporation, or other legal entity of which a parent owns, directly or indirectly, more than half of the entity and controls the entity; or owns, directly or indirectly, half of the entity and controls the entity; or owns, directly or indirectly, 50 percent of a 50-50 joint venture and has equal control and veto power over the entity; or owns, directly or indirectly, less than half of the entity, but in fact controls the entity.

(3) Initial evidence -- (i) Required evidence. A petition for a multinational executive or manager must be accompanied by a statement from an authorized official of the petitioning United States employer which demonstrates that:

(A) If the alien is outside the United States, in the three years immediately preceding the filing of the petition the alien has been employed outside the United States for at least one year in a managerial or executive capacity by a firm or corporation, or other legal entity, or by an affiliate or subsidiary of such a firm or corporation or other legal entity; or

(B) If the alien is already in the United States working for the same employer or a subsidiary or affiliate of the firm or corporation, or other legal entity by which the alien was employed overseas, in the three years preceding entry as a nonimmigrant, the alien was employed by the entity abroad for at least one year in a managerial or executive capacity;

(C) The prospective employer in the United States is the same employer or a subsidiary or affiliate of the firm or corporation or other legal entity by which the alien was employed overseas; and

(D) The prospective United States employer has been doing business for at least one year.

(ii) Appropriate additional evidence. In appropriate cases, the director may request additional evidence.

(4) Determining managerial or exectuve capacities -- (i) Supervisors as managers. A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of his or her supervisory duties unless the employees supervised are professional.

(ii) Staffing levels. If staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity, the reasonable needs of the organization, component, or function, in light of the overall purpose and stage of development of the organization, component, or function, shall be taken into account. An individual shall not be considered to be acting in a managerial or executive capacity merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed.

(5) Offer of employment. No labor certification is required for this classification; however, the prospective employer in the United States must furnish a job offer in the form of a statement which indicates that the alien is to be employed in the United States in a managerial or executive capacity. Such letter must clearly describe the duties to be performed by the alien.

(k) Aliens who are members of the professions holding advanced degrees or aliens of exceptional ability. (1) Any United States employer may file a petition on Form I-140 for classification of an alien under section 203(b)(2) of the Act as an alien who is a member of the professions holding an advanced degree or an alien of exceptional ability in the sciences, arts, or business. If an alien is claiming exceptional ability in the sciences, arts, or business and is seeking an exemption from the requirement of a job offer in the United States pursuant to section 203(b)(2)(B) of the Act, then the alien, or anyone in the alien's behalf, may be the petitioner.

(2) Definitions. As used in this section: Advanced degree means any United States academic or professional degree or a foreign equivalent degree above that of baccalaureate. A United States baccalaureate degree or a foreign equivalent degree followed by at least five years of progressive experience in the specialty shall be considered the equivalent of a master's degree. If a doctoral degree is customarily required by the specialty, the alien must have a United States doctorate or a foreign equivalent degree.

Exceptional ability in the sciences, arts, or business means a degree of expertise significantly above that ordinarily encountered in the sciences, arts, or business.

Profession means one of the occupations listed in section 101(a)(32) of the Act, as well as any occupation for which a United States baccalaureate degree or its foreign equivalent is the minimum requirement for entry into the occupation.

(3) *Initial evidence.* The petition must be accompanied by documentation showing that the alien is a professional holding an advanced degree or an alien of exceptional ability in the sciences, the arts, or business.

(i) To show that the alien is a professional holding an advanced degree, the petition must be accompanied by:

(A) An official academic record showing that the alien has a United States advanced degree or a foreign equivalent degree; or

(B) An official academic record showing that the alien has a United States baccalaureate degree or a foreign equivalent degree, and evidence in the form of letters from current or former employer(s) showing that the alien has at least five years of progressive post-baccalaureate experience in the specialty.

(ii) To show that the alien is an alien of exceptional ability in the sciences, arts, or business, the petition must be accompanied by at least three of the following:

(A) An official academic record showing that the alien has a degree, diploma, certificate, or similar award from a college, university, school, or other institution of learning relating to the area of exceptional ability;

(B) Evidence in the form of letter(s) from current or former employer(s) showing that the alien has at least ten years of full-time experience in the occupation for which he or she is being sought;

(C) A license to practice the profession or certification for a particular profession or occupation;

(D) Evidence that the alien has commanded a salary, or other renumeration for services, which demonstrates exceptional ability;

(E) Evidence of membership in professional associations; or

(F) Evidence of recognition for achievements and significant contributions to the industry or field by peers, governmental entities, or professional or business organizations.

(iii) If the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility.

(4) *Labor certification or evidence that alien qualifies for Labor Market Information Pilot Program --* (i) *General.* Every petition under this classification must be accompanied by an individual labor certification from the Department of Labor, by an application for Schedule A designation (if applicable), or by documentation to establish that the alien qualifies for one of the shortage occupations in the Department of Labor's Labor Market Information Pilot Program. To apply for Schedule A designation or to establish that the alien's occupation is within the Labor Market Information Program, a fully executed uncertified Form ETA-750 in duplicate must accompany the petition. The job offer portion of the individual labor certification, Schedule A application, or Pilot Program application must demonstrate that the job requires a professional holding an advanced degree or the equivalent or an alien of exceptional ability.

(ii) *Exemption from job offer.* The director may exempt the requirement of a job offer, and thus of a labor certification, for aliens of exceptional ability in the sciences, arts, or business if exemption would be in the national interest. To apply for the exemption, the petitioner must submit Form ETA-750B, Statement of Qualifications of Alien, in duplicate, as well as evidence to support the claim that such exemption would be in the national interest.

(l) *Skilled workers, professionals, and other workers.* (1) Any United States employer may file a petition on Form I-140 for classification of an alien under section 203(b)(3) as a skilled worker, professional, or other (unskilled) worker.

(2) *Definitions.* As used in this part:

*Other worker* means a qualified alien who is capable, at the time of petitioning for this classification, of performing unskilled labor (requiring less than two years training or experience), not of a temporary or seasonal nature, for which qualified workers are not available in the United States.

*Professional* means a qualified alien who holds at least a United States baccalaureate degree or a foreign equivalent degree and who is a member of the professions.

*Skilled worker* means an alien who is capable, at the time of petitioning for this classification, of performing skilled labor (requiring at least two years training or experience), not of a temporary or seasonal nature, for which qualified workers are not available in the United States. Relevant post-secondary education may be considered as training for the purposes of this provision.

(3) Initial evidence -- (i) Labor certification or evidence that alien qualifies for Labor Market Information Pilot Program. Every petition under this classification must be accompanied by an individual labor certification from the Department of Labor, by an application for Schedule A designation, or by documentation to establish that the alien qualifies for one of the shortage occupations in the Department of Labor's Labor Market Information Pilot Program. To apply for Schedule A designation or to establish that the alien's occupation is a shortage occupation with the Labor Market Pilot Program, a fully executed uncertified Form ETA-750 in duplicate must accompany the petition. The job offer portion of an individual labor certification, Schedule A application, or Pilot Program application for a professional must demonstrate that the job requires the minimum of a baccalaureate degree.

(ii) Other documentation -- (A) General. Any requirements of training or experience for skilled workers, professionals, or other workers must be supported by letters from trainers or employers giving the name, address, and title of the trainer or employer, and a description of the training received or the experience of the alien.

(B) Skilled workers. If the petition is for a skilled worker, the petition must be accompanied by evidence that the alien meets the educational, training or experience, and any other requirements of the individual labor certification, meets the requirements for Schedule A designation, or meets the requirements for the Labor Market Information Pilot Program occupation designation. The minimum requirements for this classification are at least two years of training or experience.

(C) Professionals. If the petition is for a professional, the petition must be accompanied by evidence that the alien holds a United States baccalaureate degree or a foreign equivalent degree and by evidence that the alien is a member of the professions. Evidence of a baccalaureate degree shall be in the form of an official college or university record showing the date the baccalaureate degree was awarded and the area of concentration of study. To show that the alien is a member of the professions, the petitioner must submit evidence showing that the minimum of a baccalaureate degree is required for entry into the occupation.

(D) Other workers. If the petition is for an unskilled (other) worker, it must be accompanied by evidence that the alien meets any educational, training and experience, and other requirements of the labor certification.

(4) Differentiating between skilled and other workers. The determination of whether a worker is a skilled or other worker will be based on the requirements of training and/or experience placed on the job by the prospective employer, as certified by the Department of Labor. In the case of a Schedule A occupation or a shortage occupation within the Labor Market Pilot Program, the petitioner will be required to establish to the director that the job is a skilled job, i.e., one which requires at least two years of training and/or experience.

(m) Religious workers -- (1) An alien, or any person in behalf of the alien, may file an I-360 visa petition for classification under section 203(b)(4) of the Act as a section 101(a)(27)(C) special immigrant religious worker. Such a petition may be filed by or for an alien, who (either abroad or in the United States) for at least the two years immediately preceding the filing of the petition has been a member of a religious denomination which has a bona fide nonprofit religious organization in the United States. The alien must be coming to the United States solely for the purpose of carrying on the vocation of a minister of that religious denomination, working for the organization at the organization's request in a professional capacity in a religious vocation or occupation for the organization or a bona fide organization which is affiliated with the religious denomination and is exempt from taxation as an organization described in *section 501(c)(3) of the Internal Revenue Code of 1986* at the request of the organization. All three types of religious workers must have been performing the vocation, professional work, or other work continuously (either abroad or in the United States) for at least the two-year period immediately preceding the filing of the petition. Professional workers and other workers must obtain permanent resident status through immigration or adjustment of status on or before September 30, 1997, in order to immigrate under section 203(b)(4) of the Act as section 101(a)(27)(C) special immigrant religious workers.

(2) Definitions. As used in this section:

Bona fide nonprofit religious organization in the United States means an organization exempt from taxation as described in *section 501(c)(3) of the Internal Revenue Code of 1986* as it relates to religious organizations, or one that has never sought such exemption but establishes to the satisfaction of the Service that it would be eligible therefor if it had applied for tax exempt status.

Bona fide organization which is affiliated with the religious denomination means an organization which is closely associated with the religious denomination and which is exempt from taxation as described in *section 501(c)(3) of the Internal Revenue Code of 1986* as it relates to religious organizations.

Minister means an individual duly authorized by a recognized religious denomination to conduct religious worship and to perform other duties usually performed by authorized members of the clergy of that religion. In all cases, there must be a reasonable connection between the activities performed and the religious calling of the minister. The term does not include a lay preacher not authorized to perform such duties.

Professional capacity means an activity in a religious vocation or occupation for which the minimum of a United States baccalaureate degree or a foreign equivalent degree is required.

Religious denomination means a religious group or community of believers having some form of ecclesiastical government, a creed or statement of faith, some form of worship, a formal or informal code of doctrine and discipline, religious services and ceremonies, established places of religious worship, religious congregations, or comparable indicia of a bona fide religious denomination. For the purposes of this definition, an inter-denominational religious organization which is exempt from taxation pursuant to *section 501(c)(3) of the Internal Revenue Code of 1986* will be treated as a religious denomination.

Religious occupation means an activity which relates to a traditional religious function. Examples of individuals in religious occupations include, but are not limited to, liturgical workers, religious instructors, religious counselors, cantors, catechists, workers in religious hospitals or religious health care facilities, missionaries, religious translators, or religious broadcasters. This group does not include janitors, maintenance workers, clerks, fund raisers, or persons solely involved in the solicitation of donations.

Religious vocation means a calling to religious life evidenced by the demonstration of commitment practiced in the religious denomination, such as the taking of vows. Examples of individuals with a religious vocation include, but are not limited to, nuns, monks, and religious brothers and sisters.

(3) Initial evidence. Unless otherwise specified, each petition for a religious worker must be accompanied by:

(i) Evidence that the organization qualifies as a nonprofit organization in the form of either:

(A) Documentation showing that it is exempt from taxation in accordance with *section 501(c)(3) of the Internal Revenue Code of 1986* as it relates to religious organizations (in appropriate cases, evidence of the organization's assets and methods of operation and the organization's papers of incorporation under applicable state law may be requested); or

(B) Such documentation as is required by the Internal Revenue Service to establish eligibility for exemption under *section 501(c)(3) of the Internal Revenue Code of 1986* as it relates to religious organizations; and

(ii) A letter from an authorized official of the religious organization in the United States which (as applicable to the particular alien) establishes:

(A) That, immediately prior to the filing of the petition, the alien has the required two years of membership in the denomination and the required two years of experience in the religious vocation, professional religious work, or other religious work; and

(B) That, if the alien is a minister, he or she has authorization to conduct religious worship and to perform other duties usually performed by authorized members of the clergy, including a detailed description of such authorized duties. In appropriate cases, the certificate of ordination or authorization may be requested; or

(C) That, if the alien is a religious professional, he or she has at least a United States baccalaureate or its foreign equivalent required for entry into the religious profession. In all professional cases, an official academic record showing that the alien has the required degree must be submitted; or

(D) That, if the alien is to work in another religious vocation or occupation, he or she is qualified in the religious vocation or occupation. Evidence of such qualifications may include, but need not be limited to, evidence establishing that the alien is a nun, monk, or religious brother, or that the type of work to be done relates to a traditional religious function.

(iii) If the alien is to work in a non-ministerial and non-professional capacity for a bona fide religious organization which is affiliated with the religious denomination, the letter from the authorized official must explain how the affiliation exists. A tax-exempt certificate indicating that the affiliated organization is exempt from taxation in accordance with *section 501(c)(3) of the Internal Revenue Code of 1986* as it relates to religious organizations is required in this instance.

(iv) In appropriate cases, the director may request appropriate additional evidence relating to the eligibility under section 203(b)(4) of the Act of the religious organization, the alien, or the affiliated organization.

(4) Job offer. The letter from the authorized official of the religious organization in the United States must also state how the alien will be solely carrying on the vocation of a minister (including any terms of payment for services or other remuneration), or how the alien will be paid or remunerated if the alien will work in a professional religious capacity or in other religious work. The documentation should clearly indicate that the alien will not be solely dependent on supplemental employment or solicitation of funds for support. In doubtful cases, additional evidence such as bank letters, recent audits, church membership figures, and/or the number of individuals currently receiving compensation may be requested.

(n) Closing action -- (1) Approval. An approved employment-based petition will be forwarded to the National Visa Center of the Department of State if the beneficiary resides outside of the United States. If the Form I-140 petition indicates that the alien has filed or will file an application for adjustment to permanent residence in the United States (Form I-485) the approved visa petition (Form I-140), will be retained by the Service for consideration with the application for permanent residence (Form I-485). If a visa is available, and Form I-485 has not been filed, the alien will be instructed on the Form I-797, Notice of Action, (mailed out upon approval of the Form I-140 petition) to file the Form I-485.

(2) Denial. The denial of a petition for classification under section 203(b)(1), 203(b)(2), 203(b)(3), or 203(b)(4) of the Act (as it relates to special immigrants under section 101(a)(27)(C) of the Act) shall be appealable to the Associate Commissioner for Examinations. The petitioner shall be informed in plain language of the reasons for denial and of his or her right to appeal.

(3) Validity of approved petitions. Unless revoked under section 203(e) or 205 of the Act, an employment-based petition is valid indefinitely.

**HISTORY:** *[56 FR 60905,* Nov. 29, 1991; *59 FR 502,* Jan. 5, 1994, as confirmed at *59 FR 51360,* Oct. 11, 1994; *59 FR 27229,* May 26, 1994; *60 FR 29753,* June 6, 1995; *61 FR 33304, 33305,* June 27, 1996, as confirmed at *62 FR 4631,* Jan. 31, 1997; *67 FR 49561, 49563,* July 31, 2002]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
*8 U.S.C. 1101,* 1103, 1151, 1153, 1154, 1182, 1186a, 1255, 1641; 8 CFR part 2.

**NOTES:** NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.


NOTES APPLICABLE TO ENTIRE CHAPTER:
CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.
This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |

LEXSTAT 8 CFR 205.1

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2007, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE NOVEMBER 7, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 205 -- REVOCATION OF APPROVAL OF PETITIONS

**Go to the CFR Archive Directory**

*8 CFR 205.1*

§ 205.1 Automatic revocation.

(a) Reasons for automatic revocation. The approval of a petition or self-petition made under section 204 of the Act and in accordance with part 204 of this chapter is revoked as of the date of approval:

(1) If the Secretary of State shall terminate the registration of the beneficiary pursuant to the provisions of section 203(e) of the Act before October 1, 1991, or section 203(g) of the Act on or after October 1, 1994;

(2) If the filing fee and associated service charge are not paid within 14 days of the notification to the remitter that his or her check or other financial instrument used to pay the filing fee has been returned as not payable; or

(3) If any of the following circumstances occur before the beneficiary's or self-petitioner's journey to the United States commences or, if the beneficiary or self-petitioner is an applicant for adjustment of status to that of a permanent resident, before the decision on his or her adjustment application becomes final:

(i) Immediate relative and family-sponsored petitions, other than Amerasian petitions. (A) Upon written notice of withdrawal filed by the petitioner or self-petitioner with any officer of the Service who is authorized to grant or deny petitions.

(B) Upon the death of the beneficiary or the self-petitioner.

(C) Upon the death of the petitioner, unless:

(1) The petition is deemed under *8 CFR 204.2(i)(1)(iv)* to have been approved as a Form I-360, Petition for Amerasian, Widow(er) or Special Immigrant under *8 CFR 204.2(b)*; or

(2) U.S. Citizenship and Immigration Services (USCIS) determines, as a matter of discretion exercised for humanitarian reasons in light of the facts of a particular case, that it is inappropriate to revoke the approval of the petition. USCIS may make this determination only if the principal beneficiary of the visa petition asks for reinstatement of the approval of the petition and establishes that a person related to the principal beneficiary in one of the ways described in section 213A(f)(5)(B) of the Act is willing and able to file an affidavit of support under 8 CFR part 213a as a substitute sponsor.

(D) Upon the legal termination of the marriage when a citizen or lawful permanent resident of the United States has petitioned to accord his or her spouse immediate relative or family-sponsored preference immigrant classification under section 201(b) or section 203(a)(2) of the Act. The approval of a spousal self-petition based on the relationship to an abusive citizen or lawful permanent resident of the United States filed under section 204(a)(1)(A)(iii) or 204(a)(1)(B)(ii) of the Act, however, will not be revoked solely because of the termination of the marriage to the abuser.

(E) Upon the remarriage of the spouse of an abusive citizen or lawful permanent resident of the United States when the spouse has self-petitioned under section 204(a)(1)(A)(iii) or 204(a)(1)(B)(ii) of the Act for immediate relative classification under section 201(b) of the Act or for preference classification under section 203(a)(2) of the Act.

(F) Upon a child reaching the age of 21, when he or she has been accorded immediate relative status under section 201(b) of the Act. A petition filed on behalf of a child under section 204(a)(1)(A)(i) of the Act or a self-petition filed by a child of an abusive United States citizen under section 204(a)(1)(A)(iv) of the Act, however, will remain valid for the duration of the relationship to accord preference status under section 203(a)(1) of the Act if the beneficiary remains unmarried, or to accord preference status under section 203(a)(3) of the Act if he or she marries.

(G) Upon the marriage of a child, when he or she has been accorded immediate relative status under section 201(b) of the Act. A petition filed on behalf of the child under section 204(a)(1)(A)(i) of the Act or a self-petition filed by a child of an abusive United States citizen under section 204(a)(1)(A)(iv) of the Act, however, will remain valid for the duration of the relationship to accord preference status under section 203(a)(3) of the Act if he or she marries.

(H) Upon the marriage of a person accorded preference status as a son or daughter of a United States citizen under section 203(a)(1) of the Act. A petition filed on behalf of the son or daughter, however, will remain valid for the duration of the relationship to accord preference status under section 203(a)(3) of the Act.

(I) Upon the marriage of a person accorded status as a son or daughter of a lawful permanent resident alien under section 203(a)(2) of the Act.

(J) Upon legal termination of the petitioner's status as an alien admitted for lawful permanent residence in the United States unless the petitioner became a United States citizen. The provisions of 8 CFR 204.2(i)(3) shall apply if the petitioner became a United States citizen.

(ii) Petition for Pub. L. 97-359 Amerasian. (A) Upon formal notice of withdrawal filed by the petitioner with the officer who approved the petition.

(B) Upon the death of the beneficiary.

(C) Upon the death or bankruptcy of the sponsor who executed Form I-361, Affidavit of Financial Support and Intent to Petition for Legal Custody for Pub. L. 97-359 Amerasian. In that event, a new petition may be filed in the beneficiary's behalf with the documentary evidence relating to sponsorship and, in the case of a beneficiary under 18 years of age, placement. If the new petition is approved, it will be given the priority date of the previously approved petition.

(D) Upon the death or substitution of the petitioner if other than the beneficiary or sponsor. However, if the petitioner dies or no longer desires or is able to proceed with the petition, and another person 18 years of age or older, an emancipated minor, or a corporation incorporated in the United States desires to be substituted for the deceased or original petitioner, a written request may be submitted to the Service or American consular office where the petition is located to reinstate the petition and restore the original priority date.

(E) Upon the beneficiary's reaching the age of 21 when the beneficiary has been accorded classification under section 201(b) of the Act. Provided that all requirements of section 204(f) of the Act continue to be met, however, the petition is to be considered valid for purposes of according the beneficiary preference classification under section 203(a)(1) of the Act if the beneficiary remains unmarried or under section 203(a)(3) if the beneficiary marries.

(F) Upon the beneficiary's marriage when the beneficiary has been accorded classification under section 201(b) or section 203(a)(1) of the Act. Provided that all requirements of section 204(f) of the Act continue to be met, however, the petition is to be considered valid for purposes of according the beneficiary preference classification under section 203(a)(3) of the Act.

(iii) Petitions under section 203(b), other than special immigrant juvenile petitions. (A) Upon invalidation pursuant to 20 CFR Part 656 of the labor certification in support of the petition.

(B) Upon the death of the petitioner or beneficiary.

(C) Upon written notice of withdrawal filed by the petitioner, in employment-based preference cases, with any officer of the Service who is authorized to grant or deny petitions.

(D) Upon termination of the employer's business in an employment-based preference case under section 203(b)(1)(B), 203(b)(1)(C), 203(b)(2), or 203(b)(3) of the Act.

(iv) Special immigrant juvenile petitions. Unless the beneficiary met all of the eligibility requirements as of November 29, 1990, and the petition requirements as of November 29, 1990, and the petition for classification as a special immigrant juvenile was filed before June 1, 1994, or unless the change in circumstances resulted from the beneficiary's adoption or placement in a guardianship situation:

(A) Upon the beneficiary reaching the age of 21;

(B) Upon the marriage of the beneficiary;

(C) Upon the termination of the beneficiary's dependency upon the juvenile court;

(D) Upon the termination of the beneficiary's eligibility for long-term foster care; or

(E) Upon the determination in administrative or judicial proceedings that it is in the beneficiary's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or of his or her parent or parents.

(b) Notice. When it shall appear to the director that the approval of a petition has been automatically revoked, he or she shall cause a notice of such revocation to be sent promptly to the consular office having jurisdiction over the visa application and a copy of such notice to be mailed to the petitioner's last known address.

**HISTORY:** *[41 FR 55849,* Dec. 23, 1976, as amended at *48 FR 19156,* Apr. 28, 1983; *49 FR 29567,* July 23, 1984; *49 FR 30679,* Aug. 1, 1984; *53 FR 30017,* Aug. 10, 1988; *58 FR 42850,* Aug. 12, 1993; *61 FR 13061, 13077,* Mar. 26, 1996; *71 FR 35732, 35732,* June 21, 2006]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
*8 U.S.C. 1101,* 1103, 1151, 1153, 1154, 1155, 1182, and 1186a

**NOTES:** [EFFECTIVE DATE NOTE: *71 FR 35732, 35749,* June 21, 2006, revised paragraph (a)(3)(i)(C), effective July 21, 2006.]
NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:
CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.
This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2007, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE NOVEMBER 7, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 214 -- NONIMMIGRANT CLASSES

**Go to the CFR Archive Directory**

8 CFR 214.2

§ 214.2 Special requirements for admission, extension, and maintenance of status.


The general requirements in § 214.1 are modified for the following nonimmigrant classes:

(a) Foreign government officials -- (1) General. The determination by a consular officer prior to admission and the recognition by the Secretary of State subsequent to admission is evidence of the proper classification of a nonimmigrant under section 101(a)(15)(A) of the Act. An alien who has a nonimmigrant status under section 101(a)(15)(A)(i) or (ii) of the Act is to be admitted for the duration of the period for which the alien continues to be recognized by the Secretary of State as being entitled to that status. An alien defined in section (101)(a)(15)(A)(iii) of the Act is to be admitted for an initial period of not more than three years, and may be granted extensions of temporary stay in increments of not more than two years. In addition, the application for extension of temporary stay must be accompanied by a statement signed by the employing official stating that he/she intends to continue to employ the applicant and describing the type of work the applicant will perform.

(2) Definition of A-1 or A-2 dependent. For purposes of employment in the United States, the term dependent of an A-1 or A-2 principal alien, as used in § 214.2(a), means any of the following immediate members of the family habitually residing in the same household as the principal alien who is an officer or employee assigned to a diplomatic or consular office in the United States:

(i) Spouse;

(ii) Unmarried children under the age of 21;

(iii) Unmarried sons or daughters under the age of 23 who are in full-time attendance as students at post-secondary educational institutions;

(iv) Unmarried sons or daughters under the age of 25 who are in full-time attendance as students at post-secondary educational institutions if a formal bilateral employment agreement permitting their employment in the United States was signed prior to November 21, 1988, and such bilateral employment agreement does not specify 23 as the maximum age for employment of such sons and daughters. The Office of Protocol of the Department of State shall maintain a listing of foreign states with which the United States has such bilateral employment agreements;

(v) Unmarried sons or daughters who are physically or mentally disabled to the extent that they cannot adequately care for themselves or cannot establish, maintain or re-establish their own households. The Department of State or the Service may require certification(s) as it deems sufficient to document such mental or physical disability.

description of the position offered and the duties to be performed; the salary offered; and verification that the dependent possesses the qualifications for the position.

(ii) The Department of State reviews and verifies the information provided, makes its determination, and endorses the Form I-566.

(iii) If the Department of State's endorsement is favorable, the dependent may apply to the Service. A dependent whose principal alien is stationed at a post in Washington, DC, or New York City shall apply to the District Director, Washington, DC, or New York City, respectively. A dependent whose principal alien is stationed elsewhere shall apply to the District Director, Washington, DC, unless the Service, through the Department of State, directs the dependent to apply to the district director having jurisdiction over his or her place of residence. Directors of the regional service centers may have concurrent adjudicative authority for applications filed within their respective regions. When applying to the Service, the dependent must present his or her Form I-566 with a favorable endorsement from the Department of State and any additional documentation as may be required by the Attorney General.

(7) Period of time for which employment may be authorized. If approved, an application to accept or continue employment under this section shall be granted in increments of not more than three years each.

(8) No appeal. There shall be no appeal from a denial of permission to accept or continue employment under this section.

(9) Dependents or family members of principal aliens classified A-3. A dependent or family member of a principal alien classified A-3 may not be employed in the United States under this section.

(10) Unauthorized employment. An alien classified under section 101(a)(15)(A) of the Act who is not a principal alien and who engages in employment outside the scope of, or in a manner contrary to this section, may be considered in violation of section 241(a)(1)(C)(i) of the Act. An alien who is classified under section 101(a)(15)(A) of the Act who is a principal alien and who engages in employment outside the scope of his/her official position may be considered in violation of section 241(a)(1)(C)(i) of the Act.

(b) Visitors -- (1) General. any B-1 visitor for business or B-2 visitor for pleasure may be admitted for not more than one year and may be granted extensions of temporary stay in increments of not more than six months each, except that alien members of a religious denomination coming temporarily and solely to do missionary work in behalf of a religious denomination may be granted extensions of not more than one year each, provided that such work does not involve the selling of articles or the solicitation or acceptance of donations. Those B-1 and B-2 visitors admitted pursuant to the waiver provided at § 212.1(e) of this chapter may be admitted to and stay on Guam for period not to exceed fifteen days and are not eligible for extensions of stay.

(2) Minimum six month admissions. Any B-2 visitor who is found otherwise admissible and is issued a Form I-94, will be admitted for a minimum period of six months, regardless of whether less time is requested, provided, that any required passport is valid as specified in section 212(a)(26) of the Act. Exceptions to the minimum six month admission may be made only in individual cases upon the specific approval of the district director for good cause.

(3) Visa Waiver Pilot Program. Special requirements for admission and maintenance of status for visitors admitted to the United States under the Visa Waiver Pilot Program are set forth in section 217 of the Act and part 217 of this chapter.

(4) Admission of aliens pursuant to the North American Free Trade Agreement (NAFTA). A citizen of Canada or Mexico seeking temporary entry for purposes set forth in paragraph (b)(4)(i) of this section, who otherwise meets existing requirements under section 101(a)(15)(B) of the Act, including but not limited to requirements regarding the source of remuneration, shall be admitted upon presentation of proof of such citizenship in the case of Canadian applicants, and valid, unexpired entry documents such as a passport and visa, or a passport and BCC in the case of Mexican applicants, a description of the purpose for which the alien is seeking admission, and evidence demonstrating that he or she is engaged in one of the occupations or professions set forth in paragraph (b)(4)(i) of this section. Existing requirements, with respect to Canada, are those requirements which were in effect at the time of entry into force of the Canada/U.S. Free Trade Agreement and, with respect to Mexico, are those requirements which were in effect at the time of entry into force of the NAFTA. Additionally, nothing shall preclude the admission of a citizen of Mexico or Canada who meets the requirements of paragraph (b)(4)(ii) of this section.

(i) Occupations and professions set forth in Appendix 1603.A.1 to Annex 1603 of the NAFTA -- (A) Research and design. Technical scientific and statistical researchers conducting independent research or research for an enterprise located in the territory of another Party.

(B) Growth, manufacture and production (1) Harvester owner supervising a harvesting crew admitted under applicable law. (Applies only to harvesting of agricultural crops: Grain, fiber, fruit and vegetables.)

(2) Purchasing and production management personnel conducting commercial transactions for an enterprise located in the territory of another Party.

(C) Marketing. (1) Market researchers and analyst conducting independent research or analysis, or research or analysis for an enterprise located in the territory of another Party.

(2) Trade fair and promotional personnel attending a trade convention.

(D) Sales. (1) Sales representatives and agents taking orders or negotiating contracts for goods or services for an enterprise located in the territory of another Party but not delivering goods or providing services.

(2) Buyers purchasing for an enterprise located in the territory of another Party.

(E) Distribution. (1) Transportation operators transporting goods or passengers to the United States from the territory of another Party or loading and transporting goods or passengers from the United States to the territory of another Party, with no unloading in the United States, to the territory of another Party. (These operators may make deliveries in the United States if all goods or passengers to be delivered were loaded in the territory of another Party. Furthermore, they may load from locations in the United States if all goods or passengers to be loaded will be delivered in the territory of another Party. Purely domestic service or solicitation, in competition with the United States operators, is not permitted.)

(2) Customs brokers performing brokerage duties associated with the export of goods from the United States to or through Canada.

(F) After-sales service. Installers, repair and maintenance personnel, and supervisors, possessing specialized knowledge essential to the seller's contractual obligation, performing services or training workers to perform services, pursuant to a warranty or other service contract incidental to the sale of commercial or industrial equipment or machinery, including computer software, purchased from an enterprise located outside the United States, during the life of the warranty or service agreement. (For the purposes of this provision, the commercial or industrial equipment or machinery, including computer software, must have been manufactured outside the United States.)

(G) General service. (1) Professionals engaging in a business activity at a professional level in a profession set out in Appendix 1603.D.1 to Annex 1603 of the NAFTA, but receiving no salary or other remuneration from a United States source (other than an expense allowance or other reimbursement for expenses incidental to the temporary stay) and otherwise satisfying the requirements of Section A to Annex 1063 of the NAFTA.

(2) Management and supervisory personnel engaging in commercial transactions for an enterprise located in the territory of another Party.

(3) Financial services personnel (insurers, bankers or investment brokers) engaging in commercial transactions for an enterprise located in the territory of another Party.

(4) Public relations and advertising personnel consulting with business associates, or attending or participating in conventions.

(5) Tourism personnel (tour and travel agents, tour guides or tour operators) attending or participating in conventions or conducting a tour that has begun in the territory of another Party. (The tour may begin in the United States; but must terminate in foreign territory, and a significant portion of the tour must be conducted in foreign territory. In such a case, an operator may enter the United States with an empty conveyance and a tour guide may enter on his or her own and join the conveyance.)

(6) Tour bus operators entering the United States:

(i) With a group of passengers on a bus tour that has begun in, and will return to, the territory of another Party.

(ii) To meet a group of passengers on a bus tour that will end, and the predominant portion of which will take place, in the territory of another Party.

(iii) With a group of passengers on a bus tour to be unloaded in the United States and returning with no passengers or reloading with the group for transportation to the territory of another Party.

(7) Translators or interpreters performing services as employees of an enterprise located in the territory of another Party.

(ii) Occupations and professions not listed in Appendix 1603.A.1 to Annex 1603 of the NAFTA. Nothing in this paragraph shall preclude a business person engaged in an occupation or profession other than those listed in Appendix 1603.A.1 to Annex 1603 of the NAFTA from temporary entry under section 101(a)(15)(B) of the Act, if such person otherwise meets the existing requirements for admission as prescribed by the Attorney General.

(5) Construction workers not admissible. Aliens seeking to enter the country to perform building or construction work, whether on-site or in-plant, are not eligible for classification or admission as B-1 nonimmigrants under section 101(a)(15)(B) of the Act. However, alien nonimmigrants otherwise qualified as B-1 nonimmigrants may be issued visas and may enter for the purpose of supervision or training of others engaged in building or construction work, but not for the purpose of actually performing any such building or construction work themselves.

(6) [Reserved]

(7) Enrollment in a course of study prohibited. An alien who is admitted as, or changes status to, a B-1 or B-2 non-immigrant on or after April 12, 2002, or who files a request to extend the period of authorized stay in B-1 or B-2 non-immigrant status on or after such date, violates the conditions of his or her B-1 or B-2 status if the alien enrolls in a course of study. Such an alien who desires to enroll in a course of study must either obtain an F-1 or M-1 nonimmigrant visa from a consular officer abroad and seek readmission to the United States, or apply for and obtain a change of status under section 248 of the Act and 8 CFR part 248. The alien may not enroll in the course of study until the Service has admitted the alien as an F-1 or M-1 nonimmigrant or has approved the alien's application under part 248 of this chapter and changed the alien's status to that of an F-1 or M-1 nonimmigrant.

(c) Transits

(1) [Reserved]

(2) United Nations Headquarters District. An alien of the class defined in section 101(a)(15)(C) of the Act, whose visa is limited to transit to and from the United Nations Headquarters District, if otherwise admissible, shall be admitted on the additional conditions that he proceed directly to the immediate vicinity of the United Nations Headquarters District, and remain there continuously, departing therefrom only if required in connection with his departure from the United States, and that he have a document establishing his ability to enter some country other than the United States following his sojourn in the United Nations Headquarters District. The immediate vicinity of the United Nations Headquarters District is that area lying within a twenty-five mile radius of Columbus Circle, New York, NY.

(3) Others. The period of admission of an alien admitted under section 101(a)(15)(C) of the Act shall not exceed 29 days.

(d) Crewmen. (1) The provisions of parts 251, 252, 253, and 258 of this chapter shall govern the landing of crew-men as nonimmigrants of the class defined in section 101(a)(15)(D) of the Act. An alien in this status may be employed only in a crewman capacity on the vessel or aircraft of arrival, or on a vessel or aircraft of the same transportation company, and may not be employed in connection with domestic flights or movements of a vessel or aircraft. However, nonimmigrant crewmen may perform crewmember duties through stopovers on an international flight for any United States carrier where such flight uses a single aircraft and has an origination or destination point outside the United States.

(2) Denial of crewman status in the case of certain labor disputes (D nonimmigrants). (i) An alien shall be denied D crewman status as described in section 101(a)(15)(D) of the Act if:

(A) The alien intends to land for the purpose of performing service on a vessel of the United States (as defined in 46 U.S.C. 2101(46)) or an aircraft of an air carrier (as defined in section 101(3) of the Federal Aviation Act of 1958); and

(17) Current name and address. A student must inform the DSO and the Service of any legal changes to his or her name or of any change of address, within 10 days of the change, in a manner prescribed by the school. A student enrolled at a SEVIS school can satisfy the requirement in 8 CFR 265.1 of notifying the Service by providing a notice of a change of address within 10 days to the DSO, who in turn shall enter the information in SEVIS within 21 days of notification by the student. A student enrolled at a non-SEVIS school must submit a notice of change of address to the Service, as provided in 8 CFR 265.1, within 10 days of the change. Except in the case of a student who cannot receive mail where he or she resides, the address provided by the student must be the actual physical location where the student resides rather than a mailing address. In cases where a student provides a mailing address, the school must maintain a record of, and must provide upon request from the Service, the actual physical location where the student resides.

(18) Special rules for certain border commuter students -- (i) Applicability. For purposes of the special rules in this paragraph (f)(18), the term "border commuter student" means a national of Canada or Mexico who is admitted to the United States as an F-1 nonimmigrant student to enroll in a full course of study, albeit on a part-time basis, in an approved school located within 75 miles of a United States land border. A border commuter student must maintain actual residence and place of abode in the student's country of nationality, and seek admission to the United States at a land border port-of-entry. These special rules do not apply to a national of Canada or Mexico who is:

(A) Residing in the United States while attending an approved school as an F-1 student, or

(B) Enrolled in a full course of study as defined in paragraph (f)(6) of this section.

(ii) Full course of study. The border commuter student must be enrolled in a full course of study at the school that leads to the attainment of a specific educational or professional objective, albeit on a part-time basis. A designated school official at the school may authorize an eligible border commuter student to enroll in a course load below that otherwise required for a full course of study under paragraph (f)(6) of this section, provided that the reduced course load is consistent with the border commuter student's approved course of study.

(iii) Period of admission. An F-1 nonimmigrant student who is admitted as a border commuter student under this paragraph (f)(18) will be admitted until a date certain. The DSO is required to specify a completion date on the Form I-20 that reflects the actual semester or term dates for the commuter student's current term of study. A new Form I-20 will be required for each new semester or term that the border commuter student attends at the school. The provisions of paragraphs (f)(5) and (f)(7) of this section, relating to duration of status and extension of stay, are not applicable to a border commuter student.

(iv) Employment. A border commuter student may not be authorized to accept any employment in connection with his or her F-1 student status, except for curricular practical training as provided in paragraph (f)(10)(i) of this section or post-completion optional practical training as provided in paragraph (f)(10)(ii)(A)(3) of this section.

(19) Remittance of the fee. An alien who applies for F-1 or F-3 nonimmigrant status in order to enroll in a program of study at a Department of Homeland Security (DHS)-approved educational institution is required to pay the Student and Exchange Visitor Information System (SEVIS) fee to DHS, pursuant to 8 CFR 214.13, except as otherwise provided in that section.

(g) Representatives to international organizations -- (1) General. The determination by a consular officer prior to admission and the recognition by the Secretary of State subsequent to admission is evidence of the proper classification of a nonimmigrant under section 101(a)(15)(G) of the Act. An alien who has a nonimmigrant status under section 101(a)(15)(G) (i), (ii), (iii) or (iv) of the Act is to be admitted for the duration of the period for which the alien continues to be recognized by the Secretary of State as being entitled to that status. An alien defined in section (101)(a)(15)(G)(v) of the Act is to be admitted for an initial period of not more than three years, and may be granted extensions of temporary stay in increments of not more than two years. In addition, the application for extension of temporary stay must be accompanied by a statement signed by the employing official stating that he or she intends to continue to employ the applicant and describing the type of work the applicant will perform.

(2) Definition of G-1, G-3, or G-4 dependent. For purposes of employment in the United States, the term dependent of a G-1, G-3, or G-4 principal alien, as used in § 214.2(g), means any of the following immediate members of the family habitually residing in the same household as the principal alien who is an officer or employee assigned to a mission, to an international organization, or is employed by an international organization in the United States:

(i) Spouse;

(iii) or (v) of this part but is not covered by the terms of a bilateral agreement or de facto arrangement may be allowed to continue in employment until whichever of the following occurs first:

(i) The employment authorization by the Department of State expires; or

(ii) He or she no longer qualifies as a dependent as that term is defined in this section; or

(iii) March 19, 1990.

(h) Temporary employees -- (1) Admission of temporary employees -- (i) General. Under section 101(a)(15)(H) of the Act, an alien may be authorized to come to the United States temporarily to perform services or labor for, or to receive training from, an employer, if petitioned for by that employer. Under this nonimmigrant category, the alien may be classified as follows: under section 101(a)(15)(H)(i)(c) of the Act as a registered nurse; under section 101(a)(15)(H)(i)(b) of the Act as an alien who is coming to perform services in a specialty occupation, services relating to a Department of Defense (DOD) cooperative research and development project or coproduction project, or services as a fashion model who is of distinguished merit and ability; under section 101(a)(15)(H)(ii)(a) of the Act as an alien who is coming to perform agricultural labor or services of a temporary or seasonal nature; under section 101(a)(15)(H)(ii)(b) of the Act as an alien coming to perform other temporary services or labor; or under section 101(a)(15)(H)(iii) of the Act as an alien who is coming as a trainee or as a participant in a special education exchange visitor program. These classifications are called H-1C, H-1B, H-2A, H-2B, and H-3, respectively. The employer must file a petition with the Service for review of the services or training and for determination of the alien's eligibility for classification as a temporary employee or trainee, before the alien may apply for a visa or seek admission to the United States. This paragraph sets forth the standards and procedures applicable to these classifications.

(ii) Description of classification. (A) An H-1C classification applies to an alien who is coming temporarily to the United States to perform services as a registered nurse, meets the requirements of section 212(m)(1) of the Act, and will perform services at a facility (as defined at section 212(m)(6) of the Act) for which the Secretary of Labor has determined and certified to the Attorney General that an unexpired attestation is on file and in effect under section 212(m)(2) of the Act. This classification will expire 4 years from June 11, 2001.

(B) An H-1B classification applies to an alien who is coming temporarily to the United States:

(1) To perform services in a specialty occupation (except agricultural workers, and aliens described in section 101(a)(15) (O) and (P) of the Act) described in section 214(i)(1) of the Act, that meets the requirements of section 214(i)(2) of the Act, and for whom the Secretary of Labor has determined and certified to the Attorney General that the prospective employer has filed a labor condition application under section 212(n)(1) of the Act;

(2) To perform services of an exceptional nature requiring exceptional merit and ability relating to a cooperative research and development project or a coproduction project provided for under a Government-to-Government agreement administered by the Secretary of Defense;

(3) To perform services as a fashion model of distinguished merit and ability and for whom the Secretary of Labor has determined and certified to the Attorney General that the prospective employer has filed a labor condition application under section 212(n)(1) of the Act.

(C) An H-2A classification applies to an alien who is coming temporarily to the United States to perform agricultural work of a temporary or seasonal nature.

(D) An H-2B classification applies to an alien who is coming temporarily to the United States to perform nonagricultural work of a temporary or seasonal nature, if unemployed persons capable of performing such service or labor cannot be found in this country. This classification does not apply to graduates of medical schools coming to the United States to perform services as members of the medical profession. The temporary or permanent nature of the services or labor to be performed must be determined by the service. This classification requires a temporary labor certification issued by the Secretary of Labor or the Governor of Guam, or a notice from one of these individuals that such a certification cannot be made, prior to the filing of a petition with the Service.

(E) An H-3 classification applies to an alien who is coming temporarily to the United States:

(1) As a trainee, other than to receive graduate medical education or training, or training provided primarily at or by an academic or vocational institution, or

(5) If the Secretary of Labor notifies the Service that the petitioning employer has failed to meet a condition of paragraph (B) of section 212(n)(1) of the Act, has substantially failed to meet a condition of paragraphs (C) or (D) of section 212(n)(1) of the Act, has willfully failed to meet a condition of paragraph (A) of section 212(n)(1) of the Act, or has misrepresented any material fact in the application, the Service shall not approve petitions filed with respect to that employer under section 204 or 214(c) of the Act for a period of at least one year from the date of receipt of such notice.

(6) If the employer's labor condition application is suspended or invalidated by the Department of Labor, the Service will not suspend or revoke the employer's approved petitions for aliens already employed in specialty occupations if the employer has certified to the Department of Labor that it will comply with the terms of the labor condition application for the duration of the authorized stay of aliens it employs.

(C) General requirements for petitions involving an alien of distinguished merit and ability in the field of fashion modeling -- H-1B classification may be granted to an alien who is of distinguished merit and ability in the field of fashion modeling. An alien of distinguished merit and ability in the field of fashion modeling is one who is prominent in the field of fashion modeling. The alien must also be coming to the United States to perform services which require a fashion model of prominence.

(ii) Definitions.

Prominence means a high level of achievement in the field of fashion modeling evidenced by a degree of skill and recognition substantially above that ordinarily encountered to the extent that a person described as prominent is renowned, leading, or well-known in the field of fashion modeling.

Recognized authority means a person or an organization with expertise in a particular field, special skills or knowledge in that field, and the expertise to render the type of opinion requested. Such an opinion must state:

(1) The writer's qualifications as an expert;

(2) The writer's experience giving such opinions, citing specific instances where past opinions have been accepted as authoritative and by whom;

(3) How the conclusions were reached; and

(4) The basis for the conclusions supported by copies or citations of any research material used.

Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

United States employer means a person, firm, corporation, contractor, or other association, or organization in the United States which:

(1) Engages a person to work within the United States;

(2) Has an employer-employee relationship with respect to employees under this part, as indicated by the fact that it may hire, pay, fire, supervise, or otherwise control the work of any such employee; and

(3) Has an Internal Revenue Service Tax identification number.

(iii) Criteria for H-1B petitions involving a specialty occupation -- (A) Standards for specialty occupation position. To qualify as a specialty occupation, the position must meet one of the following criteria:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

(B) *Petitioner requirements.* The petitioner shall submit the following with an H-1B petition involving a specialty occupation:

(1) A certification from the Secretary of Labor that the petitioner has filed a labor condition application with the Secretary,

(2) A statement that it will comply with the terms of the labor condition application for the duration of the alien's authorized period of stay,

(3) Evidence that the alien qualifies to perform services in the specialty occupation as described in paragraph (h)(4)(iii)(A) of this section, and

(C) *Beneficiary qualifications.* To qualify to perform services in a specialty occupation, the alien must meet one of the following criteria:

(1) Hold a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university;

(2) Hold a foreign degree determined to be equivalent to a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university;

(3) Hold an unrestricted State license, registration or certification which authorizes him or her to fully practice the specialty occupation and be immediately engaged in that specialty in the state of intended employment; or

(4) Have education, specialized training, and/or progressively responsible experience that is equivalent to completion of a United States baccalaureate or higher degree in the specialty occupation, and have recognition of expertise in the specialty through progressively responsible positions directly related to the specialty.

(D) *Equivalence to completion of a college degree.* For purposes of paragraph (h)(4)(iii)(C)(4) of this section, equivalence to completion of a United States baccalaureate or higher degree shall mean achievement of a level of knowledge, competence, and practice in the specialty occupation that has been determined to be equal to that of an individual who has a baccalaureate or higher degree in the specialty and shall be determined by one or more of the following:

(1) An evaluation from an official who has authority to grant college-level credit for training and/or experience in the specialty at an accredited college or university which has a program for granting such credit based on an individual's training and/or work experience;

(2) The results of recognized college-level equivalency examinations or special credit programs, such as the College Level Examination Program (CLEP), or Program on Noncollegiate Sponsored Instruction (PONSI);

(3) An evaluation of education by a reliable credentials evaluation service which specializes in evaluating foreign educational credentials;

(4) Evidence of certification or registration from a nationally-recognized professional association or society for the specialty that is known to grant certification or registration to persons in the occupational specialty who have achieved a certain level of competence in the specialty;

(5) A determination by the Service that the equivalent of the degree required by the specialty occupation has been acquired through a combination of education, specialized training, and/or work experience in areas related to the specialty and that the alien has achieved recognition of expertise in the specialty occupation as a result of such training and experience. For purposes of determining equivalency to a baccalaureate degree in the specialty, three years of specialized training and/or work experience must be demonstrated for each year of college-level training the alien lacks. For equivalence to an advanced (or Masters) degree, the alien must have a baccalaureate degree followed by at least five years of experience in the specialty. If required by a specialty, the alien must hold a Doctorate degree or its foreign equivalent. It must be clearly demonstrated that the alien's training and/or work experience included the theoretical and practical application of specialized knowledge required by the specialty occupation; that the alien's experience was gained while working with peers, supervisors, or subordinates who have a degree or its equivalent in the specialty occu-

(B) When an alien in an H classification has spent the maximum allowable period of stay in the United States, a new petition under sections 101(a)(15) (H) or (L) of the Act may not be approved unless that alien has resided and been physically present outside the United States, except for brief trips for business or pleasure, for the time limit imposed on the particular H classification. Brief trips to the United States for business or pleasure during the required time abroad are not interruptive, but do not count towards fulfillment of the required time abroad. The petitioner shall provide information about the alien's employment, place of residence, and the dates and purposes of any trips to the United States during the period that the alien was required to spend time abroad.

(ii) H-1C limitation on admission. The maximum period of admission for an H-1C nonimmigrant alien is 3 years. The maximum period of admission for an H-1C alien begins on the date the H-1C alien is admitted to the United and ends on the third anniversary of the alien's admission date. Periods of time spent out of the United States for business or personal reasons during the validity period of the H-1C petition count towards the alien's maximum period of admission. When an H-1C alien has reached the 3-year maximum period of admission, the H-1C alien is no longer eligible for admission to the United States as an H-1C nonimmigrant alien.

(iii) H-1B limitation on admission. (A) Alien in a specialty occupation or an alien of distinguished merit and ability in the field of fashion modeling. An H-1B alien in a specialty occupation or an alien of distinguished merit and ability who has spent six years in the United States under section 101(a)(15)(H) and/or (L) of the Act may not seek extension, change status, or be readmitted to the United States under section 101(a)(15) (H) or (L) of the Act unless the alien has resided and been physically present outside the United States, except for brief trips for business or pleasure, for the immediate prior year.

(B) Alien involved in a DOD research and development or coproduction project. An H-1B alien involved in a DOD research and development or coproduction project who has spent 10 years in the United States under section 101(a)(15) (H) and/or (L) of the Act may not seek extension, change status, or be readmitted to the United States under section 101(a)(15) (H) or (L) of the Act to perform services involving a DOD research and development project or coproduction project. A new petition or change of status under section 101(a)(15) (H) or (L) of the Act may not be approved for such an alien unless the alien has resided and been physically present outside the United States, except for brief trips for business or pleasure, for the immediate prior year.

(iv) H-2B and H-3 limitation on admission. An H-2B alien who has spent 3 years in the United States under section 101(a)(15)(H) and/or (L) of the Act; an H-3 alien participant in a special education program who has spent 18 months in the United States under section 101(a)(15)(H) and/or (L) of the Act; and an H-3 alien trainee who has spent 24 months in the United States under section 101(a)(15)(H) and/or (L) of the Act may not seek extension, change status, or be readmitted to the United States under section 101(a)(15)(H) and/or (L) of the Act unless the alien has resided and been physically present outside the United States for the immediate prior 6 months.

(v) Exceptions. The limitations in paragraph (h)(13)(iii) through (h)(13)(iv) of this section shall not apply to H-1B, H-2B, and H-3 aliens who did not reside continually in the United States and whose employment in the United States was seasonal or intermittent or was for an aggregate of six months or less per year. In addition, the limitations shall not apply to aliens who reside abroad and regularly commute to the United States to engage in part-time employment. To qualify for this exception, the petitioner and the alien must provide clear and convincing proof that the alien qualifies for such an exception. Such proof shall consist of evidence such as arrival and departure records, copies of tax returns, and records of employment abroad.

(14) Extension of visa petition validity. The petitioner shall file a request for a petition extension on Form I-129 to extend the validity of the original petition under section 101(a)(15)(H) of the Act. Supporting evidence is not required unless requested by the director. A request for a petition extension may be filed only if the validity of the original petition has not expired.

(15) Extension of stay -- (i) General. The petitioner shall apply for extension of an alien's stay in the United States by filing a petition extension on Form I-129 accompanied by the documents described for the particular classification in paragraph (h)(15)(ii) of this section. The petitioner must also request a petition extension. The dates of extension shall be the same for the petition and the beneficiary's extension of stay. The beneficiary must be physically present in the United States at the time of the filing of the extension of stay. Even though the requests to extend the petition and the alien's stay are combined on the petition, the director shall make a separate determination on each. If the alien is required to leave the United States for business or personal reasons while the extension requests are pending, the petitioner may request the director to cable notification of approval of the petition extension to the consular office abroad

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2007, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE NOVEMBER 7, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 20 -- EMPLOYEES' BENEFITS
CHAPTER V -- EMPLOYMENT AND TRAINING ADMINISTRATION, DEPARTMENT OF LABOR
PART 656 -- LABOR CERTIFICATION PROCESS FOR PERMANENT EMPLOYMENT OF ALIENS IN THE
UNITED STATES
SUBPART A -- PURPOSE AND SCOPE OF PART 656

**Go to the CFR Archive Directory**

20 CFR 656.1

§ 656.1 Purpose and scope of part 656.


(a) Under section 212(a)(5)(A) of the Immigration and Nationality Act (INA or Act) (8 U.S.C. 1182(a)(5)(A)), certain aliens may not obtain immigrant visas for entrance into the United States in order to engage in permanent employment unless the Secretary of Labor has first certified to the Secretary of State and to the Secretary of Homeland Security that:

(1) There are not sufficient United States workers who are able, willing, qualified and available at the time of application for a visa and admission into the United States and at the place where the alien is to perform the work; and

(2) The employment of the alien will not adversely affect the wages and working conditions of United States workers similarly employed.

(b) The regulations under this part set forth the procedures through which such immigrant labor certifications may be applied for, and granted or denied.

(c) Correspondence and questions about the regulations in this part should be addressed to: Office of Foreign Labor Certification, Employment and Training Administration, 200 Constitution Avenue, NW., Room C-4312, Washington, DC 20210.

**HISTORY:** [45 FR 83933, Dec. 19, 1980, as amended at 56 CFR 54927, Oct. 23, 1991; 69 FR 77326, 77387, Dec. 27, 2004; 71 FR 35511, 35522, June 21, 2006]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
8 U.S.C. 1182(a)(5)(A), 1189(p)(1); section 122, Pub. L. 101-649, 109 Stat. 4978; and Title IV, Pub. L. 105-277, 112 Stat. 2681.

**NOTES:** [EFFECTIVE DATE NOTE: 71 FR 35511, 35522, June 21, 2006, amended this section, effective June 21, 2006.]
NOTES APPLICABLE TO ENTIRE TITLE:
EDITORIAL NOTE: Other regulations issued by the Department of Labor appear in 20 CFR chapters IV, V, VI, VII and IX, 29 CFR subtitle A and chapters II, IV, V, XVII and XXV, 30 CFR chapter I, 41 CFR chapters 50, 60, and 61, and 48 CFR chapter 29.

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2007, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE NOVEMBER 7, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 22 -- FOREIGN RELATIONS
CHAPTER I -- DEPARTMENT OF STATE
SUBCHAPTER E -- VISAS
PART 41 -- VISAS: DOCUMENTATION OF NONIMMIGRANTS UNDER THE IMMIGRATION AND
NATIONALITY ACT, AS AMENDED
SUBPART B -- CLASSIFICATION OF NONIMMIGRANTS

**Go to the CFR Archive Directory**

22 CFR 41.11

§ 41.11 Entitlement to nonimmigrant status.

(a) Presumption of immigrant status and burden of proof. An applicant for a nonimmigrant visa, other than an alien applying for a visa under INA 101(a)(15) (H)(i) or (L), shall be presumed to be an immigrant until the consular officer is satisfied that the alien is entitled to a nonimmigrant status described in INA 101(a)(15) or otherwise established by law or treaty. The burden of proof is upon the applicant to establish entitlement for nonimmigrant status and the type of nonimmigrant visa for which application is made.

(b) Aliens unable to establish nonimmigrant status. (1) A nonimmigrant visa shall not be issued to an alien who has failed to overcome the presumption of immigrant status established by INA 214(b).

(2) In a borderline case in which an alien appears to be otherwise entitled to receive a visa under INA 101(a)(15)(B) or (F) but the consular officer concludes that the maintenance of the alien's status or the departure of the alien from the United States as required is not fully assured, a visa may nevertheless be issued upon the posting of a bond with the Secretary of Homeland Security under terms and conditions prescribed by the consular officer.

**HISTORY:** [52 FR 42597, Nov. 5, 1987, as amended at 57 FR 31448, July 16, 1992; 61 FR 1834, 1835, Jan. 24, 1996; 71 FR 34519, 34521, June 15, 2006]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
8 U.S.C. 1104; Pub. L. 105-277, 112 Stat. 2681-795 through 2681-801; 8 U.S.C. 1185 note (section 7209 of Pub. L. 108-458).

**NOTES:** [EFFECTIVE DATE NOTE: 71 FR 34519, 34521, June 15, 2006, amended paragraph (b)(2), effective June 15, 2006.]
NOTES APPLICABLE TO ENTIRE TITLE:
CROSS REFERENCES: U.S. Customs Service, Department of the Treasury: See Customs Duties, 19 CFR chapter I.
International Trade Administration, Department of Commerce: See Commerce and Foreign Trade, 15 CFR chapter III.
Foreign-Trade Zones Board: See Commerce and Foreign Trade, 15 CFR chapter IV.
Immigration and Naturalization Service, Department of Justice: See Aliens and Nationality, 8 CFR chapter I.
Taxation pursuant to treaties: See Internal Revenue, 26 CFR 1.894-1.

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2007, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE NOVEMBER 7, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 22 -- FOREIGN RELATIONS
CHAPTER I -- DEPARTMENT OF STATE
SUBCHAPTER E -- VISAS
PART 41 -- VISAS: DOCUMENTATION OF NONIMMIGRANTS UNDER THE IMMIGRATION AND
NATIONALITY ACT, AS AMENDED
SUBPART C -- FOREIGN GOVERNMENT OFFICIALS

**Go to the CFR Archive Directory**

22 CFR 41.24

§ 41.24 International organization aliens.

(a) Definition of international organization. "International organization" means:

(1) Any public international organization which has been designated by the President by Executive Order as enti-
tled to enjoy the privileges, exemptions, and immunities provided for in the International Organizations Immunities Act
(59 Stat. 669, 22 U.S.C. 288); and

(2) For the purpose of special immigrant status under INA 101(a)(27)(I), INTELSAT or any successor or separated
entity thereof.

(b) Aliens coming to international organizations. (1) An alien is classifiable under INA 101(a)(15)(G) if the consu-
lar officer is satisfied that the alien is within one of the classes described in that section and seeks to enter or transit the
United States in pursuance of official duties. If the purpose of the entry or transit is other than pursuance of official du-
ties, the alien is not classifiable under INA 101(a)(15)(G).

(2) An alien applying for a visa under the provisions of INA 101(a)(15)(G) may not be refused solely on the
grounds that the applicant is not a national of the country whose government the applicant represents.

(3) An alien seeking to enter the United States as a foreign government representative to an international organiza-
tion, who is also proceeding to the United States on official business as a foreign government official within the mean-
ing of INA 101(a)(15)(A), shall be issued a visa under that section, if otherwise qualified.

(4) An alien not classifiable under INA 101(a)(15)(A) but entitled to classification under INA 101(a)(15)(G) shall
be classified under the latter section, even if also eligible for another nonimmigrant classification.

(c) Officers and employees of privatized INTELSAT, their family members and domestic servants. (1) Officers
and employees of privatized INTELSAT who both were employed by INTELSAT, and held status under INA
101(a)(15)(G)(iv) for at least six months prior to privatization on July 17,2001, will continue to be so classifiable for so
long as they are officers or employees of INTELSAT or a successor or separated entity thereof.

(2) Aliens who had had G -- 4 status as officers and employees of INTELSAT but became officers or employees of
a successor or separated entity of INTELSAT after at least six months of such employment, but prior to and in anticipa-

tion of privatization and subsequent to March 17, 2000, will also continue to be classifiable under INA 101(a)(15)(G)(iv) for so long as that employment continues.

(3) Family members of officers and employees described in paragraphs (c)(1) and (2) of this section who qualify as "immediate family" under § 41.21(a)(3) and who are accompanying or following to join the principal are also classifiable under INA 1010(a)(15)(G)(iv) for so long as the principal is so classified.

(4) Attendants, servants, and personal employees of officers and employees described in paragraphs (c)(1) and (2) of this section are not eligible for classification under INA 101(a)(15)(G)(v), given that the officers and employees described in paragraphs (c)(1) and (2) of this section are not officers or employees of an "international organization" for purposes of INA 101(a)(15)(G).

**HISTORY:** [52 FR 42597, Nov. 5, 1987; 67 FR 1413, 1414, Jan. 11, 2002; 67 FR 18821, 18822, Apr. 17, 2002, as confirmed at 68 FR 32359, 32360, May 30, 2003]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
8 U.S.C. 1104; Pub. L. 105-277, 112 Stat. 2681-795 through 2681-801; 8 U.S.C. 1185 note (section 7209 of Pub. L. 108-458).

**NOTES:** [EFFECTIVE DATE NOTE: 67 FR 1413, 1414, Jan. 11, 2002, revised paragraph (a), effective Jan. 11, 2002; 67 FR 18821, 18822, Apr. 17, 2002, revised paragraph (a) and added paragraph (c), effective Apr. 17, 2002.]
NOTES APPLICABLE TO ENTIRE TITLE:
CROSS REFERENCES: U.S. Customs Service, Department of the Treasury: See Customs Duties, 19 CFR chapter I.
International Trade Administration, Department of Commerce: See Commerce and Foreign Trade, 15 CFR chapter III.
Foreign-Trade Zones Board: See Commerce and Foreign Trade, 15 CFR chapter IV.
Immigration and Naturalization Service, Department of Justice: See Aliens and Nationality, 8 CFR chapter I.
Taxation pursuant to treaties: See Internal Revenue, 26 CFR 1.894-1.

545 words

OMB No. 1615-0015; Exp. 10/31/08

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# Instructions for I-140, Immigrant Petition for Alien Worker

## Instructions

Please read these instructions carefully to properly complete this form. If you need more space to complete an answer, use a separate sheet(s) of paper. Write your name and Alien Registration Number (A #), if any, at the top of each sheet of paper and indicate the part and number of the item to which the answer refers.

### What Is the Purpose of This Form?

This form is used to petition U.S. Citizenship and Immigration Services (USCIS) for an immigrant visa based on employment.

### Who May File This Form I-140?

**A U.S. employer may file this petition for:**

1. An outstanding professor or researcher, with at least three years of experience in teaching or research in the academic area, who is recognized internationally as outstanding:

   **A.** In a tenured or tenure-track position at a university or institution of higher education to teach in the academic area; or

   **B.** In a comparable position at a university or institution of higher education to conduct research in the area; or

   **C.** In a comparable position to conduct research for a private employer that employs at least three persons in full-time research activities and which achieved documented accomplishments in an academic field.

2. An alien who, in the three years preceding the filing of this petition, has been employed for at least one year by a firm or corporation or other legal entity and who seeks to enter the United States to continue to render services to the same employer, or to a subsidiary or affiliate, in a capacity that is managerial or executive.

3. A member of the professions holding an advanced degree or an alien with exceptional ability in the sciences, arts, or business who will substantially benefit the national economy, cultural or educational interests, or welfare of the United States.

4. A skilled worker (requiring at least two years of specialized training or experience in the skill) to perform labor for which qualified workers are not available in the United States.

5. A member of the professions with a baccalaureate degree.

6. An unskilled worker (requiring less than two years of specialized training or experience) to perform labor for which qualified workers are not available in the United States.

In addition, a person may file this petition on his or her own behalf if he or she:

1. Has extraordinary ability in the sciences, arts, education, business, or athletics demonstrated by sustained national or international acclaim, whose achievements have been recognized in the field; or

2. Is a member of the profession holding an advanced degree or is claiming exceptional ability in the sciences, arts, or business, and is seeking an exemption of the requirement of a job offer in the national interest (NIW).

### General Instructions

#### Step 1. Fill Out the Form I-140

1. Type or print legibly in black ink.

2. If extra space is needed to complete any item, attach a continuation sheet, indicate the item number, and date and sign each sheet.

3. Answer all questions fully and accurately. State that an item is not applicable with "N/A." If the answer is none, write "none."

#### Step 2. General requirements

**Initial Evidence.**

1. *If you are filing for an alien of extraordinary ability in the sciences, arts, education, business or athletics:*

   You must file your petition with evidence that the alien has sustained national or international acclaim and that the achievements have been recognized in the field of expertise.

   **A.** Evidence of a one-time achievement (i.e., a major, internationally recognized award); or

---

**EXHIBIT**

tabbies®    **3**

**B.** At least three of the following:

1. Receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

2. Membership in associations in the field which require outstanding achievements as judged by recognized national or international experts;

3. Published material about the alien in professional or major trade publications or other major media;

4. Participation on a panel or individually as a judge of the work of others in the field or an allied field;

5. Original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

6. Authorship of scholarly articles in the field, in professional or major trade publications or other major media;

7. Display of the alien's work at artistic exhibitions or showcases;

8. Evidence that the alien has performed in a leading or critical role for organizations or establishments that have distinguished reputations;

9. Evidence that the alien has commanded a high salary or other high remuneration for services;

10. Evidence of commercial successes in the performing arts, as shown by box office receipts or record, casette, compact disk, or video sales.

**C.** If the above standards do not readily apply to the alien's occupation, you may submit comparable evidence to establish the alien's eligibility; and

**D.** Evidence that the alien is coming to the United States to continue work in the area of expertise. Such evidence may include letter(s) from prospective employer(s), evidence of prearranged commitments such as contracts, or a statement from the alien detailing plans on how he or she intends to continue work in the United States.

**2.** *A U.S. employer filing for an outstanding professor or researcher must file the petition with:*

**A.** Evidence that the professor or researcher is recognized internationally as outstanding in the academic field specified in the petition. Such evidence shall consist of at least two of the following:

1. Receipt of major prizes or awards for outstanding achievement in the academic field;

2. Membership in associations in the academic field, which require outstanding achievements of their members;

3. Published material in professional publications written by others about the alien's work in the academic field;

4. Participation on a panel, or individually, as the judge of the work of others in the same or an allied academic field;

5. Original scientific or scholarly research contributions to the academic field; or

6. Authorship of scholarly books or articles, in scholarly journals with international circulation, in the academic field.

**B.** Evidence the beneficiary has at least three years of experience in teaching and/or research in the academic field; and

**C.** If you are a university or other institution of higher education, a letter indicating that you intend to employ the beneficiary in a tenured or tenure-track position as a teacher or in a permanent position as a researcher in the academic field; or

**D.** If you are a private employer, a letter indicating that you intend to employ the beneficiary in a permanent research position in the academic field, and evidence that you employ at least three full-time researchers and have achieved documented accomplishments in the field.

**3.** *A U.S. employer filing for a multinational executive or manager must file the petition with a statement which demonstrates that:*

**A.** If the worker is now employed outside the United States, that he or she has been employed outside the United States for at least one year in the past three years in an executive or managerial capacity by the petitioner or by its parent, branch, subsidiary or affiliate; or, if the worker is already employed in the United States, that he or she was employed outside the United States for at least one year in the three years preceding admission as a nonimmigrant in an executive or managerial capacity by the petitioner or by its parent, branch, subsidiary or affiliate;

**B.** The prospective employer in the United States is the same employer or a subsidiary or affiliate of the firm or corporation or other legal entity by which the alien was employed abroad;

**C.** The prospective United States employer has been doing business for at least one year; and

**D.** The alien is to be employed in the United States in a managerial or executive capacity. A description of the duties to be performed should be included.

**4.** *A U.S. employer filing for a member of the professions with an advanced degree or a person with exceptional ability in the sciences, arts or business must file the petition with:*

**A.** A labor certification (see **General Evidence**), or a request for a waiver of a job offer because the employment is deemed to be in the national interest, with documentation provided to show that the beneficiary's presence in the United States would be in the national interest; and either:

  **1.** An official academic record showing that the alien has a U.S. advanced degree or an equivalent foreign degree, or an official academic record showing that the alien has a U.S. baccalaureate degree or an equivalent foreign degree and letters from current or former employers showing that the alien has at least five years of progressive post- baccalaureate experience in the specialty; or

  **2.** At least three of the following:

    **a.** An official academic record showing that the alien has a degree, diploma, certificate, or similar award from an institution of learning relating to the area of exceptional ability;

    **b.** Letters from current or former employers showing that the alien has at least ten years of full-time experience in the occupation for which he or she is being sought;

    **c.** A license to practice the profession or certification for a particular profession or occupation;

    **d.** Evidence that the alien has commanded a salary, or other remuneration for services, which demonstrates exceptional ability;

    **e.** Evidence of membership in professional associations; or

    **f.** Evidence of recognition for achievements and significant contributions to the industry or field by peers, governmental entities, or professional or business organizations.

  **3.** If the above standards do not readily apply to the alien's occupation, you may submit comparable evidence to establish the alien's eligibility.

**5.** *A U.S. employer filing for a skilled worker must file the petition with:*

**A.** A labor certification (see **General Evidence**); and

**B.** Evidence that the alien meets the educational, training, or experience and any other requirements of the labor certification (the minimum requirement is two years of training or experience).

**6.** *A U.S. employer filing for a professional must file the petition with:*

**A.** A labor certification (see **General Evidence**);

**B.** Evidence that the alien holds a U.S. baccalaureate degree or equivalent foreign degree; and

**C.** Evidence that a baccalaureate degree is required for entry into the occupation.

**7.** *A U.S. employer filing for an unskilled worker must file the petition with:*

**A.** A labor certification (see **General Evidence**); and

**B.** Evidence that the beneficiary meets any education, training, or experience requirements required in the labor certification.

## General Evidence.

**1.** *Labor certification.*

Petitions for certain classifications must be filed with a certification from the U.S. Department of Labor or with documentation to establish that the alien qualifies for one of the shortage occupations in the Department of Labor's Labor Market Information Pilot Program or for an occupation in Group I or II of the Department of Labor's Schedule A.

A certification establishes that there are not sufficient workers who are able, willing, qualified, and available at the time and place where the alien is to be employed and that employment of the alien, if qualified, will not adversely affect the wages and working conditions of similarly employed U.S. workers. Application for certification is made on Form ETA-750 and is filed at the local office of the State Employment Service. If the alien is in a shortage occupation, or for a Schedule A/Group I or II occupation, you may file a fully completed, uncertified Form ETA-750 in duplicate with your petition for determination by the USCIS that the alien belongs to the shortage occupation.

**NOTE:** When filing for a Schedule A/Group I or II occupation, the petitioner must include evidence of having complied with the Department of Labor regulations at 20 CFR 656.222(b)(2), which require that the position or positions be properly posted for a minimum of ten consecutive days.

2. *Ability to pay wage.*

Petitions which require job offers must be accompanied by evidence that the prospective U.S. employer has the ability to pay the proffered wage. Such evidence shall be in the form of copies of annual reports, federal tax returns, or audited financial statements.

In a case where the prospective U.S. employer employs 100 or more workers, a statement from a financial officer of the organization which establishes ability to pay the wage may be submitted. In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted.

***Translations.*** Any document containing foreign language submitted to the Service shall be accompanied by a full English language translation which the translator has certified as complete and accurate, and by the translator's certification that he or she is competent to translate from the foreign language into English.

***Copies.*** Unless specifically required that an original document be filed with an application or petition, an ordinary legible photocopy may be submitted. Original documents submitted when not required will remain a part of the record, even if the submission was not required.

**Where To File?**

## Updated filing Address Information

The filing addresses provided on this form reflect the most current information as of the date this form was last printed. If you are filing Form I-140 more than 30 days after the latest edition date shown in the lower right-hand corner, please visit us online at www.uscis.gov before you file, and check the Forms and Fees page to confirm the correct filing address and version currently in use. Check the edition date located in the lower right-hand corner of the form. If the edition date on your Form I-140 matches the edition date listed for Form I-140 on the online Forms and Fees page, your version is current and will be accepted by USCIS. If the edition date on the online version is later, download a copy and use the online version. If you do not have Internet access, call Customer Service at 1-800-375-5283 to verify the current filing address and edition date. **Improperly filed forms will be rejected, and the fee returned, with instructions to resubmit the entire filing using the current form instructions.**

## Where to File

### E-Filing Form I-140

Certain Form I-140 filings may be electronically filed (E-Filed) with USCIS. Please view our website at www.uscis.gov for a list of who is eligible to e-file this form and instructions.

### Premium Processing

If you are requesting Premium Processing Services for Form I-140, you must also file Form I-907, Request for Premium Processing Service. Send the Forms I-140 and I-907 together to the address listed in the Form I-907 filing instructions. **NOTE:** Before you file the I-907/I-140 package, please check the Premium Processing Service page, a link to which can be found on the "Services & Benefits" page, on the USCIS website at www.uscis.gov to determine whether you may request Premium Processing for the requested classification.

For Form I-140 filed alone, mail the form to:

**USCIS Nebraska Service Center**
P.O. Box 87140
Lincoln, NE 68501-7140

For Form I-140 filed concurrently with Form I-485, Application to Register Permanent Residence or Adjust Status, mail your forms package to:

**USCIS Nebraska Service Center**
P.O. Box 87485
Lincoln, NE 68501-7485

## Texas Service Center Filings

File Form I-140 with the Texas Service Center if the beneficiary will be employed permanently in:

Alabama, Arkansas, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Mississippi, New Hampshire, New Jersey, New Mexico, New York, North Carolina, South Carolina, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, Tennessee, Texas, Vermont, Virginia, U.S. Virgin Islands or West Virginia.

For Form I-140 filed alone, or concurrently with Form I-485, Application to Register Permanent Residence or Adjust Status, mail your forms package to:

**USCIS Texas Service Center**
P.O. Box 852135
Mesquite, TX 75185

## Note on E-Filing

If you are e-filing this application, it will automatically be routed to the appropriate Service Center, and you will receive a receipt indicating the location to which it was routed. This location may not necessarily be the same center shown in the filing addresses listed above. For e-filed applications, it is very important to review your filing receipt and make specific note of the receiving location. All further communication, including submission of supporting documents, should be directed to the receiving location indicated on your e-filing receipt.

## What Is the Filing Fee?

The filing fee for a Form I-140 is **$475.00.**

Use the following guidelines when you prepare your check or money order for the Form I-140 fee:

1. The check or money order must be drawn on a bank or other financial institution located in the United States and must be payable in U.S. currency; and

2. Make the check or money order payable to **U.S. Department of Homeland Security,** unless:

   A. If you live in Guam and are filing your petition there, make it payable to **Treasurer, Guam.**

   B. If you live in the U.S. Virgin Islands and are filing your petition there, make it payable to **Commissioner of Finance of the Virgin Islands.**

**NOTE:** Please spell out U.S. Department of Homeland Security; do not use the initials "USDHS" or "DHS."

**Notice to Those Making Payment by Check.** If you send us a check, it will be converted into an electronic funds transfer (EFT). This means we will copy your check and use the account information on it to electronically debit your account for the amount of the check. The debit from your account will usually take 24 hours, and will be shown on your regular account statement.

You will not receive your original check back. We will destroy your original check, but we will keep a copy of it. If the EFT cannot be processed for technical reasons, you authorize us to process the copy in place of your original check. If the EFT cannot be completed because of insufficient funds, we may try to make the transfer up to two times.

**How to Check If the Fees Are Correct.**

The form fee on this form is current as of the edition date appearing in the lower right corner of this page. However, because USCIS fees change periodically, you can verify if the fees are correct by following one of the steps below:

1. Visit our website at **www.uscis.gov,** select "Immigration Forms" and check the appropriate fee;

2. Review the Fee Schedule included in your form package, if you called us to request the form; or

3. Telephone our National Customer Service Center at **1-800-375-5283** and ask for the fee information.

## Address Changes

If you change your address and you have an application or petition pending with USCIS, you may change your address on-line at www.uscis.gov, click on "Change your address with USCIS" and follow the prompts or by completing and mailing Form AR-11, Alien's Change of Address Card, to:

**U.S. Citizenship and Immigration Services**
**Change of Address**
**P.O. Box 7134**
**London, KY 40742-7134**

For commercial overnight or fast freight services only, mail to:

**U.S. Citizenship and Immigration Services**
**Change of Address**
**1084-I South Laurel Road**
**London, KY 40744**

## Processing Information

**Any Form I-140 that is not signed or accompanied by the correct fee, will be rejected with a notice that the Form I-140 is deficient.** You may correct the deficiency and resubmit the Form I-140. An application or petition is not considered properly filed until accepted by USCIS.

**Initial processing.** Once a Form I-140 has been accepted, it will be checked for completeness, including submission of the required initial evidence. If you do not completely fill out the form, or file it without required initial evidence, you will not establish a basis for eligibility and we may deny your Form I-140.

**Requests for more information or interview.** We may request more information or evidence, or we may request that you appear at a USCIS office for an interview. We may also request that you submit the originals of any copy. We will return these originals when they are no longer required.

**Decision.** The decision on a Form I-140 involves a determination of whether you have established eligiblity for the requested benefit. You will be notified of the decision in writing.

**Meaning of petition approval.** Approval of a petition means you have established that the person you are filling for is eligible for the requested classification.

This is the first step towards permanent residence. However, this does not in itself grant permanent residence or employment authorization. You will be given information about the requirements for the person to receive an immigrant visa or to adjust status after your petition is approved.

### Instructions for Industry and Occupation Codes.

*NAICS Code.* The North American Industry Classification System (NAICS) code can be obtained from the U.S. Department of Commerce, U.S. Census Bureau at (www. census.gov/epcd/www/naics.html). Enter the code from left to right, one digit in each of the six boxes. If you use a code which is less than six digits, enter the code left to right and then add zeros in the remaining unoccupied boxes.

The code sequence 33466 would be entered as:

| 3 | 3 | 4 | 6 | 6 | 0 |
|---|---|---|---|---|---|

The code sequence 5133 would be entered as:

| 5 | 1 | 3 | 3 | 0 | 0 |
|---|---|---|---|---|---|

*SOC Code.* The Standard Occupational Classification (SOC) System codes can be obtained from the Department of Labor, U.S. Bureau of Labor Statistics (http://stats.bls.gov/soc/ socguide.htm). Enter the code from left to right, one digit in each of the six boxes. If you use a code which is less than six digits, enter the code left to right and then add zeros in the remaining unoccupied boxes.

The code sequence 19-1021 would be entered as:

| 1 | 9 | — | 1 | 0 | 2 | 1 |
|---|---|---|---|---|---|---|

The code sequence 15-100 would be entered as:

| 1 | 5 | — | 1 | 0 | 0 | 0 |
|---|---|---|---|---|---|---|

## USCIS Forms and Information

To order USCIS forms, call our toll-free number at **1-800-870-3676.** You can also get USCIS forms and information on immigration laws, regulations and procedures by telephoning our National Customer Service Center at **1-800-375-5283** or visiting our internet website at **www.uscis. gov.**

As an altenative to waiting in line for assistance at your local USCIS office, you can now schedule an appointment through our internet-based system, **InfoPass**. To access the system, visit our website. Use the **InfoPass** appointment scheduler and follow the screen prompts to set up your appointment. **InfoPass** generates an electronic appointment notice that appears on the screen.

## Penalties.

If you knowingly and willfully falsify or conceal a material fact or submit a false document with this Form I-140, we will deny the Form Form I-140 and may deny any other immigration benefit.

In addition, you will face severe penalties provided by law and may be subject to criminal prosecution.

## Privacy Act Notice.

We ask for the information on this form, and associated evidence, to determine if you have established eligibility for the immigration benefit for which you are filing. Our legal right to ask for this information can be found in the Immigration and Nationality Act, as amended. We may provide this information to other government agencies. Failure to provide this information, and any requested evidence, may delay a final decision or result in denial of your Form I-140.

## Paperwork Reduction Act.

An agency may not conduct or sponsor an information collection and a person is not required to respond to a collection of information unless it displays a currently valid OMB control number. The public reporting burden for this collection of information is estimated at 60 minutes per response, including the time for reviewing instructions, completing and submitting the form. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to: U.S. Citizenship and Immigration Services, Regulatory Management Division, 111 Massachusetts Avenue, N.W., 3rd Floor, Suite 3008, Washington, DC 20529. OMB No. 1615-0015. **Do not mail your application to this address.**

OMB No. 1615-0015; Exp. 10/31/08

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Form I-140, Immigrant
Petition for Alien Worker**

**START HERE - Please type or print in black ink.**

| | For USCIS Use Only |
|---|---|

**Part 1.    Information about the person or organization filing this petition.** If an individual is filing, use the top name line. Organizations should use the second line.

Family Name (Last Name)    Given Name (First Name)    Full Middle Name

Company or Organization Name

Address: (Street Number and Name)    Suite #

Attn:

City

State/Province

Country    Zip/Postal Code

IRS Tax #    U.S. Social Security # (if any)    E-Mail Address (if any)

**Part 2.  Petition type.**

This petition is being filed for: (Check one.)

a. ☐ An alien of extraordinary ability.

b. ☐ An outstanding professor or researcher.

c. ☐ A multinational executive or manager.

d. ☐ A member of the professions holding an advanced degree or an alien of exceptional ability (who is NOT seeking a National Interest Waiver).

e. ☐ A professional (at a minimum, possessing a bachelor's degree or a foreign degree equivalent to a U.S. bachelor's degree) or a skilled worker (requiring at least two years of specialized training or experience).

f. ☐ (Reserved.)

g. ☐ Any other worker (requiring less than two years of training or experience).

h. ☐ Soviet Scientist.

i. ☐ An alien applying for a National Interest Waiver (who IS a member of the professions holding an advanced degree or an alien of exceptional ability).

**For USCIS Use Only**

| Returned | Receipt |
|---|---|
| Date | |
| Date | |
| Resubmitted | |
| Date | |
| Date | |
| Reloc Sent | |
| Date | |
| Date | |
| Reloc Rec'd | |
| Date | |
| Date | |

**Classification:**
☐ 203(b)(1)(A) Alien of Extraordinary Ability
☐ 203(b)(1)(B) Outstanding Professor or Researcher
☐ 203(b)(1)(C) Multi-National Executive or Manager
☐ 203(b)(2) Member of Professions w/Adv. Degree or Exceptional Ability
☐ 203(b)(3)(A)(i) Skilled Worker
☐ 203(b)(3)(A)(ii) Professional
☐ 203(b)(3)(A)(iii) Other Worker

**Certification:**
☐ National Interest Waiver (NIW)
☐ Schedule A, Group I
☐ Schedule A, Group II

| Priority Date | Consulate |
|---|---|

**Concurrent Filing:**

☐ I-485 filed concurrently.

**Remarks**

**Action Block**

**Part 3.  Information about the person you are filing for.**

Family Name (Last Name)    Given Name (First Name)    Full Middle Name

Address: (Street Number and Name)    Apt. #

C/O: (In Care Of)

City    State/Province

Country    Zip/Postal Code    E-Mail Address (if any)

Daytime Phone # (with area/country codes)    Date of Birth (mm/dd/yyyy)

City/Town/Village of Birth    State/Province of Birth    Country of Birth

Country of Nationality/Citizenship    A # (if any)    U.S. Social Security # (if any)

If in the U.S.

Date of Arrival (mm/dd/yyyy)    I-94 # (Arrival/Departure Document)

Current Nonimmigrant Status    Date Status Expires (mm/dd/yyyy)

**To Be Completed by**
*Attorney or Representative,* if any.
☐ Fill in box if G-28 is attached to represent the applicant.

ATTY State License #

Form I-140 (Rev. 10/12/07) Y

**Part 4.   Processing Information.**

1. Please complete the following for the person named in **Part 3**: *(Check one)*

☐ Alien will apply for a visa abroad at the American Embassy or Consulate at:

City        Foreign Country

☐ Alien is in the United States and will apply for adjustment of status to that of lawful permanent resident.

Alien's country of current residence or, if now in the U.S., last permanent residence abroad.

2. If you provided a U.S. address in **Part 3**, print the person's foreign address:

3. If the person's native alphabet is other than Roman letters, write the person's foreign name and address in the native alphabet:

4. Are any other petition(s) or application(s) being filed with this Form I-140?

☐ No    ☐ Yes-(check all that apply)    ☐ Form I-485    ☐ Form I-765

☐ Form I-131    ☐ Other - Attach an explanation.

5. Is the person you are filing for in removal proceedings?    ☐ No    ☐ Yes-Attach an explanation.

6. Has any immigrant visa petition ever been filed by or on behalf of this person?    ☐ No    ☐ Yes-Attach an explanation.

If you answered yes to any of these questions, please provide the case number, office location, date of decision and disposition of the decision on a separate sheet(s) of paper.

**Part 5.   Additional information about the petitioner.**

1. Type of petitioner *(Check one.)*

☐ Employer    ☐ Self    ☐ Other (Explain, e.g., Permanent Resident, U.S. citizen or any other person filing on behalf of the alien.)

2. If a company, give the following:

Type of Business      Date Established *(mm/dd/yyyy)*      Current Number of Employees

Gross Annual Income      Net Annual Income      NAICS Code

DOL/ETA Case Number

3. If an individual, give the following:

Occupation      Annual Income

**Part 6.   Basic information about the proposed employment.**

1. Job Title      2. SOC Code

3. Nontechnical Description of Job

4. Address where the person will work if different from address in **Part 1.**

5. Is this a full-time position?    6. If the answer to **Number 5** is "No," how many hours per week for the position?

☐ Yes    ☐ No

7. Is this a permanent position?    8. Is this a new position?    9. Wages per week

☐ Yes    ☐ No      ☐ Yes    ☐ No      $

**Part 7.   Information on spouse and all children of the person for whom you are filing.**

List husband/wife and all children related to the individual for whom the petition is being filed. Provide an attachment of additional family members, if needed.

| Name (First/Middle/Last) | Relationship | Date of Birth (mm/dd/yyyy) | Country of Birth |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Part 8.    Signature.**   *Read the information on penalties in the instructions before completing this section.  If someone helped you prepare this petition, he or she must complete Part 9.*

I certify, under penalty of perjury under the laws of the United States of America, that this petition and the evidence submitted with it are all true and correct.  I authorize U.S. Citizenship and Immigration Services to release to other government agencies any information from my USCIS (or former INS) records, if USCIS determines that such action is necessary to determine eligibility for the benefit sought.

**Petitioner's Signature**    **Daytime Phone Number** (Area/Country Codes)    **E-Mail Address**

**Print Name**    **Date** (mm/dd/yyyy)

**NOTE:** *If you do not fully complete this form or fail to submit the required documents listed in the instructions, a final decision on your petition may be delayed or the petition may be denied.*

**Part 9.    Signature of person preparing form, if other than above.      (Sign below.)**

I declare that I prepared this petition at the request of the above person and it is based on all information of which I have knowledge.

**Attorney or Representative:**  In the event of a Request for Evidence (RFE), may the USCIS contact you by Fax or E-mail?   ☐ Yes    ☐ No

**Signature**    **Print Name**    **Date** (mm/dd/yyyy)

**Firm Name and Address**

**Daytime Phone Number** (Area/Country Codes)    **Fax Number** (Area/Country Codes)    **E-Mail Address**

OMB No. 1615-0023; Expires 09/30/08

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Instructions for I-485, Application to Register
Permanent Residence or Adjust Status**

---

### Updated filing Address Information

The filing addresses provided on this form reflect the most current information as of the date this form was last printed. If you are filing Form I-485 more than 30 days after the latest edition date shown in the lower right-hand corner, please visit our website at **www.uscis.gov** before you file, and check the Forms and Fees page to confirm the correct filing address and version currently in use. Check the edition date located at the lower right-hand corner of the form. If the edition date on your Form I-485 matches the edition date listed for Form I-485 on the online Forms and Fees page, your version is current and will be accepted by USCIS. If the edition date on the online version is later, download a copy and use the online version. If you do not have internet access, call the National Customer Service Center at **1-800-375-5283** to verify the current filing address and edition date. **Improperly filed forms will be rejected, and the fee returned, with instructions to resubmit the entire filing using the current form instructions.**

---

### What Is the Purpose of This Form?

This form is used by a person who is in the United States to apply to U.S. Citizenship and Immigration Services (USCIS) to adjust to permanent resident status or register for permanent residence.

This form may also be used by certain Cuban nationals to request a change in the date that their permanent residence began.

### Who May File This Form I-485?

**1. Based on an immigrant petition.**

You may apply to adjust your status if:

   **A.** An immigrant visa number is immediately available to you based on an approved immigrant petition; or

   **B.** You are filing this application with a completed relative petition, special immigrant juvenile petition or special immigrant military petition which if approved would make an immigrant visa number immediately available to you.

**2. Based on being the spouse or child (derivative) - at the time another adjustment applicant (principal) files to adjust status or at the time a person is granted permanent resident status in an immigrant category that allows derivative status for spouses and children.**

   **A. If the spouse or child is in the United States,** the individual derivatives may file their Form I-485 adjustment of status applications concurrently with the Form I-485 for the principal applicant, or file the Form I-485 at anytime after the principal is approved, if a visa number is available.

   **B. If the spouse or child is residing abroad,** the person adjusting status in the United States should file the **Form I-824, Application for Action on an Approved Application or Petition,** concurrently with the principal's adjustment of status application to allow the derivatives to immigrate to the United States without delay if the principal's adjustment of status application is approved. **The fee submitted with the Form I-824 will not be refunded if the principal's adjustment is not granted.**

**3. Based on admission as the fiancé(e) of a U.S. citizen and subsequent marriage to that citizen.**

   **A.** You may apply to adjust status if you were admitted to the United States as the K-1 fiancé(e) of a United States citizen and you married that citizen within 90 days of your entry.

   **B.** If you were admitted as the K-2 child of such a fiancé(e), you may apply to adjust status based on your parent's adjustment application.

**4. Based on asylum status.**

   You may apply to adjust status after you have been granted asylum in the United States if you have been physically present in the United States for one year after the grant of asylum, provided you still qualify as an asylee or as the spouse or child of a refugee.

**5. Based on refugee status.**

   You may apply to adjust status after you have been admitted as a refugee and have been physically present in the United States for one year following your admission, provided that your status has not been terminated.

**6. Based on Cuban citizenship or nationality.**

   You may apply to adjust status if:

   **A.** You are a native or citizen of Cuba, were admitted or paroled into the United States after January 1, 1959, and thereafter have been physically present in the United States for at least one year; or

**B.** You are the spouse or unmarried child of a Cuban described above and regardless of your nationality, you were admitted or paroled after January 1, 1959, and thereafter have been physically present in the United States for at least one year.

**7. Applying to change the date on which your permanent residence began.**

If you were granted permanent residence in the United States prior to November 6, 1966, and are a native or citizen of Cuba, or you are the spouse or unmarried child of such an individual, you may ask to change the date your lawful permanent residence began to your date of arrival in the United States or May 2, 1964, whichever is later.

**8. Based on continuous residence since before January 1, 1972.**

You may apply for permanent residence if you have continuously resided in the United States since before January 1, 1972. This is known as "Registry."

**9. Other basis of eligibility.**

If you are not included in the above categories, but believe you may be eligible for adjustment or creation of record of permanent residence, contact our National Customer Service Center at **1-800-375-5283** for information on how to use the internet to make an application at your local USCIS office.

**10. Who Is Not Eligible to Adjust Status.**

Unless you are applying for creation of record based on continuous residence since before January 1, 1972, or adjustment of status under a category in which special rules apply (such as 245(i) adjustment, asylum adjustment, Cuban adjustment, special immigrant juvenile adjustment, or special immigrant military personnel adjustment), **you are not eligible for adjustment of status if any of the following apply to you:**

**A.** You entered the United States in transit without a visa;

**B.** You entered the United States as a nonimmigrant crewman;

**C.** You were not admitted or paroled following inspection by an immigration officer;

**D.** Your authorized stay expired before you filed this application;

**E.** You were employed in the United States, without USCIS authorization, prior to filing this application;

**F.** You failed to maintain your nonimmigrant status, other than through no fault of your own or for technical reasons; unless you are applying because you are:

**1.** An immediate relative of a United States citizen (parent, spouse, widow, widower or unmarried child under 21 years old);

**2.** A K-1 fiancé(e) or a K-2 fiancé(e) dependent who married the United States petitioner within 90 days of admission; or

**3.** An H or I nonimmigrant or special immigrant (foreign medical graduates, international organization employees or their derivative family members);

**7.** You were admitted as a K-1 fiancé(e), but did not marry the U.S. citizen who filed the petition for you, or you were admitted as the K-2 child of a fiancé(e) and your parent did not marry the United States citizen who filed the petition;

**8.** You are or were a J-1 or J-2 exchange visitor and are subject to the two-year foreign residence requirement and you have not complied with or been granted a waiver of the requirement;

**9.** You have A, E or G nonimmigrant status or have an occupation that would allow you to have this status, unless you complete Form I-508 (I-508F for French nationals) to waive diplomatic rights, privileges and immunities and, if you are an A or G nonimmigrant, unless you submit a completed Form I-566;

**10.** You were admitted to Guam as a visitor under the Guam visa waiver program;

**11.** You were admitted to the United States as a visitor under the Visa Waiver Program, unless you are applying because you are an immediate relative of a U.S. citizen (parent, spouse, widow, widower or unmarried child under 21 years old); or

**12.** You are already a conditional permanent resident.

## General Instructions.

### Fill Out the Form I-485

**1.** Type or print legibly in black ink.

**2.** If extra space is needed to complete any item, attach a continuation sheet, indicate the item number, and date and sign each sheet.

**3.** Answer all questions fully and accurately. State that an item is not applicable with "N/A." If the answer is none, write "none."

**4.** You must file your application with the required **Initial Evidence** described below. Your application must be properly signed and filed with the correct fee. If you are under 14 years of age, your parent or guardian may sign your application.

*Translations.* Any document containing foreign language submitted to the Service shall be accompanied by a full English language translation which the translator has certified as complete and accurate, and by the translator's certification that he or she is competent to translate from the foreign language into English.

*Copies.* Unless specifically required that an original document be filed with an application or petition, an ordinary legible photocopy may be submitted. Original documents submitted when not required will remain a part of the record, even if the submission was not required.

**Initial Evidence.**

You must file your application with the following evidence:

1. **Criminal history.**

   A. If you have ever been arrested or detained by any law enforcement officer for any reason, and no charges were filed, submit:

      An original official statement by the arresting agency or applicable court order confirming that no charges were filed.

   B. If you have ever been arrested or detained by any law enforcement officer for any reason, and charges were filed, or if charges were filed against you without an arrest, submit:

      An original or court-certified copy of the complete arrest record and/or disposition for each incident (e.g., dismissal order, conviction record **or** acquittal order).

   C. If you have ever been convicted or placed in an alternative sentencing program or rehabilitative program (such as a drug treatment or community service program), submit:

      1. An original or court-certified copy of the sentencing record for each incident, **and**

      2. Evidence that you completed your sentence, specifically:

         a. An original or certified copy of your probation or parole record, or

         b. Evidence that you completed an alternative sentencing program or rehabilitative program.

   D. If you have ever had any arrest or conviction vacated, set aside, sealed, expunged or otherwise removed from your record, submit:

      1. An original or court-certified copy of the court order vacating, setting aside, sealing, expunging or otherwise removing the arrest or conviction, **or**

      2. An original statement from the court that no record exists of your arrest or conviction.

**NOTE that unless a traffic incident was alcohol or drug related, you do not need to submit documentation for traffic fines and incidents that did not involve an actual arrest if the only penalty was a fine of less than $500 and/or points on your driver's license.**

2. **Birth certificate.**

   Submit a copy of your foreign birth certificate or other record of your birth that meets the provisions of secondary evidence found in Title 8, Code of Federal Regulations (CFR), 103.2(b)(2).

3. **Copy of passport page with nonimmigrant visa.**

   If you have obtained a nonimmigrant visa(s) from an American embassy or consulate abroad within the last year, submit a photocopy(ies) of the page(s) of your passport containing the visa(s).

4. **Photos.**

   You **must** submit two identical color photographs of yourself taken within 30 days of the filing of this application. The photos must have a white to off-white background, be printed on thin paper with a glossy finish, and be unmounted and unretouched.

   Passport-style photos must be 2" x 2." The photos must be in color with full face, frontal view on a white to off-white background. Head height should measure 1" to 1 3/8" from top of hair to bottom of chin, and eye height is between 1 1/8" to 1 3/8" from bottom of photo. Your head must be bare unless you are wearing a headdress as required by a religious order of which you are a member. Using pencil or felt pen, lightly print your name and Alien Receipt Number on the back of the photo.

5. **Biometric services.**

   If you are between the ages of 14 and 79, you must be fingerprinted as part of the USCIS biometric services requirement. After you have filed this application, USCIS will notify you in writing of the time and location where you must go to be fingerprinted. If necessary, USCIS may also take your photograph and signature. Failure to appear to be fingerprinted or for other biometric services may result in a denial of your application.

6. **Police clearances.**

   If you are filing for adjustment of status as a member of a special class described in an I-485 supplement form, please read the instructions on the supplement form to see if you need to obtain and submit police clearances, in addition to the required fingerprints, with your application.

7.  **Medical examination.**

When required, submit a medical examination report on the form you have obtained from USCIS.

   A.  **Individuals applying for adjustment of status through a USCIS service center.**

      1.  **General:**
          If you are filing your adjustment of status application with a USCIS service center, include your medical examination report with the application, unless you are a refugee.

      2.  **Refugees:**
          If you are applying for adjustment of status one year after you were admitted as a refugee, you only need to submit a vaccination supplement with your adjustment of status application, not the entire medical report, **unless** there were medical grounds of inadmissibility that arose during the initial examination that you had overseas.

   B.  **Individuals applying for adjustment of status through a local USCIS office.**

      If you are filing your adjustment of status application with a local USCIS office include your medical examination report with the application.

8.  **Fiancé(e)s.**

If you are a K-1 fiancé(e) or K-2 dependent who had a medical examination within the past year as required for the nonimmigrant fiancé(e) visa, you only need to submit a vaccination supplement, not the entire medical report. You may include the vaccination supplement with your adjustment of status application.

9.  **Persons not required to have a medical examination.**

The medical report is not required if you are applying for creation of a record for admission as a lawful permanent resident under section 249 of the INA as someone who has continuously resided in the United States since January 1, 1972 (registry applicant).

13.  **Form G-325A, Biographic Information Sheet.**

You must submit a completed Form G-325A if you are between 14 and 79 years of age.

14.  **Affidavit of Support/Employment Letter.**

   A.  **Affidavit of Support.**

      Submit an Affidavit of Support (Form I-864) if your adjustment of status application is based on your entry as a fiancé(e), a relative visa petition (Form I-130) filed by your relative, or an employment based visa petition (Form I-140) related to a business that is five percent or more owned by your family.

   B.  **Employment Letter.**

      If your adjustment of status application is related to an employment based visa petition (Form I-140), you must submit a letter on the letterhead of the petitioning employer which confirms that the job on which the visa petition is based is still available to you. The letter must also state the salary that will be paid.

   **NOTE:** The affidavit of support and/or employment letter are not required if you are applying for creation of a record based on continuous residence since before January 1, 1972, asylum or refugee adjustment, or a Cuban citizen or a spouse or unmarried child of a Cuban citzen who was admitted after January 1, 1959.

15.  **Evidence of eligibility.**

   A.  **Based on an immigrant petition.**

      Attach a copy of the approval notice for an immigrant petition that makes a visa number immediately available to you, or submit a complete relative, special immigrant juvenile, or special immigrant military petition which, if approved, will make a visa number immediately available to you.

   B.  **Based on admission as the K-1 fiancé(e) of a U. S. citizen and subsequent marriage to that citizen.**

      Attach a copy of the fiancé(e) petition approval notice, a copy of your marriage certificate and your Form 1-94.

   C.  **Based on asylum status.**

      Attach a copy of the letter or Form 1-94 that shows the date you were granted asylum.

   D.  **Based on continuous residence in the United States since before January 1, 1972.**

      Attach copies of evidence that shows continuous residence since before January 1, 1972.

16.  **Based on Cuban citizenship or nationality.**

   Attach evidence of your citizenship or nationality, such as a copy of your passport, birth certificate or travel document.

17.  **Based on derivative status as the spouse or child of another adjustment applicant or person granted permanent residence based on issuance of an immigrant visa.**

   File your application with the application of the other applicant, or with evidence that the application is pending with USCIS or was approved, or with evidence that your spouse or parent was granted permanent residence based on an immigrant visa, and:

If you are applying as the spouse of that person, also attach a copy of your marriage certificate and copies of documents showing the legal termination of all other marriages by you and your spouse;

If you are applying as the child of that person, attach also a copy of your birth certificate and, if the other person is not your parent, submit copies of evidence (such as a marriage certificate and documents showing the legal termination of all other marriages and an adoption decree) to demonstrate that you qualify as his or her child.

**18. Other basis for eligibility.**

Attach copies of documents proving that you are eligible for the classification.

## Where Should You File Form I-485?

### Form I-485 USCIS Lockbox Filing Address for Local Office Filings:

If you are applying for adjustment of status under one of the eligibility categories listed below, file your Form I-485, Application to Register Permanent Residence or Adjust Status with the USCIS Lockbox Facility.

1.  Spouse, parent, unmarried son/daughter under age 21 of a U.S. Citizen with an approved or concurrently filed Form I-130;

2.  Beneficiary of an approved Form I-130 filed by a qualifying relative;

3.  Qualifying derivative, family-based beneficiary;

4.  K-1 Fiancé(e) (and K-2 dependents) whose Form I-485 is based on an approved Form I-129F;

5.  Applicants who are beneficiaries of an approved Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, as a battered spouse or child;

6.  Widow/widower of a U.S. Citizen with an approved or concurrently filed Form I-360;

7.  Special Immigrant Military filing Form I-485 based on honorable active duty service in the U.S. armed forces with an approved or concurrently filed Form I-360;

8.  Special Immigrant juvenile with a pending or concurrently filed Form I-360;

9.  Amerasians with an approved or concurrently filed Form I-360;

10. Applicants eligible under the Cuban Adjustment Act of November 2, 1965.

11. Diversity lottery winner eligible to file Form I-485;

12. Public Interest Parolees from certain former Soviet and Southeast Asian countries filing Form I-485 under Public Law 101-167 (the "Lautenberg Amendment");

13. Registry applicant filing Form I-485 based on birth in the U.S. to a foreign diplomatic officer;

14. Former diplomat filing Form I-485 under Section 13 of the Immigration and Nationality Act;

15. Registry applicant filing Form I-485 based on continuous residence in the U.S. since before 01/01/72 **or**

16. Applicants who are beneficiaries of Private Bills:

### USCIS Lockbox Addresses:

For United Postal Service (USPS) deliveries:

> **USCIS**
> **P.O. Box 805887**
> **Chicago, IL 60680-4120**

For private couriers (non-USPS) deliveries:

> **USCIS**
> **Attn: FBASI**
> **427 S. LaSalle - 3rd Floor**
> **Chicago, IL 60605-1029**

### Form I-485 Service Center Filing Addresses:

1.  **Form I-485 is Based on an Underlying Form I-140, Immigrant Petition for Alien Worker:**

    Adjustment of status applications filed based on a concurrently filed, pending, or approved Form I-140 must be filed with the Nebraska Service Center or the Texas Service Center, depending on where the applicant lives. If you wish to concurrently file your Form I-485 and Form I-140 an immigrant visa number must be immediately available at the time of filing.

    **NOTE:** To facilitate acceptance and processing of Form I-485 when Form I-140 has already been approved, submit a copy of the I-140 approval notice. If Form I-140 is pending, submit copies of the Form I-140 receipt notice and the page of the DOL labor certification showing the priority date (if labor certification is required) or just a copy of the Form I-140 receipt notice (but only if a labor certification is not required).

If you live in the following states: Alaska, Arizona, California, Colorado, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, North Dakota, Ohio, Oregon, South Dakota, Utah, Washington, Wisconsin or Wyoming, the mailing address you should use is:

> **USCIS**
> **Nebraska Service Center**
> **P. O. Box 87485**
> **Lincoln, NE 68501-7485**

If you live in the following states: Alabama, Arkansas, Connecticut, Florida, Georgia, Kentucky, Louisianna, Maine, Maryland, Massachusetts, Mississippi, New Hampshire, New Jersey, New Mexico, New York, North Carolina, South Carolina, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, Tennessee, Texas, Vermont, Virginia, U.S. Virgin Islands, West Virginia or Washington, DC, the mailing address you should use is:

> **USCIS**
> **Texas Service Center**
> **P. O. Box 851804**
> **Mesquite, TX 75185-1804**

2. **Form I-485 is Based on an Underlying Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant:**

   A. **Filing Address for International Organization Employee or Family Member:**

   Adjustment of status applications filed based on a concurrently filed, pending, or approved Form I-360 for International Organization Employee or eligible family member must be filed with the Nebraska Service Center (see address below).

   B. **Filing Address for Afghan and Iraqi Translators:**

   Adjustment of status applications filed based on an approved Form I-360 for Afghan and Iraqi Translators must be filed with the Nebraska Service Center (see address below). You cannot concurrently file Forms I-360 and I-485 for this classification.

   C. **Filing Address for Other I-360 Categories:**

   Other adjustment of status applications filed based on an approved Form I-360 for the following classifications **must** be filed with the Nebraska Service Center or the Texas Service Center, depending on where the applicant lives.

**NOTE:** You **cannot** concurrently file Forms I-360 and I-485 for the following classifications:

1. **Religious Worker or Minister;**
2. **Panama Canal Company Employment;**
3. **U.S. Government in Canal Zone Employment;**
4. **Special Immigrant Physician; or**
5. **International Broadcasters.**

If you live in the following states: Alaska, Arizona, California, Colorado, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, North Dakota, Ohio, Oregon, South Dakota, Utah, Washington, Wisconsin or Wyoming, send your application to the Nebraska Service Center:

> **USCIS**
> **Nebraska Service Center**
> **P.O. Box 87485**
> **Lincoln, NE 68501-7485**

If you live in the following states: Alabama, Arkansas, Connecticut, Florida, Georgia, Kentucky, Louisianna, Maine, Maryland, Massachusetts, Mississippi, New Hampshire, New Jersey, New Mexico, New York, North Carolina, South Carolina, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, Tennessee, Texas, Vermont, Virginia, U.S. Virgin Islands, West Virginia or Washington, DC, send your application to the Texas Service Center:

> **USCIS**
> **Texas Service Center**
> **P.O. Box 851804**
> **Mesquite, TX 75185-1804**

3. **Form I-485 is Based on an Underlying Form I-526, Immigrant Petition by Alien Entrepreneur:**

   If you are an immigrant investor with an approved Form I-526, you **must** file Form I-485 with the Texas Service Center, regardless of where the business enterprise is located.

**NOTE:** You **cannot** concurrently file form I-526 and I-485.

> **USCIS**
> **Texas Service Center**
> **P.O. Box 851804**
> **Mesquite, TX 75185-1804**

4. **Filing Address for Asylee Adjustment of Status applicants:**

   All asylee adjustment of status applications must be filed with the Nebraska Service Center or the Texas Service Center, depending on where the applicant lives. If you are

filing Form I-131, Application for Travel Document, to enable you to travel outside the U. S. while your adjustment of status application is pending, you should indicate that you are requesting a refugee travel document. The relating Form I-131 for a Refugee Travel document is filed with the Nebraska Service Center, regardless of the Form I-485 filing location.

If you live in the following states: Alaska, Arizona, California, Colorado, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, North Dakota, Ohio, Oregon, South Dakota, Utah, Washington, Wisconsin or Wyoming, the mailing address you should use is:

> **USCIS**
> **Nebraska Service Center**
> **P.O. Box 87485**
> **Lincoln, NE 68501-7485**

If you live in the following states: Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Kentucky, Louisianna, Maine, Maryland, Massachusetts, Mississippi, New Hampshire, New Jersey, New Mexico, New York, North Carolina, South Carolina, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, Tennessee, Texas, Vermont, Virginia, U.S. Virgin Islands, West Virginia or Washington, DC, send your application to the Texas Service Center:

> **USCIS**
> **Texas Service Center**
> **P.O. Box 852211**
> **Mesquite, TX 75185-2211**

**5. Filing Address for Refugee Adjustment of Status applicants:**

All refugee adjustment of status applications must be filed with the Nebraska Service Center:

> **USCIS**
> **Nebraska Service Center**
> **P.O. Box 87209**
> **Lincoln, NE 68501-7209**

**6. Filing Address for HRIFA dependents:**

Only the dependents spouse and children of the principal granted legal status under HRIFA are eligible to apply for benefits under HRIFA. The filing period for principal HRIFA applicants has closed. All HRIFA applications for dependents must be filed at the Nebraska Service Center.

> **USCIS**
> **Nebraska Service Center**
> **P.O. Box 87245**
> **Lincoln, NE 68501-7245**

### Questions Regarding Form I-485

For additional information about Form I-485, including how to file your application or filing locations not mentioned, call the USCIS National Customer Service Center at **1-800-375-5283** or visit our website at **www.uscis.gov**.

### What Is the Filing Fee?

The filing fee for a Form I-485 is **$930.00**.

An additional biometric fee of **$80.00** is required when filing this Form I-485. After you submit Form I-485, USCIS will notify you about when and where to go for biometric services.

The fee is **$930.00** only (no biometrics fee required) for applicants under 14 years who submits Form I-485 independent from other family members.

The fee for a child under the age fourteen years will be **$600.00** when submitted concurrently for adjudication with the application of a parent under sections 201(b)(A)(i), 203(a) (2)(A) and 203(d) of the INA.

You may submit one check or money order for both the application and biometric fees, for a total of **$1010.00**.

Use the following guidelines when you prepare your check or money order for the Form I-485 and the biometric service fee:

1. The check or money order must be drawn on a bank or other financial institution located in the United States and must be payable in U.S. currency; and

2. Make the check or money order payable to **U.S. Department of Homeland Security**, unless:

   A. If you live in Guam and are filing your petition there, make it payable to **Treasurer of Guam**.

   B. If you live in the U.S. Virgin Islands and are filing your petition there, make it payable to **Commissioner of Finance of the Virgin Islands**.

**NOTE:** Effective July 30, 2007, if you file Form I-485 to adjust your status as a permanent resident, no additional fee is required to also file an application for employment authorization on Form I-765 and/or advance parole on Form I-131. You may file these forms concurrently. If you choose to file the I-765 and/or I-131 separately after the effective date, you must also submit a copy of your I-797C, Notice of Action, receipt as evidence of the filing of an I-485.

**NOTE:** Please spell out U.S. Department of Homeland Security; do not use the initials "USDHS" or "DHS."

**Notice to Those Making Payment by Check.** If you send us a check, it will be converted into an electronic funds transfer (EFT). This means we will copy your check and use the account information on it to electronically debit your account for the amount of the check. The debit from your account will usually take 24 hours, and will be shown on your regular account statement.

You will not receive your original check back. We will destroy your original check, but we will keep a copy of it. If the EFT cannot be processed for technical reasons, you authorize us to process the copy in place of your original check. If the EFT cannot be completed because of insufficient funds, we may try to make the transfer up to two times.

**How to Check If the Fees Are Correct.**

The form and biometric fees on this form are current as of the edition date appearing in the lower right corner of this page. However, because USCIS fees change periodically, you can verify if the fees are correct by following one of the steps below:

1. Visit our website at **www.uscis.gov**, select "Immigration Forms" and check the appropriate fee;

2. Review the Fee Schedule included in your form package, if you called us to request the form or

3. Telephone our National Customer Service Center at **1-800-375-5283** and ask for the fee information.

**NOTE:** If your Form I-485 requires payment of a biometric service fee for USCIS to take your fingerprints, photograph or signature, you can use the same procedure to obtain the correct biometric fee.

### Address Changes

If you change your address and you have an application or petition pending with USCIS, you may change your address on-line at www.uscis.gov, click on "Change your address with USCIS" and follow the prompts or by completing and mailing Form AR-11, Alien's Change of Address Card, to:

**U.S. Citizenship and Immigration Services
Change of Address
P.O. Box 7134
London, KY 40742-7134**

For commercial overnight or fast freight services only, mail to:

**U.S. Citizenship and Immigration Services
Change of Address
1084-I South Laurel Road
London, KY 40744**

### Processing Information

Any application that is not signed or is not accompanied by the correct application fee will be rejected with a notice that the application is deficient. You may correct the deficiency and resubmit the application. An application is not considered properly filed until accepted by USCIS.

**Initial processing.**

Once an application has been accepted, it will be checked for completeness, including submission of the required initial evidence. If you do not completely fill out the form or file it without required initial evidence, you will not establish a basis for eligibility and we may deny your application.

**Requests for more information or interview.**

We may request more information or evidence, or we may request that you appear at a USCIS office for an interview. We may also request that you submit the originals of any copy. We will return these originals when they are no longer required.

**Interview.**

After you file your application, you may be notified to appear at a USCIS office to answer questions about the application. You will be required to answer these questions under oath or affirmation. You must bring your Arrival-Departure Record (Form I-94) and any passport or official travel document you have to the interview.

**Decision.**

You will be notified in writing of the decision on your application.

**Selective Service Registration.**

If you are a male at least 18 years old, but not yet 26 years old, and required according to the Military Selective Service Act to register with the Selective Service System, USCIS will help you register.

When your signed application is filed and accepted by USCIS, we will transmit to the Selective Service System your name, current address, Social Security number, date of birth and the date you filed the application. This action will enable the Selective Service System to record your registration as of the filing date of your application.

If USCIS does not accept your application and, if still so required, you are responsible to register with the Selective Service System by using other means, provided you are under 26 years of age. If you have already registered, the Selective Service System will check its records to avoid any duplication.

(NOTE: Men 18 through 25 years old who are applying for student financial aid, government employment or job training benefits should register directly with the Selective Service System or such benefits may be denied. Men can register at a local post office or on the internet at http://www.sss.gov).

*Travel outside the United States for adjustment of status applicants under sections 209 and 245 of the Act, and Registry applicants under section 249 of the Act.*

Your departure from the United States (including brief visits to Canada or Mexico) constitutes an abandonment of your adjustment of status application, unless you are granted permission to depart and you are inspected upon your return to the United States. Such permission to travel is called "advance parole." To request advance parole, you must file Form I-131, Application for Travel Document, with the appropriate fee at the USCIS office where you applied for adjustment of status.

1. **Exceptions.**

    A. **H, L, V or K3/K4 nonimmigrants:**

    If you are an H, L,V, or K3/K4 nonimmigrant who continues to maintain his or her status, you may travel on a valid H, L, V or K3/K4 visa without obtaining advance parole.

    B. **Refugees and Asylees:**

    If you are applying for adjustment of status one year after you were admitted as a refugee or one year after you were granted asylum, you may travel outside the United States on your valid refugee travel document, if you have one, without the need to obtain advance parole.

2. **Warning:**

    Travel outside of the United States may trigger the three and ten year bar to admission under section 212(a)(9)(B)(i) of the Act for adjustment applicants, but not registry applicants. This ground of inadmissibility is triggered if you were unlawfully present in the United States (i.e., you remained in the United States beyond the period of authorized stay) for more than 180 days before you applied for adjustment of status and you travel outside of the United States while your adjustment of status application is pending.

    **NOTE:** Only unlawful presence that was accrued on or after April 1, 1997, counts towards the three and ten year bar under section 212(a)(9)(B)(i) of the Act.)

If you become inadmissible under section 212(a)(9)(B)(i) of the Act while your adjustment of status application is pending, you will need a waiver of inadmissibility under section 212(a)(9)(B)(v) of the Act before your adjustment of status application can be approved. This waiver, however, is granted on a case-by-case basis and in the exercise of discretion. It requires a showing of extreme hardship to your United States citizen or lawful permanent resident spouse or parent, unless you are a refugee or asylee. For refugees and asylees, the waiver may be granted for humanitarian reasons, to assure family unity or if it is otherwise in the public interest.

## Penalties.

If you knowingly and willfully falsify or conceal a material fact or submit a false document with this Form I-485, we will deny the Form I-485 and may deny any other immigration benefit.

In addition, you will face severe penalties provided by law and may be subject to criminal prosecution.

## Privacy Act Notice.

We ask for the information on this form, and associated evidence, to determine if you have established eligibility for the immigration benefit for which you are filing. Our legal right to ask for this information can be found in the Immigration and Nationality Act, as amended. We may provide this information to other government agencies. Failure to provide this information, and any requested evidence, may delay a final decision or result in denial of your Form I-485.

## Paperwork Reduction Act.

An agency may not conduct or sponsor an information collection and a person is not required to respond to a collection of information unless it displays a currently valid OMB control number. The public reporting burden for this collection of information is estimated at 5 hours and 15 minutes per response, including the time for reviewing instructions, completing and submitting the form. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to: U.S. Citizenship and Immigration Services, Regulatory Management Division, 111 Massachusetts Avenue, N.W., 3rd Floor, Suite 3008, Washington, DC 20529. OMB No. 1615-0023. **Do not mail your application to this address.**

OMB No. 1615-0023; Expires 09/30/08

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**I-485, Application to Register
Permanent Residence or Adjust Status**

| START HERE - Please type or print in black ink. | For USCIS Use Only |
|---|---|

## Part 1.    Information about you.

| Family Name | Given Name | Middle Name |
|---|---|---|
| | | |

Address- C/O

| Street Number and Name | | Apt. # |
|---|---|---|
| City | | |

| State | | Zip Code |
|---|---|---|

| Date of Birth *(mm/dd/yyyy)* | Country of Birth: |
|---|---|
| | Country of Citizenship/Nationality: |

| U.S. Social Security # | A # *(if any)* |
|---|---|

| Date of Last Arrival *(mm/dd/yyyy)* | I-94 # |
|---|---|

| Current USCIS Status | Expires on *(mm/dd/yyyy)* |
|---|---|

**For USCIS Use Only**

| Returned | Receipt |
|---|---|
| | |
| Resubmitted | |
| | |
| Reloc Sent | |
| | |
| Reloc Rec'd | |
| | |
| Applicant Interviewed | |

## Part 2.    Application type.  *(Check one.)*

**I am applying for an adjustment to permanent resident status because:**

a. ☐ an immigrant petition giving me an immediately available immigrant visa number has been approved. (Attach a copy of the approval notice, or a relative, special immigrant juvenile or special immigrant military visa petition filed with this application that will give you an immediately available visa number, if approved.)

b. ☐ my spouse or parent applied for adjustment of status or was granted lawful permanent residence in an immigrant visa category that allows derivative status for spouses and children.

c. ☐ I entered as a K-1 fiancé(e) of a United States citizen whom I married within 90 days of entry, or I am the K-2 child of such a fiancé(e).  (Attach a copy of the fiancé(e) petition approval notice and the marriage certificate.)

d. ☐ I was granted asylum or derivative asylum status as the spouse or child of a person granted asylum and am eligible for adjustment.

e. ☐ I am a native or citizen of Cuba admitted or paroled into the United States after January 1, 1959, and thereafter have been physically present in the United States for at least one year.

f. ☐ I am the husband, wife or minor unmarried child of a Cuban described above in **(e)** and I am residing with that person, and was admitted or paroled into the United States after January 1, 1959, and thereafter have been physically present in the United States for at least one year.

g. ☐ I have continuously resided in the United States since before January 1, 1972.

h. ☐ Other basis of eligibility. Explain (for example, I was admitted as a refugee, my status has not been terminated, and I have been physically present in the U.S. for one year after admission). If additional space is needed, use a separate piece of paper.

**Section of Law**
☐ Sec. 209(b), INA
☐ Sec. 13, Act of 9/11/57
☐ Sec. 245, INA
☐ Sec. 249, INA
☐ Sec. 1 Act of 11/2/66
☐ Sec. 2 Act of 11/2/66
☐ Other

**Country Chargeable**

**Eligibility Under Sec. 245**
☐ Approved Visa Petition
☐ Dependent of Principal Alien
☐ Special Immigrant
☐ Other

**Preference**

**Action Block**

**I am already a permanent resident and am applying to have the date I was granted permanent residence adjusted to the date I originally arrived in the United States as a nonimmigrant or parolee, or as of May 2, 1964, whichever date is later, and:** *(Check one.)*

i. ☐ I am a native or citizen of Cuba and meet the description in **(e)** above.

j. ☐ I am the husband, wife or minor unmarried child of a Cuban, and meet the description in **(f)** above.

**To be Completed by**
*Attorney or Representative,* **if any**
☐ Fill in box if G-28 is attached to represent the applicant.

VOLAG #

ATTY State License #

Form I-485 (Rev. 07/30/07) Y

## Part 3.  Processing information.

**A.** City/Town/Village of Birth

Current Occupation

Your Mother's First Name

Your Father's First Name

Give your name exactly as it appears on your Arrival/Departure Record (Form I-94)

Place of Last Entry Into the United States *(City/State)*

In what status did you last enter? *(Visitor, student, exchange alien, crewman, temporary worker, without inspection, etc.)*

Were you inspected by a U.S. Immigration Officer?   ☐ Yes  ☐ No

Nonimmigrant Visa Number

Consulate Where Visa Was Issued

Date Visa Was Issued (mm/dd/yyyy)

Gender: ☐ Male  ☐ Female

Marital Status: ☐ Married  ☐ Single  ☐ Divorced  ☐ Widowed

Have you ever before applied for permanent resident status in the U.S.?   ☐ No   ☐ Yes. If you checked "Yes," give date and place of filing and final disposition.

**B.** List your present husband/wife, all of your sons and daughters (If you have none, write "none." If additional space is needed, use separate paper).

| Family Name | Given Name | Middle Initial | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| Country of Birth | Relationship | A # | Applying with you? ☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (mm/dd/yyyy) |
| Country of Birth | Relationship | A # | Applying with you? ☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (mm/dd/yyyy) |
| Country of Birth | Relationship | A # | Applying with you? ☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (mm/dd/yyyy) |
| Country of Birth | Relationship | A # | Applying with you? ☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (mm/dd/yyyy) |
| Country of Birth | Relationship | A # | Applying with you? ☐ Yes ☐ No |

**C.** List your present and past membership in or affiliation with every organization, association, fund, foundation, party, club, society or similar group in the United States or in other places since your 16th birthday. Include any foreign military service in this part. If none, write "none." Include the name(s) of organization(s), location(s), dates of membership, from and to, and the nature of the organization(s). If additional space is needed, use a separate piece of paper.

## Part 3. Processing information. *(Continued)*

Please answer the following questions. (If your answer is **"Yes"** on any one of these questions, explain on a separate piece of paper and refer to "What Are the General Filing Instructions? Initial Evidence" to determine what documentation to include with your application. Answering **"Yes"** does not necessarily mean that you are not entitled to adjust status or register for permanent residence.)

**1.** Have you ever, in or outside the United States:

   **a.**  knowingly committed any crime of moral turpitude or a drug-related offense for which you have not been arrested?  ☐ Yes  ☐ No

   **b.**  been arrested, cited, charged, indicted, fined or imprisoned for breaking or violating any law or ordinance, excluding traffic violations?  ☐ Yes  ☐ No

   **c.**  been the beneficiary of a pardon, amnesty, rehabilitation decree, other act of clemency or similar action?  ☐ Yes  ☐ No

   **d.**  exercised diplomatic immunity to avoid prosecution for a criminal offense in the United States?  ☐ Yes  ☐ No

**2.** Have you received public assistance in the United States from any source, including the United States government or any state, county, city or municipality (other than emergency medical treatment), or are you likely to receive public assistance in the future?  ☐ Yes  ☐ No

**3.** Have you ever:

   **a.**  within the past ten years been a prostitute or procured anyone for prostitution, or intend to engage in such activities in the future?  ☐ Yes  ☐ No

   **b.**  engaged in any unlawful commercialized vice, including, but not limited to, illegal gambling?  ☐ Yes  ☐ No

   **c.**  knowingly encouraged, induced, assisted, abetted or aided any alien to try to enter the United States illegally?  ☐ Yes  ☐ No

   **d.**  illicitly trafficked in any controlled substance, or knowingly assisted, abetted or colluded in the illicit trafficking of any controlled substance?  ☐ Yes  ☐ No

**4.** Have you ever engaged in, conspired to engage in, or do you intend to engage in, or have you ever solicited membership or funds for, or have you through any means ever assisted or provided any type of material support to any person or organization that has ever engaged or conspired to engage in sabotage, kidnapping, political assassination, hijacking or any other form of terrorist activity?  ☐ Yes  ☐ No

**5.** Do you intend to engage in the United States in:

   **a.**  espionage?  ☐ Yes  ☐ No

   **b.**  any activity a purpose of which is opposition to, or the control or overthrow of, the government of the United States, by force, violence or other unlawful means?  ☐ Yes  ☐ No

   **c.**  any activity to violate or evade any law prohibiting the export from the United States of goods, technology or sensitive information?  ☐ Yes  ☐ No

**6.** Have you ever been a member of, or in any way affiliated with, the Communist Party or any other totalitarian party?  ☐ Yes  ☐ No

**7.** Did you, during the period from March 23, 1933 to May 8, 1945, in association with either the Nazi Government of Germany or any organization or government associated or allied with the Nazi Government of Germany, ever order, incite, assist or otherwise participate in the persecution of any person because of race, religion, national origin or political opinion?  ☐ Yes  ☐ No

**8.** Have you ever engaged in genocide, or otherwise ordered, incited, assisted or otherwise participated in the killing of any person because of race, religion, nationality, ethnic origin or political opinion?  ☐ Yes  ☐ No

**9.** Have you ever been deported from the United States, or removed from the United States at government expense, excluded within the past year, or are you now in exclusion, deportation, removal or recission proceedings?  ☐ Yes  ☐ No

**10.** Are you under a final order of civil penalty for violating section 274C of the Immigration and Nationality Act for use of fraudulent documents or have you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the United States or any immigration benefit?  ☐ Yes  ☐ No

**11.** Have you ever left the United States to avoid being drafted into the U.S. Armed Forces?  ☐ Yes  ☐ No

**12.** Have you ever been a J nonimmigrant exchange visitor who was subject to the two-year foreign residence requirement and have not yet complied with that requirement or obtained a waiver?  ☐ Yes  ☐ No

**13.** Are you now withholding custody of a U.S. citizen child outside the United States from a person granted custody of the child?  ☐ Yes  ☐ No

**14.** Do you plan to practice polygamy in the United States?  ☐ Yes  ☐ No

**Part 4.   Signature.**   *(Read the information on penalties in the instructions before completing this section. You must file this application while in the United States.)*

### Your registration with U.S. Citizenship and Immigration Services.

"I understand and acknowledge that, under section 262 of the Immigration and Nationality Act (Act), as an alien who has been or will be in the United States for more than 30 days, I am required to register with U.S. Citizenship and Immigration Services.  I understand and acknowledge that, under section 265 of the Act, I am required to provide USCIS with my current address and written notice of any change of address within **ten** days of the change. I understand and acknowledge that USCIS will use the most recent address that I provide to USCIS, on any form containing these acknowledgements, for all purposes, including the service of a Notice to Appear should it be necessary for USCIS to initiate removal proceedings against me.  I understand and acknowledge that if I change my address without providing written notice to USCIS, I will be held responsible for any communications sent to me at the most recent address that I provided to USCIS. I further understand and acknowledge that, if removal proceedings are initiated against me and I fail to attend any hearing, including an initial hearing based on service of the Notice to Appear at the most recent address that I provided to USCIS or as otherwise provided by law, I may be ordered removed in my absence, arrested and removed from the United States."

### Selective Service Registration.

**The following applies to you if you are a male at least 18 years old, but not yet 26 years old, who is required to register with the Selective Service System:** "I understand that my filing this adjustment of status application with U.S. Citizenship and Immigration Services authorizes USCIS to provide certain registration information to the Selective Service System in accordance with the Military Selective Service Act.  Upon USCIS acceptance of my application, I authorize USCIS to transmit to the Selective Service System my name, current address, Social Security Number, date of birth and the date I filed the application for the purpose of recording my Selective Service registration as of the filing date.  If, however, USCIS does not accept my application, I further understand that, if so required, I am responsible for registering with the Selective Service by other means, provided I have not yet reached age 26."

### Applicant's Certification

I certify, under penalty of perjury under the laws of the United States of America, that this  application and the evidence submitted with it is all true and correct.  I authorize the release of any information from my records that U.S. Citizenship and Immigration Services (USCIS) needs to determine eligibility for the benefit I am seeking.

| *Signature* | *Print Your Name* | *Date* | *Daytime Phone Number* |
|---|---|---|---|
| | | | (    ) |

**NOTE**: *If you do not completely fill out this form or fail to submit required documents listed in the instructions, you may not be found eligible for the requested document and this application may be denied.*

**Part 5.   Signature of person preparing form, if other than above.  (sign below)**

**I declare that I prepared this application at the request of the above person and it is based on all information of which I have knowledge.**

| *Signature* | *Print Your Full Name* | *Date* | **Phone Number** *(Include Area Code)* |
|---|---|---|---|
| | | | (    ) |
| *Firm Name* *and Address* | | *E-Mail Address (if any)* | |

OMB No. 1615-0003; Expires 11/30/07

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# Instructions for Form I-539, Application to Extend/Change Nonimmigrant Status

## Instructions

**Please read these instructions carefully to properly complete this form. If you need more space to complete an answer, use a separate sheet(s) of paper. Write your name and Alien Registration Number (A #), if any, at the top of each sheet of paper and indicate the part and number of the item to which the answer refers.**

**NOTE:** You have the option of submitting this paper version of Form I-539 according to form's instructions or you may file the application electronically. To file electronically, visit our internet website at **www.uscis.gov** and follow the instructions on e-filing. Whether you submit this paper form or e-file, U.S. Citizenship and Immigration Services (USCIS) recommends that you retain a copy of your application and supporting documents for your records.

### What Is the Purpose of This Form?

You should use this form if you are one of the nonimmigrants listed below and wish to apply to U.S. Citizenship and Immigration Services (USCIS) for an extension of stay or a change to another nonimmigrant status.

In certain situations, you may use this form to apply for an initial nonimmigrant status.

You may also use this form if you are a nonimmigrant F-1 or M-1 student applying for reinstatement.

### When Should I Use Form I-539?

You must submit an application for extension of stay or change of status before your current authorized stay expires. We suggest you file at least 45 days before your stay expires, or as soon as you determine your need to change status. Failure to file before the expiration date may be excused if you demonstrate when you file the application that:

1. The delay was due to extraordinary circumstances beyond your control;

2. The length of the delay was reasonable;

3. You have not otherwise violated your status;

4. You are still a bona fide nonimmigrant; and

5. You are not in removal proceedings.

### Who May File This Form I-539?

#### Extension of Stay or Change of Status:

Nonimmigrants in the United States may apply for an extension of stay or a change of status on this form, except as noted in these instructions under the heading, "Who May Not File This Form I-539."

#### Multiple Applicants.

You may include your spouse and your unmarried children under age 21 years as co-applicants in your application for the same extension or change of status, if you are all now in the same status or they are all in derivative status.

#### Nonimmigrant Categories.

This form may be used by the following nonimmigrants listed in alphabetical order:

1. **An A, Ambassador, Public Minister, or Career Diplomatic or Consular Officer and their immediate family members.**

   You must submit a copy, front and back, of the Form I-94 of each person included in the application and a Form I-566, Interagency Record of Individual Requesting Change, Adjustment to, or from, A to G Status; or Requesting A, G or NATO Dependent Employment Authorization, certified by the U.S. Department of State to indicate your accredited status.

   **NOTE:** An A-1 or A-2 nonimmigrant is not required to pay a fee with the Form I-539 application.

2. **An A-3, Attendant or Servant of an A Nonimmigrant and the A-3's immediate family members.**

   You must submit a copy, front and back, of the Form I-94 of each person included in the application.

   The application must be filed with:

   A. A copy of your employer's Form I-94 or approval notice demonstrating A status;

   B. An original letter from your employer describing your duties and stating that he or she intends to personally employ you; and arrangements you have made to depart from the United States; and

C. An original Form I-566, certified by the Department of State, indicating your employer's continuing accredited status.

### 3. A B-1, Visitor for Business or B-2, Visitor for Pleasure.

If you are filing for an extension/change, you must file your application with the original Form I-94 of each person included in your application. In addition, you must submit a written statement explaining in detail:

A. The reasons for your request;

B. Why your extended stay would be temporary, including what arrangements you have made to depart from the United States; and

C. Any effect the extended stay may have on your foreign employment or residency.

If you are applying for an extension/change of B-1, Visitor for pleasure, you must designate your desired status using the following classification in **Part 2.1.b** of Form I-539:

A. B-1A non-immigrant who is the personal or domestic servant of a nonimmigrant employer;

B. B-1B nonimmigrant domestic servant of a U.S. citizen;

C. B-1C non-immigrant who is employed by a foreign airline;

D. B-1D non-immigrant who is a missionary;

E. B-1 all other visa classifications not designated above.

### 4. Dependents of an E, Treaty Trader or Investor.

If you are filing for an extension/change of status as the dependent of an E, this application must be submitted with:

A. The Form I-129, Petition for Alien Worker, filed for that E or a copy of the filing receipt noting that the petition is pending with USCIS;

B. A copy of the E's Form I-94 or approval notice showing that he or she has already been granted status to the period requested on your application; and

C. Evidence of relationship (example: birth or marriage certificate).

**NOTE:** An employer or investor should file Form I-129 to request an extension/change to E status for an employee, prospective employee, or the investor. Dependents of E employees should file for an extension/change of status on this form, not Form I-129.

### 5. An F-1, Academic Student.

To request a change to F-1 status or to apply for reinstatement as an F-1 student, you must submit your original Form I-94, as well as the original Form I-94 of each person included in the application.

Your application must include your original Form I-20 (Certificate of Eligibility for Nonimmigrant Student) issued by the school where you will study. To request either a change or reinstatement, you must submit documentation that demonstrates your ability to pay for your studies and support yourself while you are in the United States.

#### *F-1 Extensions:*

Do not use this form to request an extension. For information concerning extensions, contact your designated school official at your institution.

#### *F-1 Reinstatement:*

You will only be considered for reinstatement as an F-1 student if you establish:

A. That the violation of status was due solely to circumstances beyond your control or that failure to reinstate you would result in extreme hardship;

B. You are pursuing or will pursue a full course of study;

C. You have not been employed without authorization; and

D. You are not in removal proceedings.

### 6. A G, Designated Principal Resident Representative of a Foreign Government and his or her immediate family members

You must submit a copy, front and back, of the Form I-94, of each person included in the application, and a Form I-566, certified by the Department of State to indicate your accredited status.

**NOTE:** A G-1 through G-4 nonimmigrant is not required to pay a fee with the I-539 application.

The application must also be filed with:

A. A copy of your employer's Form I-94 or approval notice demonstrating G status;

B. An original letter from your employer describing your duties and stating that he or she intends to personally employ you; and arrangements you have made to depart from the United States; and

**7. Dependents of an H, Temporary Worker.**

If you are filing for an extension/change of status as the dependent of an employee who is an H temporary worker, this application must be submitted with:

**A.** The Form I-129 filed for that employee or a copy of the filing receipt noting that the petition is pending with the USCIS;

**B.** A copy of the employee's Form I-94 or approval notice showing that he or she has already been granted status to the period requested on your application; and

**C.** Evidence of relationship (example: birth or marriage certificate).

**NOTE:** An employer should file Form I-129 to request an extension/change to H status for an employee or prospective employee. Dependents of such employees should file for an extension/change of status on this form, not on Form I-129.

**8. A J-1, Exchange Visitor.**

If you are requesting a change of status to J-1, your application must be filed with an original Form DS-2019, Certificate of Eligibility for Exchange Visitor Status. You must also submit your original Form I-94, as well as the original Form I-94 of each person included in the application.

**NOTE:** A J-1 exchange visitor whose status is for the purpose of receiving graduate medical education or training, who has not received the appropriate waiver, is ineligible for any change of status. Also, a J-1 subject to the foreign residence requirement, who has not received a waiver of that requirement, is only eligible for a change of status to A or G.

***J-1 Extensions:***

If you are seeking an extension, contact the responsible officer of your program for information about this procedure.

***J-1 Reinstatement:***

If you are a J-1 exchange visitor seeking reinstatement, you may need to apply for such approval by the Department of State's Office of Education and Cultural Affairs. Contact the responsible officer at your sponsoring program for information on the reinstatement filing procedure.

**9. Dependents of an L, Intracompany Transferee.**

If you are filing for an extension/change of status as the dependent of an employee who is an L intracompany transferee, this application must be submitted with:

**A.** The Form I-129 filed for that employee or a copy of the filing receipt noting that the petition is pending with USCIS;

**B.** A copy of the employee's Form I-94 or approval notice showing that he or she has already been granted status to the period requested on your application; and

**C.** Evidence of relationship (example: birth or marriage certificate).

**NOTE:** An employer should file Form I-129 to request an extension/change to L status for an employee or prospective employee. Dependents of such employees should file for an extension/change of status on this form, not on Form I-129.

**10. An M-1, Vocational or Non-Academic Student.**

To request a change to or extension of M-1 status, or apply for reinstatement as an M-1 student, you must submit your original Form I-94, as well as the original Form I-94 of each person included in the application.

***M-1 Reinstatement:***

**A.** That the violation of status was due solely to circumstances beyond your control or that failure to reinstate you would result in extreme hardship;

**B.** You are pursuing or will pursue a full course of study;

**C.** You have not been employed without authorization; and

**D.** You are not in removal proceedings.

**NOTE:** If you are an M-1 student, you are not eligible for a change to F-1 status and you are not eligible for a change to any H status, if the training you received as an M-1 helps you qualify for the H status. Also, you may not be granted a change to M-1 status for training to qualify for H status.

**11. Dependents of a P, Artists, Athletes and Entertainers.**

If you are filing for an extension/change of status as the dependent of an employee who is classified as a P nonimmigrant, this application must be submitted with:

**A.** The Form I-129 filed for that employee or a copy of the filing receipt noting that the petition is pending with the USCIS;

B. A copy of the employee's Form I-94 or approval notice showing that he or she has already been granted status to the period requested on your application; and

C. Evidence of relationship (example: birth or marriage certificate).

**NOTE:** An employer should file Form I-129 to request an extension/change to P status for an employee or prospective employee. Dependents of such employees should file for an extension/change of status on this form, not on Form I-129.

## 12. Dependents of an R, Religious Worker.

If you are filing for an extension/change of status as the dependent of an employee who is classified as an R nonimmigrant, this application must be submitted with:

A. The Form I-129 filed for that employee or a copy of the filing receipt noting that the petition is pending with USCIS;

B. A copy of the employee's Form I-94 or approval notice showing that he or she has already been granted status to the period requested on your application; and

C. Evidence of relationship (example: birth or marriage certificate).

## 13. TD Dependents of TN Nonimmigrants.

TN nonimmigrants are citizens of Canada or Mexico who are coming as business persons to the United States to engage in business activities at a professional level, pursuant to the North American Free Trade Agreement (NAFTA). The dependents (spouse or unmarried minor children) of a TN nonimmigrant are designated as TD nonimmigrants. A TD nonimmigrant may accompany or follow to join the TN professional. TD nonimmigrants may not work in the United States.

The Form I-539 shall be used by a TD nonimmigrant to request an extension of stay or by an applicant to request a change of nonimmigrant status to TD classification.

If you are filing for an extension/change of status as the dependent of an employee who is classified as a TN nonimmigrant, this application must be submitted with:

A. The Form I-129 filed for that employee or a copy of the filing receipt noting that the petition is pending with USCIS;

B. A copy of the employee's Form I-94 or approval notice showing that he or she has already been granted status to the period requested on your application; and

C. Evidence of relationship (example: birth or marriage certificate).

## 14. A V, Spouse or Child of a Lawful Permanent Resident.

Use this Form I-539 if you are physically present in the United States and wish to request initial status or change status to a V nonimmigrant, or to request an extension of your current V nonimmigrant status.

Applicants should follow the instructions on this form and the attached instructions to Supplement A to Form I-539, Filing Instructions for V Nonimmigrants. The supplement contains additional information and the location where V applicants must file their applications.

**NOTE:** In addition to the **$300.00** application fee required to file Form I-539, V applicants are required to pay a **$80.00** biometric services fee for USCIS to take their fingerprints.

If necessary, USCIS may also take the V applicant's photograph and signature as part of the biometric services.

### Notice to V Nonimmigrants.

The Legal Immigration Family Equity Act (LIFE), signed into law on December 21, 2000, created a new V visa. This nonimmigrant status allows certain persons to reside legally in the United States and to travel to and from the United States while they wait to obtain lawful permanent residence.

In order to be eligible for a V visa, all of the following conditions must be met:

A. You must be the spouse or the unmarried child of a lawful permanent resident;

B. A Form I-130, Petition for Alien Relative, must have been filed for you by your permanent resident spouse on or before December 21, 2000; and

C. You must have been waiting for at least three years after the Form I-130 was filed for you;

Or you must be the unmarried child (under 21 years of age) of a person who meets the three requirements listed above.

V visa holders will be eligible to adjust to lawful permanent resident status once an immigrant visa becomes available to them. While they are waiting, V visa holders may be authorized to work following their submission and USCIS approval of their Form I-765, Application for Employment Authorization.

**WARNING:** Be advised that persons in V status who have been in the United States illegally for more than 180 days may trigger the grounds of inadmissibility regarding unlawful presence (for the applicable 3-year or 10-year bar to admission) if they leave the United States. Their departure may prevent them from adjusting status as a permanent resident.

## Who May Not File This Form I-539?

You may not be granted an extension or change of status if you were admitted under the Visa Waiver Program or if your current status is:

1. An alien in transit (C) or in transit without a visa (TWOV);

2. A crewman (D); or

3. A fiance'(e) or dependent of a fiance'(e) (K)(1) or (K)(2).

A spouse (K-3) of a U.S. citizen and their children (K-4), accorded such status pursuant to the LIFE Act, may not change to another nonimmigrant status.

**EXCEPTION:** A K-3 and K-4 are eligible to apply for an extension of status. They should file for an extension during the processing of the Form I-130 filed on their behalf and up to completion of their adjustment of status application.

**NOTE:** Any nonimmigrant (A to V) may not change their status to K-3 or K-4.

## General Instructions.

### Step 1. Fill Out the Form I-539

1. Type or print legibly in black ink.

2. If extra space is needed to complete any item, attach a continuation sheet, indicate the item number, and date and sign each sheet.

3. Answer all questions fully and accurately. State that an item is not applicable with "N/A." If the answer is none, write "none."

### Step 2. General requirements

*Required Documentation - Form I-94, Nonimmigrant Arrival/ Departure Record.* You are required to submit with your Form I-539 application the original or copy, front and back, of Form I-94 of each person included in your application. If the original Form I-94 or required copy cannot be submitted with this application, include a Form I-102, Application for Replacement/Initial Nonimmigrant Arrival/ Departure Document, with the required fee.

*Valid Passport.* If you were required to have a passport to be admitted into the United States, you must maintain the validity of your passport during your nonimmigrant stay. If a required passport is not valid when you file the Form I-539 application, submit an explanation with your form.

*Additional Evidence.* You may be required to submit additional evidence noted in these instructions.

*Translations.* Any document containing foreign language submitted to the Service shall be accompanied by a full English language translation which the translator has certified as complete and accurate, and by the translator's certification that he or she is competent to translate from the foreign language into English.

*Copies.* Unless specifically required that an original document be filed with an application or petition, an ordinary legible photocopy may be submitted. Original documents submitted when not required will remain a part of the record, even if the submission was not required.

## Where To File?

1. With some exceptions, Form I-539 is generally filed with the California Service Center or the Vermont Service Center.

   California Service Center fillings cover the following states: Alaska, Arizona, California, Colorado, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, North Dakota, Ohio, Oregon, South Dakota, Utah, Washington, Wisconsin, or Wyoming.

   The mailing address is:

   > **USCIS California Service Center**
   > P.O. Box 10539
   > Laguna Niguel, CA 92607-1053

   Vermont Service Center filings cover the following states: Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Mississippi, New Hamphsire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Virginia, U.S. Virgin Islands, West Virginia and the District of Columbia.

   The address for Vermont Service Center filings is:

   > **USCIS Vermont Service Center**
   > ATTN: I-539
   > 75 Lower Welden Street
   > St. Albans, VT 05479

2. **Applicants for change of status to E-1, E-2, H-4, L-2, O-3, or P-4 as the dependent spouse or child or for an E-1, E-2, H-4, L-2, O-3, P-4, or TD extension, as the dependent spouse or child.**

   A. **Filing Form I-539 at the same time as the principal:** If your Form I-539 for change of status or extension of stay is filed at the same time as the principal's Form I-129, Petition for Nonimmigrant Worker, (which includes a request for change of status or extension of stay), send the entire Form I-129/I-539 package to the Vermont Service Center or the California Service Center, depending on the state where the principal is or will be employed temporarily.

   B. **Filing Form I-539 separately from the principal and the principal's case is pending:** If the principal's Form I-129 (which includes a request for change of status or extension of stay) is pending, file Form I-539 with the same service center where the principal's Form I-129 is pending. Include a copy of the Form I-129 filing receipt (or transfer notice) to show the pending Form I-129 location.

   C. **Filing Form I-539 separately from the principal and the principal's case is approved:** If the principal's Form I-129 (which included a request for change of status or extension of stay) has already been approved, file Form I-539 with the service center which approved the principal's I-129 petition. Include a copy of the Form I-129 approval notice to show the approved Form I-129 location.

   D. **F-1 and M-1 students applying for F-1 and M-1 <u>reinstatement</u>:** File Form I-539 with the California Service Center or the Vermont Service Center, depending on the state in which the educational institution you attend or plan to attend is located.

   E. **All other applicants for change of status or extention of stay (not listed above or in the exceptions):** File Form I-539 with the California Service Center or the Vermont Service Center, depending on the state where you live.

3. **Exceptions**

   A. **R-2 Religious Worker Dependents:**

      File Form I-539 with the California Service Center, regardless of where the principal is/will be employed.

   B. **H-1 C Nurses dependents:**

      File Form I-539 with the California Service Center, regardless of where the principal is/will be employed.

   C. **TD dependents of TN principals (Free Trade-Canada and Mexico), H-4 dependents of H-1B1 principals (Free Trade-Singapore and Chile), and E-3 dependents of E-3 principals (Free Trade-Australia):**

      File Form I-539 with the Vermont Service Center, regardless of where the principal is/will be employed.

   D. **Dependents of Major League Sports Athletes or Support Personnel:**

      File with the Vermont Service Center. This covers major league athletes, minor league sports and any affiliates associated with the major leagues in baseball, hockey, soccer, basketball, and football. Support personnel includes: coaches, trainers, broadcasters, referees, linesmen, umpires and interpreters.

   E. **A, G and NATO:**

      1. For Change of status requests to A, G, or NATO classification for employment with an embassy, international organization, or NATO, mail Form I-539 through your embassy, international organization, or NATO to: Department of State, Office of Protocol, 3507 International Place, N.W., Suite 242, Washington, DC 20008.

      2. For change of status requests to G classification for employment with a foreign government's mission to the United Nations or with the United Nations Secretariat, mail Form I-539 <u>**through the foreign government's mission or the UN Secretariat**</u> to: U.S. Mission to the United Nations, 799 United Nations Plaza, New York, NY 10017.

      3. For a dependent spouse or child requesting a change of status to a NATO classification based on the principal's classification as a NATO nonimmigrant, mail Form I-539 to: NATO/HQ SACT Legal Affairs, 7857 Blandy Road, Suite 100, Norfolk, VA 23551. If you or the principal or the principal NATO nonimmigrant  through whom you derive your status are posted at a national component or as an exchange officer, please submit Form I-539 to your embassy for proper filing through official diplomatic channels.

4. For a change of status from A, G, or NATO classifications to another nonimmigrant classification, file Form I-539 with the USCIS Service Center designated to handle the new nonimmigrant classification sought. You must submit with Form I-539 an endorsement by the Department of State Visa Office, or a USUN official at **Part 7** on the Form I-566 (interagency Record of Request-A, G, or NATO Dependent Employment Authorization or Change/Adjustment to Extend/ Change nonimmigrant Status).

5. For extensions of stay for A-3, G-5, or NATO-7 nonimmigrants, submit your application through your embassy or international organization, or NATO command for proper filing through official diplomatic channels.

**F. V Nonimmigrants:**

Follow the filing instructions on Form I-539 Supplement A, Filing Instructions for V Nonimmigrants.

**G. Updated Filing Address Information**

The filing addresses provided on this form reflect the most current information as of the date this form was last printed.

If you are filing Form I-539 more than 30 days after the latest edition date shown in the lower right-hand corner, visit us online at **www.uscis.gov before you file**, and check the Immigration Forms page to confirm the correct filing address and version currently in use. Check the edition date located in the lower right-hand corner of the form. If the edition date on your Form I-539 matches the edition date listed for Form I-539 on the online forms page, your version is current and will be accepted by USCIS. If the edition date on the online version is later, download a copy and use the online version. If you do not have Internet access, call Customer Service at **1-800-375-5283** to verify the current filing address and edition date.

**H. Note on E-Filing**

If you are e-filing this application, it will automatically be routed to the Service Center, and you will receive a receipt indicating the location to which it was routed. This location may not necessarily be the same center shown in the filing addresses listed above. For e-filed applications, it is very important to review your filing receipt and make specific note of the receiving location.

All further communication, including submission of supporting documents, should be directed to the receiving location indicated on your e-filing receipt.

### What Is the Filing Fee?

The filing fee for a Form I-539 is **$300.00** except for certain A and G nonimmigrants who are not required to pay a fee, as noted in these instructions.

An additional biometric fee of **$80.00** is required when filing this Form I-539 for V nonimmigrant status. After you submit Form I-539, USCIS will notify you about when and where to go for biometric services.

If biometric services are required, you may submit one check or money order for both the application and biometric fees, for a total of **$380.00**.

Use the following guidelines when you prepare your check or money order for the Form I-539 and the biometric service fee, if applicable:

1. The check or money order must be drawn on a bank or other financial institution located in the United States and must be payable in U.S. currency; and

2. Make the check or money order payable to **U.S. Department of Homeland Security**, unless:

   A. If you live in Guam and are filing your petition there, make it payable to **Treasurer, Guam**.

   B. If you live in the U.S. Virgin Islands and are filing your petition there, make it payable to **Commissioner of Finance of the Virgin Islands**.

**NOTE:** Please spell out U.S. Department of Homeland Security; do not use the initials "USDHS" or "DHS."

**Notice to Those Making Payment by Check.** If you send us a check, it will be converted into an electronic funds transfer (EFT). This means we will copy your check and use the account information on it to electronically debit your account for the amount of the check. The debit from your account will usually take 24 hours, and will be shown on your regular account statement.

You will not receive your original check back. We will destroy your original check, but we will keep a copy of it. If the EFT cannot be processed for technical reasons, you authorize us to process the copy in place of your original check. If the EFT cannot be completed because of insufficient funds, we may try to make the transfer up to two times.

**How to Check If the Fees Are Correct.**

The form and biometric fees on this form are current as of the edition date appearing in the lower right corner of this page. However, because USCIS fees change periodically, you can verify if the fees are correct by following one of the steps below:

1. Visit our website at **www.uscis.gov**, select "Immigration Forms" and check the appropriate fee;

2. Review the Fee Schedule included in your form package, if you called us to request the form; or

3. Telephone our National Customer Service Center at **1-800-375-5283** and ask for the fee information.

**NOTE:** If your Form I-539 requires payment of a biometric service fee for USCIS to take your fingerprints, photograph or signature, you can use the same procedure to obtain the correct biometric fee.

## Address Changes

If you change your address and you have an application or petition pending with USCIS, you may change your address on-line at **www.uscis.gov**, click on "Change your address with USCIS" and follow the prompts or by completing and mailing Form AR-11, Alien's Change of Address Card, to:

**U.S. Citizenship and Immigration Services
Change of Address
P.O. Box 7134
London, KY 40742-7134**

For commercial overnight or fast freight services only, mail to:

**U.S. Citizenship and Immigration Services
Change of Address
1084-I South Laurel Road
London, KY 40744**

## Processing Information

**Any Form I-539 that is not signed or accompanied by the correct fee, will be rejected with a notice that the Form I-539 is deficient.** You may correct the deficiency and resubmit the Form I-539. An application or petition is not considered properly filed until accepted by USCIS.

**Initial processing.** Once a Form I-539 has been accepted, it will be checked for completeness, including submission of the required initial evidence. If you do not completely fill out the form, or file it without required initial evidence, you will not establish a basis for eligibility and we may deny your Form I-539.

**Requests for more information or interview.** We may request more information or evidence, or we may request that you appear at a USCIS office for an interview. We may also request that you submit the originals of any copy. We will return these originals when they are no longer required.

**Decision.** The decision on a Form I-539 involves a determination of whether you have established eligiblity for the requested benefit. You will be notified of the decision in writing.

## USCIS Forms and Information

To order USCIS forms, call our toll-free number at **1-800-870-3676.** You can also get USCIS forms and information on immigration laws, regulations and procedures by telephoning our National Customer Service Center at **1-800-375-5283** or visiting our internet website at **www.uscis.gov.**

As an altenative to waiting in line for assistance at your local USCIS office, you can now schedule an appointment through our internet-based system, **InfoPass.** To access the system, visit our website. Use the **InfoPass** appointment scheduler and follow the screen prompts to set up your appointment. **InfoPass** generates an electronic appointment notice that appears on the screen.

## Penalties

If you knowingly and willfully falsify or conceal a material fact or submit a false document with this Form I-539, we will deny the Form I-539 and may deny any other immigration benefit.

In addition, you will face severe penalties provided by law and may be subject to criminal prosecution.

## Privacy Act Notice

We ask for the information on this form, and associated evidence, to determine if you have established eligibility for the immigration benefit for which you are filing. Our legal right to ask for this information can be found in the Immigration and Nationality Act, as amended. We may provide this information to other government agencies. Failure to provide this information, and any requested evidence, may delay a final decision or result in denial of your Form I-539.

## Paperwork Reduction Act

An agency may not conduct or sponsor an information collection and a person is not required to respond to a collection of information unless it displays a currently valid OMB control number. The public reporting burden for this collection of information is estimated at 45 minutes per response, including the time for reviewing instructions, completing and submitting the form. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to: U.S. Citizenship and Immigration Services, Regulatory Management Division, 111 Massachusetts Avenue, N.W., 3rd Floor, Suite 3008, Washington, DC 20529. OMB No. 1615-0003. **Do not mail your application to this address.**

OMB No. 1615-0003; Expires 11/30/07

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# I-539, Application to Extend/ Change Nonimmigrant Status

**START HERE - Please type or print in black ink.**

| | **For USCIS Use Only** |

## Part 1.    Information about you.

Family Name            Given Name            Middle Name

Address -
In care of -

Street Number            Apt. #
and Name

City            State            Zip Code            Daytime Phone #

Country of Birth            Country of Citizenship

Date of Birth            U. S. Social Security #  (if any)    A # (if any)
(mm/dd/yyyy)

Date of Last Arrival            I-94 #
Into the U.S.

Current Nonimmigrant            Expires on
Status            (mm/dd/yyyy)

| For USCIS Use Only | |
| --- | --- |
| Returned | Receipt |
| Date | |
| Resubmitted | |
| Date | |
| Reloc Sent | |
| Date | |
| Reloc Rec'd | |
| Date | |
| ☐ Applicant Interviewed on | |
| Date | |

## Part 2.  Application type. *(See instructions for fee.)*

**1.** I am applying for: *(Check one)*
   **a.** ☐ An extension of stay in my current status.
   **b.** ☐ A change of status.  The new status I am requesting is:  _____
   **c.** ☐ Other: *(Describe grounds of eligibility.)*

**2.** Number of people included in this application:  *(Check one.)*
   **a.** ☐ I am the only applicant.
   **b.** ☐ Members of my family are filing this application with me.
         The total number of people (including me) in the application is:  _____
         *(Complete the supplement for each co-applicant.)*

## Part 3.  Processing information.

**1.** I/We request that my/our current or requested status be extended until
   (mm/dd/yyyy):

**2.** Is this application based on an extension or change of status already granted to your
   spouse, child or parent?
   ☐ No ☐ Yes.  USCIS Receipt #  _____

**3.** Is this application based on a separate petition or application to give your spouse,
   child or parent an extension or change of status?  ☐ No ☐ Yes, filed with this I-539.

   ☐ Yes, filed previously and pending with USCIS.  Receipt #:  _____

**4.** If you answered "Yes" to Question 3, give the name of the petitioner or applicant:



   If the petition or application is pending with USCIS, also give the following data:

   | Office filed at | Filed on (mm/dd/yyyy) |
   | --- | --- |

## Part 4.  Additional information.

**1.** For applicant #1, provide passport information:    Valid to: (mm/dd/yyyy)
   Country of Issuance

**2.** Foreign Address:  Street Number and Name            Apt. #

   City or Town            State or Province

   Country            Zip/Postal Code

| ☐ *Extension Granted to (Date):*  _____ |
| --- |
| *Change of Status/Extension Granted* |
| New Class:  From *(Date):*  _____ |
|            To *(Date):*  _____ |

| If Denied: |
| --- |
| ☐ Still within period of stay |
| ☐ S/D to:  _____ |
| ☐ Place under docket control |

| **Remarks:** |
| --- |

| **Action Block** |
| --- |

| **To Be Completed by** ***Attorney or Representative,*** **if any** |
| --- |
| ☐ Fill in box if G-28 is attached to represent the applicant. |
| ATTY State License # |



**Part 4.  Additional information.**

| 3. Answer the following questions.  If you answer "Yes" to any question, explain on separate sheet of paper. | Yes | No |
|---|---|---|
| **a.** Are you, or any other person included on the application, an applicant for an immigrant visa? | ☐ | ☐ |
| **b.** Has an immigrant petition ever been filed for you or for any other person included in this application? | ☐ | ☐ |
| **c.** Has a Form I-485, Application to Register Permanent Residence or Adjust Status, ever been filed by you or by any other person included in this application? | ☐ | ☐ |
| **d.** Have you, or any other person included in this application, ever been arrested or convicted of any criminal offense since last entering the U.S.? | ☐ | ☐ |
| **e.** Have you, or any other person included in this application, done anything that violated the terms of the nonimmigrant status you now hold? | ☐ | ☐ |
| **f.** Are you, or any other person included in this application, now in removal proceedings? | ☐ | ☐ |
| **g.** Have you, or any other person included in this application, been employed in the U.S. since last admitted or granted an extension or change of status? | ☐ | ☐ |

- If you answered "Yes" to Question 3f, give the following information concerning the removal proceedings on the attached page entitled "**Part 4.  Additional information.  Page for answers to 3f and 3g.**"  Include the name of the person in removal proceedings and information on jurisdiction, date proceedings began and status of proceedings.

- If you answered "No" to Question 3g, fully describe how you are supporting yourself on the attached page entitled "**Part 4. Additional  information.  Page for answers to 3f and 3g.**"  Include the source, amount and basis for any income.

- If you answered "Yes" to Question 3g, fully describe the employment on the attached page entitled "**Part 4.  Additional information.  Page for answers to 3f and 3g.**"  Include the name of the person employed, name and address of the employer, weekly income and whether the employment was specifically authorized by USCIS.

| | Yes | No |
|---|---|---|
| **h.** Are you currently or have you ever been a J-1 exchange visitor or a J-2 dependent or a J-1 exchange visitor? | ☐ | ☐ |

If yes, please provide the dates you maintained status as a J-1 exchange visitor or J-2 dependant. Also, please provide proof of your J-1 or J-2 status, such as a copy of Form DS-2019, Certificate of Eligibility for Exchange Visitor Status or a copy of your passport that includes the J visa stamp.

**Part 5.  Signature.** (*Read the information on penalties in the instructions before completing this section.  You must file this application while in the United States.*)

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it is all true and correct.  I authorize the release of any information from my records that U.S. Citizenship and Immigration Services needs to determine eligibility for the benefit I am seeking.

| Signature | Print your Name | Date |
|---|---|---|
| | | |
| Daytime Telephone Number | E-Mail Address | |

**NOTE:** *If you do not completely fill out this form or fail to submit required documents listed in the instructions, you may not be found eligible for the requested benefit and this application may be denied.*

**Part 6.  Signature of person preparing form, if other than above.** *(Sign below.)*

I declare that I prepared this application at the request of the above person and it is based on all information of which I have knowledge.

| Signature | Print your Name | Date |
|---|---|---|
| Firm Name and Address | Daytime Telephone Number *(Area Code and Number)* | |
| | Fax Number *(Area Code and Number)* | E-Mail Address |

**Part 4.  Additional information. Page for answers to 3f and 3g.**

**If you answered "Yes" to Question 3f** in Part 4 on Page 3 of this form, give the following information concerning the removal proceedings.  Include the name of the person in removal proceedings and information on jurisdiction, date proceedings began and status of procedings.

**If you answered "No" to Question 3g** in Part 4 on Page 3 of this form, fully describe how you are supporting yourself.  Include the source, amount and basis for any income.

**If you answered "Yes" to Question 3g** in Part 4 on Page 3 of this form, fully describe the employment.  Include the name of the person employed, name and address of the employer, weekly income and whether the employment was specifically authorized by USCIS.

**Supplement -1**
**Attach to Form I-539 when more than one person is included in the petition or application.**
*(List each person separately. Do not include the person named in the Form I-539.)*

| Family Name | Given Name | Middle Name | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| Country of Birth | County of Citizenship | U.S. Social Security # (if any) | A # (if any) |

Date of Arrival (mm/dd/yyyy) — I-94 #

Current Nonimmigrant Status: — Expires on (mm/dd/yyyy)

Country Where Passport Issued — Expiration Date (mm/dd/yyyy)

| Family Name | Given Name | Middle Name | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| Country of Birth | Country of Citizenship | U.S. Social Security # (if any) | A # (if any) |

Date of Arrival (mm/dd/yyyy) — I-94 #

Current Nonimmigrant Status: — Expires on (mm/dd/yyyy)

Country Where Passport Issued — Expiration Date (mm/dd/yyyy)

| Family Name | Given Name | Middle Name | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| Country of Birth | Country of Citizenship | U.S. Social Security # (if any) | A # (if any) |

Date of Arrival (mm/dd/yyyy) — I-94 #

Current Nonimmigrant Status: — Expires on (mm/dd/yyyy)

Country Where Passport Issued — Expiration Date (mm/dd/yyyy)

| Family Name | Given Name | Middle Name | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| Country of Birth | Country of Citizenship | U.S. Social Security # (if any) | A # (if any) |

Date of Arrival (mm/dd/yyyy) — I-94 #

Current Nonimmigrant Status: — Expires on (mm/dd/yyyy)

Country Where Passport Issued — Expiration Date (mm/dd/yyyy)

| Family Name | Given Name | Middle Name | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| Country of Birth | Country of Citizenship | U.S. Social Security # (if any) | A # (if any) |

Date of Arrival (mm/dd/yyyy) — I-94 #

Current Nonimmigrant Status: — Expires on (mm/dd/yyyy)

Country Where Passport Issued — Expiration Date (mm/dd/yyyy)

**If you need additional space, attach a separate sheet(s) of paper.**
*Place your name, A #, if any, date of birth, form number and application date at the top of the sheet(s) of paper.*

**U.S. Department of Justice**
Immigration and Naturalization Service

OMB No. 1115-0093; Expires 7/31/04

# Application to Extend/Change Nonimmigrant Status

·RT HERE - Please Type or Print.

**FOR INS USE ONLY**

## Part 1. Information about you.

| | | |
|---|---|---|
| Family Name **MAWALLA** | Given Name **Frederick** | Middle **Eliampenzi Sombiro** |

Address -
In care of -

Street Number and Name **509 Castleford Street**    Apt. #

| City **Rockville** | State **MD** | Zip Code **20851** | Daytime Phone # **301-838-0621** |
|---|---|---|---|

| Country of Birth **Tanzania** | Country of Citizenship **Tanzania** |
|---|---|

| Date of Birth (MM/DD/YYYY) **04/15/1955** | Social Security # (if any) **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** | A # (if any) **None** |
|---|---|---|

| Date of Last Arrival Into the U. S. **08/04/2002** | I-94 # **41059799007** |
|---|---|

| Current Nonimmigrant Status **G-4** | Expires on (MM/DD/YYYY) **D/S** |
|---|---|

**FOR INS USE ONLY:**

Returned    Receipt

Date

Resubmitted

Date

Reloc Sent

Date

Reloc Rec'd

Date

## Part 2. Application type. (See instructions for fee.)

1. I am applying for: (Check one.)
   a. ☐ An extension of stay in my current status.
   b. ☒ A change of status. The new status I am requesting is: **B-2**
   c. ☐ Other: (Describe grounds of eligibility.) _____
2. Number of people included in this application: (Check one.)
   a. ☐ I am the only applicant.
   b. ☒ Members of my family are filing this application with me.
   The total number of people (including me) in the application is: **Five**
   (Complete the supplement for each co-applicant.)

☐ Applicant Interviewed on

Date

☐ Extension Granted to (Date): _____

Change of Status/Extension Granted
New Class: From (Date): _____
To (Date): _____

## Part 3. Processing information.

1. I/We request that my/our current or requested status be extended until (MM/DD/YYYY): **07/24/2003**
2. Is this application based on an extension or change of status already granted to your spouse, child or parent?
   ☒ No ☐ Yes, Receipt # _____
3. Is this application based on a separate petition or application to give your spouse, child or parent an extension or change of status? ☒ No ☐ Yes, filed with this I-539.
   ☐ Yes, filed previously and pending with INS. INS receipt number: _____
4. If you answered "Yes" to Question 3, give the name of the petitioner or applicant:

_____

If the petition or application is pending with INS, also give the following information:

Office filed at _____ Filed on (MM/DD/YYYY) _____

If Denied:
☐ Still within period of stay
☐ S/D to: _____
☐ Place under docket control

Remarks:

Action Block

```
EXHIBIT

4
```

## Part 4. Additional information.

1. For applicant #1, provide passport information:
   Country of Issuance
   **Tanzania**    Valid to: (MM/DD/YYYY) **12/01/2007**
2. Foreign Address: Street Number and Name
   (. . Box 7153    Apt. #

| City or Town **Dar-Es-Salaam** | State or Province |
|---|---|

| Country **Tanzania** | Zip/Postal Code |
|---|---|

**To be Completed by Attorney or Representative, if any**

☒ Fill in box if G-28 is attached to represent the applicant.

ATTY State License #
**WDC#396134**

Form I-539 (Rev. 09/04/01 I)Y

**t 4. Additional information.**

| 3. Answer the following questions. If you answer "Yes" to any question, explain on separate sheet of paper. | Yes | No |
|---|---|---|
| a. Are you, or any other person included on the application, an applicant for an immigrant visa? | | X |
| b. Has an immigrant petition ever been filed for you or for any other person included in this application? | X | |
| c. Has a Form I-485, Application to Register Permanent Residence or Adjust Status, ever been filed by you or by any other person included in this application? | | X |
| d. Have you, or any other person included in this application, ever been arrested or convicted of any criminal offense since last entering the U.S. | | X |
| e. Have you, or any other person included in this application, done anything that violated the terms of the nonimmigrant status you now hold? | | X |
| f. Are you, or any other person included in this application, now in removal proceedings? | | X |
| g. Have you, or any other person included in this application, been employed in the U.S. since last admitted or granted an extension or change of status? | X | |

- If you answered "Yes" to Question 3f, give the following information concerning the removal proceedings on the attached page entitled **"Part 4. Additional information. Page for answers to 3f and 3g."** Include the name of the person in removal proceedings and information on jurisdiction, date proceedings began and status of proceedings.
- If you answered "No" to Question 3g, fully describe how you are supporting yourself on the attached page entitled **"Part 4. Additional information. Page for answers to 3f and 3g."** Include the source, amount and basis for any income.
- If you answered "Yes" to Question 3g, fully describe the employment on the attached page entitled **"Part 4. Additional information. Page for answers to 3f and 3g."** Include the name of the person employed, name and address of the employer, weekly income and whether the employment was specifically authorized by INS.

**Part 5. Signature.** *(Read the information on penalties in the instructions before completing this section. You must file this application while in the United States.)*

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it is all true and correct. I authorize the release of any information from my records which the Immigration and Naturalization Service needs to determine eligibility for the benefit I am seeking.

| Signature *FmZawalla* | Print your Name<br>Frederick Eliampenzi Sombiro MAWALLA | Date<br>x 01/23/2003 |
|---|---|---|

*Please note: If you do not completely fill out this form, or fail to submit required documents listed in the instructions, you may not be found eligible the requested benefit and this application will have to be denied.*

**Part 6. Signature of person preparing form, if other than above.** *(Sign below.)*

I declare that I prepared this application at the request of the above person and it is based on all information of which I have knowledge.

| Signature *Linda M. Hoffman* | Print your Name<br>Linda M. Hoffman | Date<br>1/24/01 |
|---|---|---|
| Firm Name  1925 K Street, NW, Suite 200, Washington, and Address D.C. 20006 | Daytime Phone Number<br>*(Area Code and Number)* (202) 331-9450 | |
| | Fax Number<br>*(Area Code and Number)* (202) 466-8151 | |

*(Please remember to enclose the mailing label with your application.)*

**Part 4. Additional information. Page for answers to 3f and 3g.**

If you answered "Yes" to Question 3f in Part 4 on page 3 of this form, give the following information concerning the removal proceedings. Include the name of the person in removal proceedings and information on jurisdiction, date proceedings began and status of proceedings.

N/A

If you answered "No" to Question 3g in Part 4 on page 3 of this form, fully describe how you are supporting yourself. Include the source, amount and basis for any income.

N/A

If you answered "Yes" to Question 3g in Part 4 on page 3 of this form, fully describe the employment. Include the name of the person employed, name and address of the employer, weekly income and whether the employment was specifically authorized by INS.

Employer: Intelsat Global Services Corporation, 3400 International Drive, Washington, D.C. 20008
Annual Salary: $71,189

I was a full-time employee at Intelsat, an international organization in Washington, D.C. from August 1998 until December 2002 when my employment was terminated. During that time I held a valid G-4 visa.

**ATTACHMENT TO FORM I-539**
**PART 4(b)**
**MAWALLA, Frederick**

Intelsat Global Service Corporation submitted an I-140 Immigrant Petition for Alien Worker on May 17, 2002 (EAC-02-192-50905), which was approved on November 1, 2002. Since my employment has terminated, I cannot proceed on the petition.

December 16, 2002

Protocol Production Unit
International Center
SA-33
3507 International Place, N.W.
Suite 252
Washington, DC 20008

To Whom It May Concern:

Attached is a list of INTELSAT staff members who were terminated effective **December 3, 2002**.

Your assistance is very much appreciated. Please contact me or my assistant, Martina Cotton, at (202) 331-9450 if you have any questions or require additional information.

Sincerely,

Linda M. Hoffman
Visa Services Administrator

EXHIBIT

5

tabbies®

**INTELSAT**

**TERMINATION DATE:  December 3, 2002**

| TITLE | LAST NAME | FIRST NAME | NATIONALITY | PID NUMBER | VISA STATUS |
|-------|-----------|------------|-------------|------------|-------------|
| Mr.   | Mawalla   | Frederick  | Tanzania    | 3146-1593  | G4          |
|       | Mawalla   | Eunice F.S. | Tanzania   | 3146-1601  | G4          |
|       | Mawalla   | Koichi     | Tanzania    | 3146-1627  | G4          |
|       | Mawalla   | Sombiro K. Jr. | Tanzania | 3146-1635 | G4          |
|       | Mawalla   | Wene F.S.  | Tanzania    | 3146-1619  | G4          |

## Adjudicator's Field Manual - Redacted Public Version

---

**Updated Through June 18, 2007**

---

**Posted July, 2007**

---

**IMPORTANT NOTICE** Nothing in this manual shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person. See also our general website disclaimer at: http://uscis.gov/graphics/privnote.htm Data deleted pursuant to 5 USC 552(b)(2) and (b)(7)(E) of the Freedom of Information Act to prevent the disclosure of records that are "related solely to the internal personnel rules and practices of an agency," the disclosure of which would risk the circumvention of a legal requirement; and law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disc losure could reasonably be expected to risk circumvention of the law." Note: Because USCIS policy and procedures are always evolving it may not be possible to keep the iAFM fully up-to-date, although we will endeavor to keep it as current as possible. If a chapter or section is undergoing major revision, it will be temporarily withdrawn and its place in the iAFM will be "reserved." However, in order to provide the most information to the greatest number of people, a section being revised for minor revisions and updates will not be withdrawn and reserved. The iAFM is intended to be "user friendly." Please send us your suggestions for improvements and any ideas for new items you think should be included in the iAFM by e-mail at manual1@dhs.gov . In case we need to contact you, please provide us with your full name and (if you are an attorney or representative) the name of the firm or organization you represent, in addition to your e-mail address. We welcome your comments and suggestions regarding the content and format of the Internet version of the Adjudication's Field Manual. Please do not expect us to respond to such messages, though we will consider them. Messages that are not limited to comments about the content and format of the iAFM will be deleted without being considered.

**Table of Contents**

**Appendices**

**Transmittal Memoranda**

## Adjudicator's Field Manual: Table of Contents

EXHIBIT

tabbies

6

## 30.5 Status as a Foreign Government Official or Employee of an International Organization.

(a) General .

(1) The Effect of Recognition by the Secretary of State . Section 101(a)(15)(A)(i), and (ii), of the Act and 8 CFR 214.2(a)(1) provide that an A-1 or A-2 is entitled to that classification as long as he/she is recognized by the President or Secretary of State. Section 101(a)(15)(G)(i), (ii), (iii) and (iv) of the Act and 8 CFR 214.2(g)(1) provide that a G-1, G-2, G-3 or G-4 is entitled to that classification as long as he/she is recognized by the Secretary of State. Section 102 of the Act provides that a G-1, G-2, G-3 or G-4 nonimmigrant is not subject to most gro unds of inadmissibility and deportation. Because of this statutory protection, USCIS is precluded from taking action against a G-1, G-2, G-3 or G-4 who is or was violating status, unless the Department of State authorizes such adverse action by notifying USCIS in writing that the G-1, G-2, G-3 or G-4 is no longer entitled to such classification and that his/her visa is canceled.

(2) Termination of Official Assignment . When employees of foreign missions (embassies, consulates, miscellaneous foreign government organizations, and missions to the OAS) terminate their employment status, the missions are required to submit to the Department of State (DOS), without delay, the Form DS-2008 (Notice of Termination of Diplomatic, Consular, or Foreign Government Employment). Other International Organizations must submit a written notification of termination of employment.

Diplomats and other foreign government officials who have completed a tour of duty are normally allowed a reasonable period of time to depart from the U.S., during which they continue to enjoy the same Privileges and Immunities (Ps&Is) extended to them during their tours of duty. As a general rule, the Office of Protocol interprets "reasonable time to depart" as 30 days following the termination of a tour. However, the Office of Protocol is prepared to concur on the extension of the "reasonable time to depa rt" to sixty (60) days, with the proviso that Ps&Is will not be extended beyond 30 days following the effective day of termination.

(b) Privileges and Immunities . Section 102 of the Act defines the parameters of USCIS action regarding the admission, exclusion and deportation of G-1, G-2, G-3 and G-4 aliens. Its provisions are binding upon all USCIS personnel. Privileges and immunities are not only very sensitive issues, but also very complex ones. Officers should be aware that privileges and immunities can vary greatly. They can vary greatly within a nonimmigrant classification and between two positions which have the same official title, but which represent different foreign countries.

(c) Department of State Identity Cards . The Office of Protocol issues identification cards to all diplomatic and consular personnel who are entitled to rights, privileges and immunities. The State Department considers these cards as the only authoritative identity document for identifying these individuals. Since 1987, three types of cards have been issued:

*   diplomatic (blue border)

*   official (green border)

• consular (red border)

Each card is 3¾ x 2½, and contains the bearer's photograph as well as name, title, mission, city and state, date of birth, identification number, expiration date and a Departmental seal. The reverse of the card includes a brief description of the bearer's immunity and a space for the bearer's signature.

(d) <u>Sources of Additional Information</u> . Additional information regarding diplomatic rights, privileges and immunities is contained in Appendix 13-2 of the *Special Agent's Field Manual* . More detailed information is contained in the Department of State's Publication 9533, "Guidance for Law Enforcement Officers". **[(b)(2) or (b)(7)(E)]**

(e) <u>Inquiries and Verifications by USCIS Personnel</u> .

   (1) <u>A and G Visa Holders in Washington, DC and Diplomatic Missions Throughout the United States (Other Than Aliens Assigned to the United Nations)</u> . Requests for information or verification may be transmitted either telephonically or in writing.

      (A) <u>Telephonic Requests</u> . The US CIS may request status information on As and Gs telephonically to the Department of State at: (202) 647-1405. In most cases, the Department of State will respond to your telephone request within 5 business days, unless there is an emergent situation.

      (B) <u>Written requests</u> . If USCIS requires written confirmation of an individual in A or G status, the request must be submitted on Form I-566 , Inter-Agency Record of Individual Requesting Change/Adjustment to, or from, A or G status or Requesting A, G, or NATO Dependent Employment Authorization. The Form I-566 must be completed as follows:

      • Complete Part A with information about the subject of the inquiry. If the subject is a dependent of an A-3 or G-5 employee or an A-3 or G-5 employee, you must also complete Part B with the information about the principal from whom the dependent derives status, or for whom the A-3 or G-5 works;

      • Beside the sub-title "Part C: Type of Request" print in large capital letters, preferably in red ink, "VERIFY STATUS";

      • For all cases except those involving individuals working at the United Nations, complete the "from" block of Part G and check the Visa Office block, crossing out "subject has filed under Section 13. Please advise this office of your findings.";

      • Place a photocopy of the form in the relating A-file or work folder; and

      • Forward both copies by fax (202) 647-1560 or postal mail to:

         Assistant Chief of Protocol

Office of Protocol - Room 1238

U. S. Department of State

2201 22nd Street, N. W.

Washington, D. C. 20520

The Department of State will provide responses to written requests within ten (10) business days of receipt. The Department of State will note its findings in Part F and return copy 1 of the form to the officer whose name appears in Part G.

(2) <u>Aliens Working at the United Nations (G Visa Holders)</u> . Requests regarding U.N. accredited personnel may be transmitted telephonically, in writing, or by e-mail.

(A) <u>Telephonic Requests</u> . The USCIS may make telephonic requests on G status information to the Diplomatic Accreditation Officer.

(B) <u>Written Requests</u> . If USCIS requires written confirmation of an individual's status, the request must be submitted in writing on Form I-566. You should complete the Form I-566 , following these steps:

- Complete Part A with information about the subject of the inquiry. If the subject is a dependent of an A-3 or G-5 employee or an A-3 or G-5 employee, you must also complete Part B with the information about the principal from whom the dependent derives status, or for whom the A-3 or G-5 works;

- Beside the sub-title "Part C: Type of Request" print in large capital letters, preferably in red ink, "VERIFY STATUS"; and

- Complete the "from" block of Part G and check the USUN block, crossing out "C/S to, Adjustment, Granted, Denied, on."

- Place a photocopy of the completed form in the relating A file or work folder; and

- Forward both copies by the fax number (202) 415-4162 or postal mail to the attention of the Diplomatic Accreditation Officer:

United States Mission to the United Nations

140 East 45 th Street

New York, NY 10017

The United States Mission to the United Nations (USUN) will note its findings in Part F and return copy

1 of the form to the officer whose name appears in Part G.

NOTE: Written Requests may also be sent via e-mail to the USUN. Please make sure you put "Diplomatic Accreditation Officer" in the subject line of your message. The e-mail address is usa@un.int.

(f) <u>Inquiries from Other Law Enforcement Agencies</u> . At times another agency may advise USCIS that an A-1, A-2, G-1, G-2, G-3 or G-4 was involved in an incident which brings him/her to police attention, and may ask for guidance. USCIS should advise the other agency that such personnel should hold an identity card as described in paragraph (c) above and that they should telephone the Department of State if there are any questions, including but not limited to questions about the treatment that should be accorded the individual.

(g) <u>Requesting Reports from Other Agencies</u> . In addition to the procedure discussed in paragraph (f), the agency should be requested to provide USCIS with a copy of the report if it involves the commission of a felony offense, a crime involving moral turpitude or a drug-related crime, or is an otherwise reportable incident as described in **Chapter 3.8** .

(h) <u>Dependents of Permanent Residents Employed in A or G Status</u> . Occasionally, a lawful permanent resident may be employed in an occupation which would otherwise entitle him or her to A-1, A-2, G-1, G-2, G-3 or G-4 status provided he or she has executed Form I-508 (Form I-508F for French nationals) waiving diplomatic privileges. Family members of such a permanent resident alien are admissible as A or G nonimmigrants if the dependents hold valid passports and A or G visas. Attendants, servants or personal employees of such persons are not entitled to A-3 or G-5 status.



United States Department of State

*Washington, D.C.   20520*

## Office of Protocol

## U.S. Department of State

--------------------------------------------------------------

### Facsimile Cover Sheet

**To:** MIRIAM FREILISHER

**Fax:** 466-8151

**From:** Lawrence Dunham

Assistant Chief of Protocol

**Phone:** 202/647-1985

**Fax:** 202/647-1560

**Date:** October 28, 1999

**Pages:** 11

**Comment:** _____

**EXHIBIT**

7

October 30, 1991

The Office of Protocol currently is reviewing and updating its records pertaining to international organizations and standardizing the information in its computerized data base.  In this regard, we would appreciate it if you could review the information on the enclosed computer printout and verify that it is correct.  Also enclosed are instructions for completing this project.  We would appreciate it if you could return the printout to the Department of State, Office of Protocol, Production Unit, 3507 International Place, N.W., Washington, D.C. 20008-3034 by November 29, 1991.  I wish to express in advance our thanks for your cooperation and assistance.

Expeditious notification to the Department of the arrival or appointment, and final departure or termination of employment, of representatives to and employees of international organizations (foreign nationals, U.S. citizens, and permanent resident aliens) is essential.  These reporting requirements are necessary for the Department of State to maintain accurate records of all current international organization personnel in the United States.

We also request prompt reporting to the Office of Protocol of any changes in the status of personnel and their family members originally reported to us, such as adjustments in visa status (including admission to permanent resident status), changes in marital status, changes in family (such as the birth or adoption of a child, the arrival of a spouse, child or domestic, the departure of any family member or domestic) or the final departure or termination of officers and employees of the organization. Notification is required as well of the arrival, and final departure or termination of employment of private servants.

It is not necessary to notify the Department of the employment of persons who will be employed for 90 days or less or of persons who do not perform their duties in the United States.

So that our record keeping may be uniform, we would appreciate it if you could provide the information set forth in Attachment A in the format indicated for all new personnel registered at the Inter-American Investment Corp. including U.S.citizens and permanent resident aliens.  Failure to provide all information will preclude the registration of the principal and/or family members. All information should be reported to the Department (Office of Protocol, Room 1238, Department of State, Washington, D.C. 20520-1238) within 30 days of the occurrence of the event.

We would appreciate it if you also would confirm the mailing address of the international organization, as well as any annex offices, and the name and telephone number of the organization contact.  If you have any questions regarding this matter, please do not hesitate to contact Marie T. Reardon on 202-647-1402.

Sincerely,

Richard Gookin
Associate Chief of Protocol

Enclosures:
    As Stated.

The Secretary of State presents his compliments to
Their Excellencies and Messieurs and Mesdames the Chiefs of
Mission and has the honor to remind them of the
requirement, under Article 10 of the Vienna Convention on
Diplomatic Relations and Article 24 of the Vienna
Convention on Consular Relations, to notify the Department
promptly of the arrival or appointment and departure or
termination of functions of all members of the missions or
consulates including United States citizens and permanent
resident aliens as well as members of their families and
personal servants.

Likewise, missions should promptly report to the
Department of State any changes in the status of persons
originally reported to it, such as adjustments in visa
status (including admission to permanent resident status),
changes in title, changes in marital status, or changes in
family (such as the birth or adoption of a child, the
arrival of a spouse, parent, or child from abroad, the
departure of any family member). In addition, prompt
notification of the opening or closing of embassy and
consular offices, annexes, or miscellaneous foreign
government offices as well as changes in their addresses

**DIPLOMATIC NOTE**

- 2 -

telephone, and telefax numbers should be made to the
Department.

These reporting requirements are obligatory under
international and domestic law to enable the Department to
maintain accurate records of all current foreign government
personnel in the United States and is essential to
continued enjoyment by members of the missions and
consulates of the rights, privileges and immunities to
which they may be entitled. In addition, because the
information submitted by embassies and consulates is
distributed to the public for various purposes, the
Department wishes to ensure that this information is as
accurate as possible, particularly for the publications,
**Diplomatic List** and **Consular Offices in the United States**,
and for providing guidance to law enforcement and other
federal, state, and local officials for purposes of
providing notification to foreign consular officers of
arrests, detentions, deaths, guardianship appointment
proceedings, and other events concerning their nationals.

A copy of note No. 03-301, dated October 30, 2003
regarding the manner in which to direct notifications of

- 3 -

appointment, termination and change is attached for

reference.


Enclosures:

As stated.


Department of State,

Washington, December 8, 2003

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

FREDERICK MAWALLA                  :
                                   :
    Plaintiff              :
                                   :    Civil No.: 1:07-cv-01538 (EGS)
v.                                 :
                                   :
LINDA HOFFMAN *et al.*             :
                                   :
    Defendants.            :

## ORDER

UPON CONSIDERATION of the Motion of Defendants Linda Hoffman, Esquire and the law firm of Freilicher & Hoffman, P.C. to Dismiss Plaintiff's Complaint, any opposition thereto, and the record as a whole, there appearing good cause therefore, it is this ___ day of _____, 2007, by this Court, hereby

ORDERED, that the Motion of Defendants Linda Hoffman, Esquire and the law firm of Freilicher & Hoffman, P.C. to Dismiss Plaintiff's Complaint be and hereby is GRANTED; and it is

FURTHER ORDERED, that the Complaint and all claims pending against Defendants, Linda Hoffman, Esquire and the law firm of Freilicher & Hoffman, P.C., be and hereby are, DISMISSED WITH PREJUDICE.

_____
The Honorable Emmett G. Sullivan
United States District Court for the District of Columbia

34

Copies to:

Matthew H. Simmons, Esquire
Simmons & Associates, Chartered
7347 Wisconsin Avenue
Suite 200
Bethesda, MD 20814
*Counsel for Plaintiff Frederick Mawalla*

Laura N. Steel , Esquire
Kathleen Warin, Esquire
Wilson Elser Moskowitz Edelman & Dicker, LLP
1341 G Street, N.W., Suite 500
Washington, D.C.  20005
*Counsel for Defendants, Linda Hoffman, Esquire and Freilicher & Hoffman*

277501.3