# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FREDERICK MAWALLA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:07-cv-01538 |
| | ) | |
| LINDA HOFFMAN, et al. | ) | |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COMES NOW, Plaintiff Frederick Mawalla, by and through his undersigned counsel, and opposes the Defendants' Motion to Dismiss Plaintiff's Complaint and states as following:

### STANDARD OF REVIEW

A complaint may be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Perez v. Goldin*, 360 F. Supp.2d 12, 15 (D.D.C. 2003). When ruling on a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and must accept the Plaintiff's allegations as true. *Id.*

### FACTUAL BACKGROUND

1. In 2001, Intelsat decided to switch their employees holding G-4 visas, including Mr. Mawalla, to permanent residents status. Complaint at ¶ 3.

2. Mr. Mawalla, upon Intelsat's advice, retained Defendants as immigration counsel. Defendants were representing both Mr. Mawalla and Intelsat. Complaint at ¶¶ 4, 17.

3. On May 15, 2002, Defendants filed the I-140 Immigration Petition on behalf of Mr. Mawalla. Complaint at ¶ 20. It was approved by U.S. Citizenship and Immigration Services

("USCIS") on October 31, 2002. *Mawalla v. Chertoff*, Civ. No. 06-584, attached to Defendants' Motion as "Exhibit 1" at 2

4. On July 31, 2002, the Immigration and Naturalization Service allowed concurrent filing of I-485 and I-140 for those petitioners for whom visas were immediately available[1]. *See* Allowing in Certain Circumstances for the Filing of Form I-140 Visa Petition Concurrently with a Form I-485 Application, INS No. 2104-00, RIN 1111-AGOO, 67 FR 49561, July 31, 2002, attached hereto as "**Exhibit A**." This rule also allowed an alien worker, whose I-140 was pending when the rule went into effect, to file an I-485 immediately. *See* "**Exhibit A**" at 2. ("[U]pon issuance of this rule, an alien whose Form I-140 visa petition is pending with the service may file a Form I-485, together with associated forms and fees, with the Service office at which the visa petition was filed.")

5. Defendants never filed an I-485 on behalf of Mr. Mawalla. Complaint at ¶41.

6. Mr. Mawalla was terminated from his job with Intelsat in late November 2002. Complaint at ¶5.

7. Defendants informed Mr. Mawalla that he was no longer eligible for adjustment of status. They attempted to obtain for Mr. Mawalla a B-2 (visitor) visa, which they ultimately failed to do. Complaint at ¶¶25-27.

8. Mr. Mawalla retained different immigration counsel. Complaint at ¶ 30.

9. In late 2003/early 2004, Mr. Mawalla was informed that his I-140 had not been revoked and he could apply for adjustment of status. Complaint at ¶ 31.

10. On April 29, 2004, Mr. Mawalla filed a Form I-484, Application to Adjust Status to

---

[1]By virtue of his qualification, a visa was immediately available to Mr. Mawalla by virtue of his education and professional background. Complaint at ¶ 21.

Permanent Resident.  Complaint at  ¶32; *Mawalla v. Chertoff* at 2.

11.  In August 2004, Defendants advised Intelsat to withdraw Mr. Mawalla's I-140 Petition. Complaint at  ¶ 7.

12.  Intelsat sent a letter dated August 20, 2004 to USCIS withdrawing Mr. Mawalla's I-140 Petition. This letter listed Defendants as the recipient of the copy of this letter.  Complaint at  ¶ 33.

13.  This letter was received by USCIS on September 17, 2004. *Mawalla v. Chertoff* at 2.

14.  On March 11, 2005 USCIS sent Mr. Mawalla a Notice of Intent to Deny his I-485 application because of the revocation of his I-140. *Id.*

15.  On April 6, 2005 Mr. Mawalla responded by including an offer of employment from Bethesda Asphalt & Bituminous Company.  *Id.*  His request was denied. *Id.*

16.  Mr. Mawalla filed a Motion to Reopen and/or Reconsider on July 18, 2005 and another Motion to Reopen and/or Reconsider on March 13, 2006, both of which were denied. *Id.* at 3.

17.  Mr. Mawalla filed *Mawalla v. Chertoff,* appealing the decision of USCIS on March 30, 2006. *Id.*

18.  His appeal was denied in a Memorandum Opinion  filed on January 5, 2007. The opinion stated:

> Now that the legal standard is clear, the Court can apply it to Plaintiff's application. Plaintiff filed his I-485 application on April 29, 2004.  Although, the record is silent as to when Mr. Mawalla left his employment at Intelsat, the record is clear that on September 17, 2004 Intelsat submitted a letter to USCIS that Plaintiff no longer worked there and that it wanted to withdraw its I-140 Petition. (AR 196.)  Thus, it is beyond dispute that Mr. Mawalla's job-change occurred on or before September 17, 2004 - 141 days after he filed his I-485 application. Because he changed jobs before his I-485 application had been pending for 180 day, Mr. Mawalla's I-140 did not remain valid under AC21. USCIS therefore correctly denied his I-485 application on the ground that he did not have a valid and current visa to support his adjustment of status. The fact that USCIS did not actually adjudicate his application until June 2005 is of no moment because the 180 day provision pertains to the date of the

employment change, not the date of adjudication.

*Mawalla v. Chertoff* at 10.

19.  Mr. Mawalla filed this action on August 20, 2007.

## ARGUMENT

## I.     PLAINTIFF STATES A CAUSE OF ACTION.

Defendants, in their Motion, claim that Plaintiff fails to state a cause of action because "plaintiff's alleged injury (his inability to obtain a visa, become a permanent resident and remain in this country) was not proximately caused by any alleged act or omission of his former immigration counsel."  This is patently incorrect.

Defendants' omissions began almost immediately upon the onset of their representation in 2002.  On March 18, 2002, the Application for Alien Employment Certification was approved.  On May 15, 2002, Defendants filed the I-140 Immigration Petition on behalf of Mr. Mawalla.  On July 31, 2002, Immigration and Naturalization Service allowed concurrent filing of I-485 and I-140 for those petitioners for whom visas were immediately available[2].  *See* Allowing in Certain Circumstances for the Filing of Form I-140 Visa Petition Concurrently with a Form I-485 Application, INS No. 2104-00, RIN 1111-AGOO, 67 FR 49561, July 31, 2002, attached hereto as "**Exhibit A**."   This rule also allowed an alien worker, whose I-140 was pending when the rule went into effect, to file an I-485 immediately.  *See* **Exhibit A** at 2. ("[U]pon issuance of this rule, an alien whose Form I-140 visa petition is pending with the Service may file Form I-485, together with associated forms and fees, with the Service office at which the visa petition was filed.")  Thus,

---

[2]By virtue of his qualification, a visa was immediately available to Mr. Mawalla by virtue of his education and professional background.  Complaint at ¶ 21.

Defendants could have filed a Form I-485 on July 31, 2002. They did not do so -- in fact, they never filed the Form I-485 for him.

Under Section 106(c) of the American Competitiveness in the Twenty-First Century Act (AC21), codified as 8 U.S.C. § 1154(j), [a] petition under subsection (a)(1)(D) for an individual whose application for adjustment of status pursuant to section 245 [i.e. Form I-485] has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employees if the new job is in the same or a similar occupational classification as the job for which the petition was filed." Even "if the employer withdraws the approved Form I-140 on or after the date that the Form I-485 has been pending 180 days, the approved Form I-140 shall remain valid under the provision of § 106(c) of AC21." U.S. Department of Homeland Security, Bureau of Citizenship and Immigration Services, Memorandum for Service Center Directors, BCIS; Regional Directors, BCIS, Continuing Validity of Form I-140 Petition in accordance with Section 106(c) of the American Competitiveness in the Twenty-First Century Act of 2000 (AC21), August 4, 2003, attached hereto as "**Exhibit B**," at 3. *See also* analysis in *Mawalla v. Chertoff.*

Defendants could and should have filed Mr. Mawalla's I-485 in early August 2002, after the INS No. 2104-00 went into effect. Mr. Mawalla's I-140 was approved on October 31, 2002, prior to his termination. If his I-485 was filed prior to his termination, he would have had a greater period of time to seek a new job and take advantage of his already approved I-140.

Defendants' omission did not end at failing to timely file Mr. Mawalla's I-485. As clearly stated in the *Mawalla v. Chertoff* opinion, quoted in relevant parts *supra*, Mr. Mawalla's immigration application was denied because Intelsat withdrew its I-140 Petition on September 17,

5

2004 and Mr. Mawalla's I-485 was not pending for 180 days at the time of this withdrawal.  If Intelsat had not withdrawn its I-140 petition on the eve of the expiration of the 180-day period, Mr. Mawalla's I-485 would have been approved and he would have successfully adjusted his status.

As alleged in the Complaint, Intelsat withdrew Mr. Mawalla's I-140 upon Defendants' advice.  Intelsat copied defendants (at the time former counsel) on the letter notifying Plaintiff of the withdrawal of the I-140.  Notwithstanding this evidence, this Court must accept all well-pled facts as true when considering a Rule 16(b)(6) motion.  Although Intelsat was acting within its right to withdraw the I-140, Defendants were not entitled to give Intelsat advice to do so as it was clearly against Mr. Mawalla's -- Defendants' former client's -- interests.  But for Defendants' advice, Intelsat would not have revoked Mr. Mawalla's I-140 prior to the expiration of the 180-day period and Mr. Mawalla would have been able to adjust his status.

Overall, Plaintiff  clearly states a cause of action for both professional malpractice and breach of fiduciary duty.  *See e.g. Chase v. Glibert*, 499 A. 2d 1203(D.C. 1985);  *O'Neil v. Bergan*, 452 A.2d 337 (D.C. 1982).

Defendants attempt to avoid liability by speculating that the *Mawalla v. Chertoff*  court would have based its opinion on different reasoning were it aware of the fact that Mr. Mawalla was terminated in 2002.  Defendants should not be able to rely on this speculation to spring themselves from answering the claims against them.  The court never reached, nor had to reach, whether the date of actual separation from work or date on which the I-140 is actually revoked is controlling to calculate the 180-day period.

## II.    PLAINTIFFS CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

Defendants cannot meet the high bar to establish that the statute of limitations warrants

dismissal of the claims against them.  "If a statute of limitation bar is not apparent on the fact of the complaint,  then it may not afford basis for dismissal under Rule 12(b)(6)"  *Rycoline Prods. v. C & W Unlimited*, 109 F. 3d 883, 887 (3rd Cir. 1997)(internal quotation omitted).  "In the District of Columbia, the statute of limitations governing a legal malpractice claim is three years [...] In such cases, the discovery rule provides that a claim does not accrue until a plaintiff  knows, or by the exercise of the reasonable diligence should know, of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing." *Wagner v. Sellinger*, 847 A. 2d 1151, 1154 (D.C. Ct. App. 2004) (internal quotation omitted).

Here, the key element of malpractice, injury, did not occur until at least August 20, 2004, when Intelsat, acting upon Defendants' advice, revoked Mr. Mawalla's I-140[3].  Similarly, Defendants' breach of fiduciary duty did not occur until the same date, when Intelsat, acting upon Defendants' advice, revoked Mr. Mawalla's I-140 petition.

Even if Defendants' malpractice took place in 2002, Defendants' failure to take advantage of the changes in the immigration law was not known to Plaintiff until he became aware of the August 20, 2004 letter at the earliest.  Plaintiff could not have known of this breach of duty an earlier than this date.  It is clearly alleged in the Complaint that after being terminated from Intelsat, Plaintiff did not know that Defendants did anything wrong as he continue to retain them to help obtain a B-2 visa.  His hiring of the subsequent attorneys to pursue some options available to him does not put him on notice of Defendants' omission.  He retained his first attorney -- Mr. Rhodes -- to deal with his B-2 application.  The Complaint does not state that she was retained to look through

---

[3]Although, it appears from *Mawalla v. Chertoff* complaint that this letter was not received by Department of Homeland Security until 17, 2004.

the Defendants' prior work.  Similarly, his later <u>immigration</u> attorneys were there to investigate and

pursue options available to him at the time he retained them -- not to conduct *post factum* analysis

of Defendants' prior representation.

The letter dated August 20, 2004 from Intelsat to the U.S. Department of Homeland Security,

which listed Defendants as recipients demonstrated to Plaintiff that Defendants were improperly

affiliated with Intelsat.    Complaint at ¶ 33.    The realization that Defendants were working

for/advising long-time client Intelsat and were involved in the revocation of his I-140 -- an adverse

action even meaningless at this point -- triggered Mr. Mawalla's inquiry that led to this lawsuit.

This Complaint was timely filed on August 20, 2007. .

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

Respectfully Submitted,


   /s/  Matthew H. Simmons
Matthew H. Simmons, Esq.
Simmons & Associates, Chartered
7347 Wisconsin Avenue
Suite 200
Bethesda, Maryland 20814
(301) 986-8444 (Phone)
(240) 597-0749 (Fax)

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Opposition of Motion of Defendants to Dismiss Plaintiffs' Complaint was served by ECF and electronic mail on December 19, 2007 to the following address:

Laura N. Steel
Kathleen H. Warin
The Colorado Building, Suite 500
1341 G. Street, N.W.
Washington, D.C. 20005
Counsel for Defendants

      /s/  Matthew H. Simmons
Matthew H. Simmons

FEDERAL REGISTER
Vol. 67, No. 147
Rules and Regulations
DEPARTMENT OF JUSTICE (DOJ)
 Immigration and Naturalization Service (INS)
8 CFR Parts 204, 245 and 299
[INS No. 2104-00]
RIN 1115-AGOO
Allowing in Certain Circumstances for the Filing of Form I-140 Visa Petition Concurrently With a Form I-485 Application
67 FR 49561

DATE: Wednesday, July 31, 2002

ACTION: Interim rule with request for comments.

SUMMARY: The current Immigration and Naturalization Service (Service) regulations provide that an alien worker who wants to apply for permanent resident by filing the appropriate Form I-485, Application to Register Permanent Residence or Adjust Status, cannot do so until he or she obtains approval of the underlying petition, Form I-140, Immigrant Petition for Alien Worker. This procedure has resulted in an unnecessary delay for certain alien workers. This interim rule amends the Service's regulations by allowing the Form I-485 to be filed concurrently when a visa is immediately available, thereby improving the efficiency of the process as well as customer service. This interim rule also provides that, if an employment-based visa petition is pending on July 31, 2002, the alien beneficiary may obtain the benefits of concurrent filing, but only if the alien beneficiary files the Form I-485, together with the applicable fee and a copy of their Form I-797, Notice of Action, establishing previous receipt and acceptance by the Service of the underlying Form I-140 visa petition. Further, this interim rule will allow the alien worker to apply for employment authorization using Form I-765, Application for Employment Authorization, and for advance parole authorization using Form I-131, Application for Travel Document, while the Form I-485 is pending.

DATES: Effective date: This interim rule is effective July 31, 2002.
Comment date: Written comments must be submitted on or before September 30, 2002.

ADDRESSES: Please submit written comments to the Director, Policy Directives and Instructions Branch, Immigration and Naturalization Service, 425 I Street, NW., Room 4034, Washington, DC 20536. To ensure proper handling, please reference INS No. 2104-00 on your correspondence. You may also submit comments electronically to the Service at insregs@usdoj.gov. When submitting comments electronically please include the INS No. 2104-00 in the subject box. Comments are available for public inspection at the above address by calling (202) 514-3291 to arrange for an appointment.I0FOR FURTHER INFORMATION CONTACT: Morrie Berez, Assistant Director, Business and Trade Services Branch, Immigration and Naturalization Service, 425 I Street NW., Room 3214, Washington, DC 20536, telephone (202) 353-8177.

SUPPLEMENTARY INFORMATION:

Why Is the Service Issuing This Rule?


EXHIBIT
A

This interim rule is necessary to improve both efficiency and customer service, and to support the Service's long-established goals for filing of petitions and applications via direct mail. Current regulations at § 204.5(n), § 245.1(g) and § 245.2(a)(2) state that an alien can only submit Form I-485 after the alien has had his or her underlying visa petition, Form I-140, approved, and when an immigrant visa is immediately available. Due to these requirements there has been a delay from the time the Form I-140 is filed with the Service until the alien worker, for whom a visa is otherwise immediately available, can properly file Form I-485 with the Service.

The most practical and efficient way to eliminate this delay is to permit concurrent filing of Form I-485 together with Form I-140 in cases in which a visa is immediately available. Concurrent filing eliminates the delay that takes place between approval of Form I-140 and the subsequent filing of Form I-485. This interim rule provides for such concurrent filing.

Does This Interim Rule Change or Amend the Substantive Eligibility Requirements for the Visa Petition or Permanent Residence Applications?

No, this interim rule does not change the current substantive requirements governing eligibility for and adjudication of the Form I-140 nor for the Form I-485.

Who Is Eligible To File Forms I-140 and I-485 Concurrently?

Forms I-140 and I-485 may be filed concurrently only when an immigrant visa number is immediately available. This interim rule does not change the existing requirement that a visa number must be immediately available before an alien can apply for permanent resident status. This interim rule simply applies to aliens who are classifiable under sections 203(b)(1), (2), and (3), of the Immigration and Nationality Act, allowing them to file the Forms I-140 and I-485 at the same time, but only when a visa is immediately available.

If a Form I-140 Visa Petition Previously Filed for an Alien Worker Is Still Pending With the Service on or After the Date This Rule Is Published, and a Visa Number Is Immediately Available, Can the Alien File Form I-485?

Yes, upon issuance of this rule, an alien whose Form I-140 visa petition is pending with the Service may file Form I-485, together with associated forms and fees, with the Service office at which the visa petition was filed. When filing Form I-485, the alien will be required to attach a copy of the Form I-797, Notice of Action, establishing previous receipt and acceptance by the Service of the underlying Form I-140 visa petition. When an immigrant visa is immediately available, Form I-485 may be filed either concurrently with the Form I-140 or anytime thereafter.

If a Visa Number Was Not Immediately Available at the Time a Form I-140 Visa Petition Was Filed, and Then a Visa Number Becomes Available, Can the Alien File Form I-485?

Yes, upon issuance of this rule, if a visa number becomes immediately available since filing of the underlying Form I-140, the alien may tehn file [*49562] Form I-485, together with associated forms and appropriate fees, with the Service office at which the visa petition was filed. When filing Form I-485, the alien will be required to attach a copy of the Form I-797, Notice of Action, establishing previous receipt and acceptance by the Service of the underlying Form I-140 visa petition.

If the Alien Is in Deportation or Removal Proceedings, Does the Alien File the Form I-485 Under This Section With the Service or With the Immigration Court or Board of Immigration Appeals (Board)?

For aliens in deportation or removal proceedings, 8 CFR 245.2(a)(2) establishes "applications shall be made and considered only in those proceedings." If the alien is before the Immigration Court, the Form I-485, associated documents and proof of payment of the fees must be filed with the Immigration Court. If the alien has an appeal pending before the Board, the Form I-485, associated documents and proof of payment of the fees must be filed with the Board. The fees must first be paid to, and receipt obtained from, the Service.

If the Alien Files the Form I-485 and Associated Documents With the Immigration Court or the Board After Paying the Proper Fees to the Service, Does Such a Filing Stop or Stay Deportation or Removal Proceedings?

No. The filing of an adjustment action where the underlying visa petition is not current does not by itself stop or stay (suspend) the proceedings. The Board will only accept the filing of the Form I-485 for placement into the Record of Proceedings (ROP). This filing is not a motion to reopen, motion to reconsider, or any other motion beyond a request to include the adjustment application in the file. Furthermore, accepting the application and placing it in the ROP is not a reopening or reconsidering of the case, nor any other action pertaining to the case. If the underlying petition for the alien is approved and a visa is or becomes immediately available, the alien must affirmatively move the Immigration Court or the Board of Immigration Appeals to consider the application for adjudication, or remand the application to the Service for adjudication if the Service concurs in the remand.

Besides Eliminating the Delay for Filing Form I-485, How Else Will These Regulatory Amendments Benefit Aliens?

These amendments will allow the Service to issue Employment Authorization Documentation (EAD) and advance parole authorization (which allows the alien to travel outside of the United States temporarily while his or her Form I-485 is pending with the Service) to certain alien workers within substantially less time than at present. In being able to apply for employment authorization and advance parole, the alien may avoid the adverse consequences of accrual of unlawful presence. To achieve the desired efficiency improvement in the Service's processing, only aliens who have filed a Form I-140 for which a visa number is immediately available and Form I-485 will qualify for these benefits. Therefore, as a result of this interim rule, an eligible beneficiary of a Form I-140 visa petition for whom a visa is immediately available will no longer need to wait for approval of the underlying Form I-140 before eligible to apply for these benefits.

How Does This Interim Rule Affect the September 6, 2000, Interim Rule Relating to National Interest Job Offer Waivers for Physicians?

On September 6, 2000, the Service published in the Federal Register at 64 FR 53889 an interim rule relating to national interest job offer waivers for physicians. Under 8 CFR 245.18(f) of that interim rule, when a physician files for adjustment of status the Service is required to give a physician notice of specific requirements relating to the adjustment

of the physician's status. This interim rule concerning concurrent filing of Forms I-140 and I-485 requires one conforming amendment to 8 CFR 245.18(f). If the physician filed the Form I-485 concurrently with the Form I-140, the Service will give the required notice upon approval of the Form I-140, rather than upon receipt of the Form I-485. If the physician waits to subsequently file the Form I-485 while the previously filed Form I-140 is still pending, then the Service will give the required notice upon approval of the Form I-140. If the physician files the Form I-485 after the Form I-140 is approved, then the Service will give the required notice upon receipt of the Form I-485.

Good Cause Exception

The Service's implementation of this rule as an interim rule, with provision for post-promulgation public comment, is based upon the "good cause" exception found at 5 U.S.C. 553(b)(B) and (d)(1). This rule relieves the current restriction that bars the filing of an application for permanent residence (Form I-485) until after the underlying visa petition (Form I-140) has been approved. This rule is intended to provide efficiency and fairness to applicants. It is therefore impractical, unnecessary, and contrary to the public interest to publish this rule with the prior notice and comment period normally required under 5 U.S.C. 553(b).

PART 204--IMMIGRANT PETITIONS
1. The authority citation for part 204 continues to read as follows:
Authority: 8 U.S.C. 1101, 1103, 1151, 1153, 1154, 1182, 1186a, 1255, 1641; 8 CFR part 2.
2. Section 204.5 is amended by revising paragraph (n)(1) to read as follows:

§ 204.5 -- Petitions for employment-based immigrants.
* * * * *
(n) * * *
(1) Approval. An approved employment-based petition will be forwarded to the National Visa Center of the Department of State if the beneficiary resides outside of the United States. If the Form I-140 petition indicates that the alien has filed or will file an application for adjustment to permanent residence in the United States (Form I-485) the approved visa petition (Form I-140), will be retained by the Service for consideration with the application for permanent residence (Form I-485). If a visa is available, and Form I-485 has not been filed, the alien will be instructed on the Form I-797, Notice of Action, (mailed out upon approval of the Form I-140 petition) to file the Form I-485.

PART 245--ADJUSTMENT OF STATUS TO THAT OF PERSON ADMITTED FOR PERMANENT RESIDENCE
3. The authority citation for part 245 continues to read as follows:
Authority: 8 U.S.C. 1101, 1103, 1182, 1255; sec. 202, Pub. L. 105-100, 111 Stat. 2160, 2193; sec. 902. Pub. L. 105-277, 112 Stat. 2681; 8 CFR part 2.
4. Section 245.1 is amended by revising the third sentence in paragraph (g)(1) to read as follows:

§ 245.1 -- Eligibility.
* * * * *
(g) * * *

(1) * * * An immigrant visa is considered available for accepting and processing the application Form I-485 is the preference category applicant has a priority date on the waiting list which is earlier than the date shown in the Bulletin (or the Bulletin shows that numbers for visa applicants in his or her category are current). * * *
* * * * *

5. Section 245.2 is amended by revising paragraph (a)(2)(i), to read as follows:

§ 245. -- Application.
(a) * * *
(2) * * *
(i) Under section 245. (A) An immigrant visa must be immediately available in order for an alien to properly file an adjustment application under section 245 of the Act See § 245.1(g)(1) to determine whether an immigrant visa is immediately available.
(B) If, at the time of filing, approval of a visa petition filed for classification under section 201(b)(2)(A)(i), section 203(a) or section 203(b)(1), (2) or (3) of the Act would make a visa immediately available to the alien beneficiary, the alien beneficiary's adjustment application will be considered properly filed whether submitted concurrently with or subsequent to the visa petition, provided that it meets the filing requirements contained in parts 103 and 245. For any other classification, the alien beneficiary may file the adjustment application only after the Service has approved the visa petition.
(C) A visa petition and an adjustment application are concurrently filed only if:
(1) The visa petitioner and adjustment applicant each file their respective form at the same time, bundled together within a single mailer or delivery packet, with the proper filing fees on the same day and at the same Service office, or;
(2) the visa petitioner filed the visa petition, for which a visa number has become immediately available, on, before or after July 31, 2002, and the adjustment applicant files the adjustment application, together with the proper filing fee and a copy of the Form I-797, Notice of Action, establishing the receipt and acceptance by the Service of the underlying Form I-140 visa petition, at the same Service office at which the visa petitioner filed the visa petition, or;
(3) The visa petitioner filed the visa petition, for which a visa number has become immediately available, on, before or after July 31, 2002, and the adjustment applicant files the adjustment application, together with proof of payment of the filing fee with the Service and a copy of the Form I-797 Notice of Action establishing the receipt and acceptance by the Service of the underlying Form I-140 visa petition, with the Immigration Court or the Board of Immigration Appeals when jurisdiction lies under paragraph (a)(1) of this section.
* * * * *

6. Section 245.18 is amended by revising paragraph (f) introductory text to read as follows:

§ 245.18 -- How can physicians (with approved Forms I-140) that are serving in medically underserved areas or at a Veterans Affairs facility adjust status?
* * * * *

(f) Will the Service provide information to the physician about evidence and supplemental filings? The Service shall provide the physician with the information and the projected timetables for completing the adjustment process, as described in this paragraph. If the physician either files the Form I-485 concurrently with or waits to subsequently file the Form I-485 while the previously filed Form I-140 is still pending, then the Service will given this information upon approval of the Form I-140. If the physician does not file the adjustment application until after approval of the Form I-140

visa petition, the Service shall provide this information upon receipt of the Form I-485 adjustment application.
* * * * * [*49564]

PART 299--IMMIGRATION FORMS
7. The authority citation for part 299 continues to read as follows:
Authority: 8 U.S.C. 1101, 1103; 8 CFR part 2.
8. Section 299.1 is amended in the table by revising the entry for Form I-140, to read as follows:


Dated: July 5, 2002.

James W. Ziglar,

Commissioner, Immigration and Naturalization Service.


--
Michael Baker
Attorney at Law
*******************************

435 N. LaSalle Street
Suite 300
Chicago, Illinois 60610
Tel.: (312) 836-9040
Fax: (312) 644-3216
-----------------------------------------
1098 S. Milwaukee Avenue
Suite 306
Wheeling, Illinois 60090
Tel.: (847) 465-0007
Fax: (847) 537-0004

<mailto:mdb@callyourlawyers.com>
 http://www.callyourlawyers.com
*******************************************
CONFIDENTIALITY NOTICE:

This Material is intended for the named recipient and, unless otherwise expressly indicated, is confidential and privileged information.  Any dissemination, distribution or copying of this material is prohibited.  If you received this message in error, please notify the sender by replying to this message and then delete it from your system.  Your cooperation is appreciated.
*****************************************

HQ 70/6.2.8

JUN 19 2001

MEMORANDUM FOR ALL SERVICE CENTER DIRECTORS;
                       REGIONAL DIRECTORS;
                       DIRECTOR, OFFICER DEVELOPMENT TRAINING
                       FACILITY, GLYNCO
                       DIRECTOR, OFFICER DEVELOPMENT TRAINING
                       FACILITY, ARTESIA

FROM:       Michael A. Pearson /S/
              Executive Associate Commissioner
              Office of Field Operations

SUBJECT:   Initial Guidance for Processing H-1B Petitions as Affected by the "American Competitiveness in the Twenty-First Century Act" (Public Law 106-313) and Related Legislation (Public Law 106-311) and (Public Law 106-396)

     Attached is the policy memorandum regarding the American Competitiveness in the Twenty-First Century Act and relating laws. The memo outlines proper procedures for handling cases effected by the new statutes. Until regulations are promulgated, I ask that field offices follow the interim procedures in the attached policy. This policy is effective immediately.

Attachment



HQPGM 70/6.2.8

JUN 19 2001

MEMORANDUM FOR    MICHAEL A. PEARSON
EXECUTIVE ASSOCIATE COMMISSIONER
OFFICE OF FIELD OPERATIONS

FROM:    Michael D. Cronin /S/
Executive Associate Commissioner
Office of Programs

SUBJECT:    Initial Guidance for Processing H-IB Petitions as Affected by the "American Competitiveness in the Twenty-First Century Act" (Public Law 106-313) and Related Legislation (Public Law 106-311) and (Public Law 106-396)

On October 17, 2000, former President Clinton signed into law The American Competitiveness in the Twenty-First Century Act, (AC21) Public Law 106-313. The new law increases the Fiscal Year (FY) H-IB cap and establishes new benefits in the H-IB nonimmigrant classification. All provisions in AC21 are effective upon the date of enactment, October 17, 2000. The H-IB nonimmigrant classification was also modified by the Act of October 17, 2000, Public Law 106-311 which increases the H-IB petition fee, and the Visa Waiver Permanent Program Act, Public Law 106-396 401 (2000) which affects the requirements for amended H-IB petitions. These statutes are attached to this memorandum.

On January 29, 2001, the Office of Field Operations issued a memorandum entitled "Interim Guidance for Processing H-IB Applicants for Admission as Affected by the American Competitiveness in the Twenty-first Century Act of 2000, Public Law 106-313," (the January 29, 2001, memo). The January 29, 2001 Memo provides interim guidance to Ports of Entry (POEs) for the processing of H-IB applicants for admission. The January 29, 2001, memo remains in effect and is also attached to this memorandum.

The following guidelines establish interim procedures for use by Service personnel in the processing of new benefits under AC21 and the related legislation. Forthcoming regulations will promulgate substantive standards to be utilized in the adjudication of these new benefits.

I.    **EFFECTIVE DATES**

- All provisions in AC21 are effective upon the date of enactment, October 17, 2000.
- The numerical limitations and the exemptions from the numerical limitations for the FY 2001 cap commence with petitions filed on September 1, 2000.
- Public Law 106-311 provides for new fee exemptions for certain entities identified below. These exemptions are effective for cases filed on or after October 17, 2000.
- Unless exempt from the fee, all H-IB petitions received by the Service on or after December 17, 2000 must be accompanied by the $1,000 H-IB Nonimmigrant Petitioner Account fee.

- Public Law 106-396, effective as of October 30, 2000, stipulates that amended H-1B petitions will not be required for petitioning employers who are involved in certain forms of corporate restructuring.

## II.    AC21

### A.  AC21 102 -- Temporary Increase in Visa Allotments

The AC21 102 provides that all H-1B petitions approved between the date the numerical limit was reached in FY 1999, * and September 30, 1999, are to be counted retroactively against the FY 1999 limit. This provision covers the H-1B petitions that were approved over the FY 1999 cap.

All approved H-1B petitions filed beginning October 1, 1999, up to and including August 31, 2000, are to be counted retroactively against the FY 2000 cap, regardless of the date of approval.

AC21 also increases the yearly number of H-1B nonimmigrant visas available to 195,000 for FYs 2001, 2002, and 2003. Starting in FY 2004, the number of H-1B nonimmigrant visas available will return to 65,000 per year. The statute specifies that the FY 2001 cap count starts with H-1B petitions filed on or after September 1, 2000.

### B.  AC21 103 and 114 -- Exemptions from the H-1B FY Cap

As of October 17, 2000, the following beneficiaries of approved H-1B petitions are exempt from the H-1B FY cap:

(a) beneficiaries who are in J-1 nonimmigrant status in order to receive graduate medical education or training pursuant to Immigration and Nationality Act (INA) 212(e)(iii), and who have obtained a waiver of the 2-year home residency requirement under the provisions of the INA first 214(1)(1)(B) (commonly referred to as the Conrad State 20 program); or

(b) beneficiaries who are employed at, or who have received an offer of employment at, an institution of higher education (as defined in the Higher Education Act of 1965 101(a), 20 USC 1001(a)), or a related or affiliated non-profit entity; or

(c) beneficiaries who are employed by, or who have received an offer of employment from, a non-profit research organization; or

(d) beneficiaries who are employed by, or who have received an offer of employment from, a governmental research organization; or

---

* See Notice, Information Regarding the H-1B Numerical Limitation for FY 1999, 64 Fed. Reg. 32151 (June 15, 1999). The Service reported that there were sufficient numbers of H-1B petitions pending at the Service Centers to reach the cap for FY 1999.

(e) beneficiaries who are currently maintaining, or who have held within the last 6 years, H-IB status, and are ineligible for another full six year stay as an H-IB; or

(f) beneficiaries who have been counted once toward the numerical limit, and are the beneficiary of multiple petitions.

It is noted that section 103 of the law amends section 214(g)(6) of the Act as follows. An H-IB worker not previously counted toward the annual cap who leaves the employment of an institution of higher education or a related or affiliated non-profit entity to work as an H-IB at an employer other than one defined in Section 214(g)(5) of the Act will be counted toward the annual cap at that time.

C.  AC21 104(c) - "One -Time Protection" Benefits Extension of H-IB Status Permitted where Adjustment Pending under Per Country Limitations

The AC21 104(c) enables H-IB nonimmigrants with approved I-140 petitions who are unable to adjust status because of per-country limits to be eligible to extend their H-IB nonimmigrant status until their application for adjustment of status has been adjudicated. An H-1B nonimmigrant is eligible for this benefit even if he or she has exhausted the maximum 6-year period of authorized stay for H-1B nonimmigrants under 8 U.S.C. 1184(g)(4), INA 214(g)(4). The statute states that the beneficiary must:

(a) have a petition filed on his or her behalf for a preference status under INA 203(b)(1), (2), or (3) (an employment based ("EB") petition); and

(b) be eligible to be granted that status except for the per-country limitations.

Any H-IB nonimmigrant who meets the statutory requirements above may be approved as the beneficiary of a request for an extension of H-IB nonimmigrant status until a decision is made on the nonimmigrant's application for adjustment of status.

**1.  Procedure for processing "one -time protection" benefits**

In order for a nonimmigrant to obtain an extension of H-IB nonimmigrant status under AC21 104(c), a petitioner must file a Form I- 129, Petition for Nonimmigrant Worker, with the appropriate signature, fees, and supporting documentation on behalf of the nonimmigrant. Existing guidelines in the instructions to the Form I-129W, "H-IB Data Collection and Filing Fee Exemption" for payment of the $1,000 H-IB Nonimmigrant Petitioner Account Fee shall be followed. For example, if the petitioner is a nonprofit research organization or the petition is a second or subsequent request for extension of stay filed by that petitioner on behalf of that beneficiary, the petitioner is exempt from payment of the $1,000 H-IB Nonimmigrant Petitioner Account Fee. If the petition and request for extension of stay are otherwise approvable, adjudicating officers shall not deny a petition because the nonimmigrant has exhausted the maximum 6-year limit provided for by INA 214(g)(4). Extensions of stay under AC21 104(c) shall be made in increments of three years.

The status of a dependent of an H-IB nonimmigrant is derivative of and linked to the status of the principal H-IB nonimmigrant. Therefore, dependents are eligible for H-4 status upon the

filing of an H-IB petition on behalf of the principal alien and the filing of a Form I-539, Application to Extend/Change Nonimmigrant Status with filing fee and all necessary supporting documentation for the dependent. Dependents should be advised to file the Form I-539 concurrently, whenever possible, with the H-IB petition filed on behalf of the principal H-IB nonimmigrant.

D. AC21 105 -- Visa portability

The AC21 105 provides that a nonimmigrant who was previously issued an H-IB visa or provided H-1B nonimmigrant status may begin working for a new H-IB employer as soon as that new employer files a "nonfrivolous" H-IB petition on the nonimmigrant's behalf, if:

(a) the nonimmigrant was lawfully admitted to the United States;
(b) the nonfrivolous petition for new employment was filed before the end of their period of authorized stay; and
(c) the nonimmigrant has not been employed without authorization since his lawful admission to the United States, and before the filing of the nonfrivolous petition.

The status of a dependent of a principal nonimmigrant that is working pursuant to portability benefits is derivative of and linked to the status of the principal nonimmigrant. Therefore, dependents will remain in H-4 status if the principal nonimmigrant is lawfully working pursuant to portability benefits. There are four contexts in which the question of whether a nonimmigrant has lawfully worked or maintained lawful status under the 105 portability provisions may arise:

(a) Adjustment of status, when determining whether a nonimmigrant has maintained lawful status or engaged in unauthorized employment; or
(b) Request for extension of stay, when determining whether a nonimmigrant has maintained lawful status; or
(c) Request for change of nonimmigrant status, when determining whether a nonimmigrant has continued to maintain' status; or
(d) Removal proceedings under INA 237(a)(1)(C)(i), failure to maintain nonimmigrant status.

Until the Service promulgates final regulations addressing the above questions, Service personnel shall consult with Tracy Renaud/Headquarters Immigration Services Division on a case by case basis before denying benefits or issuing Notices to Appear (NTA's) on the grounds that the nonimmigrant was not lawfully working or maintaining lawful status under the requirements of the AC21 105 portability provisions. Headquarters may direct Service personnel to hold certain applications in abeyance until a final regulation becomes effective, permitting adjudication of the application. It should be noted that 8 C.F.R. 214.1(c)(4) and 8 C.F.R 248.1 (b) permit the discretionary excuse, in certain circumstances, of a nonimmigrant's failure to timely file a request for an extension of stay or change of status, and may be applicable in some cases involving portability provisions.

The Service is formulating a proposed regulation to address the AC21 105 portability provisions. One key issue involves the scope of the portability provisions. On the one hand,

Congress does not appear to have limited portability benefits only to those who are working lawfully in H-1B status at the time a new employer files a new H-1B petition on their behalf. Nor, on the other hand, does Congress appear to have extended portability benefits to any alien who has ever held H-1B status, no matter how long ago or what the alien's current status in the United States. The Service expects, therefore, to propose a rule that would afford H-1B beneficiaries, who are no longer working for the initial H-1B employer, some reasonable period of time such as 60 days after leaving the initial H-1B employer to begin working for a new H-1B petitioning employer under the portability provisions. It is important to note that such a proposed rule would not, of course, take effect until it has been published as a final rule, after notice and comment, and any revisions. This prospective statement of policy is provided solely for informational purposes to Service personnel and shall not be utilized as a standard of adjudication in cases involving portability issues, unless and until promulgation of a final rule implementing AC21 105 with such an interpretation. Service personnel will be notified of any changes in the processing of AC21 benefits that may occur upon the effective date of a final rule.

## 1. Admission Procedures for Nonimmigrants Claiming Portability

The following procedures reflect the Service's January 29, 2001, memo. An H-1B applicant for admission who is no longer working for the original petitioner is admissible at a Port of Entry (POE) pursuant to the portability provisions, upon presentation of the following evidence:

(a) that the applicant is otherwise admissible;

(b) that the applicant, unless exempt, is in possession of a valid, unexpired passport and visa (including a valid, unexpired visa endorsed with the name of the original petitioner);

(c) that the applicant was previously admitted as an H-1B or otherwise accorded H-1B status. If a visa exempt applicant is not in possession of the previously issued Form I-94, Arrival/Departure Record, or a copy of the previously issued I-94, the applicant may present a copy of the Form I-797, Notice of Action, with the original petition's validity dates; and

(d) that an H-1B petition was timely filed on behalf of the applicant, before expiration of the validity dates of the applicant's previously authorized period of stay. This evidence shall be in the form of a copy of a dated Form I-797 receipt notice reflecting that a new petition has been filed, or other credible evidence of timely filing that is validated through a CLAIMS query.

The nonimmigrant applicant is admissible to the validity date of the previously approved petition, plus 10 days.

Applicants for admission who are dependents of nonimmigrants working pursuant to portability must present the following evidence when seeking admission at a POE:

(a) that the dependent is otherwise admissible;

(b) that the dependent is in possession of a valid, unexpired passport and visa, unless exempt;

(c) that the principal nonimmigrant on whom the applicant is dependent was previously admitted as an H-1B or otherwise accorded H-1B status. If the principal nonimmigrant was visa exempt and not in possession of the previously issued Form I-94,

Arrival/Departure Record, or a copy of the previously issued I-94, the applicant may present a copy of the principal nonimmigrant's Form I-797, Notice of Action, with the original petition's validity dates; and

(d) that an H-IB petition was timely filed on behalf of the principal nonimmigrant on whom the applicant is dependant, before expiration of the validity dates of the principal nonimmigrant's previously authorized period of stay. This evidence shall be in the form of a copy of a dated Form I-797 receipt notice reflecting that a new H-IB petition has been filed, or other credible evidence of timely filing that is validated through a CLAIMS query.

**a. The applicant does not present evidence that an H-IB petition has been timely filed on behalf of the principal nonimmigrant**

If the applicant is not in possession of a copy of the Form I-797, or a query of CLAIMS shows no evidence that an H-IB petition has been timely filed, the applicant is not admissible and should be processed accordingly. Generally, an applicant who lacks evidence of a pending H-IB petition should not be processed as an expedited removal unless there is evidence of fraud or misrepresentation.

**b. The validity dates of the applicant's previously approved nonimmigrant petition have expired**

If the validity dates of the applicant's previously approved nonimmigrant petition have expired, and the applicant does not present evidence that the new H-IB petition has been approved, he is not admissible under these provisions and should be processed accordingly. Generally, an alien whose petition has expired should not be processed as an expedited removal unless there is evidence of fraud or misrepresentation.

E.  AC21 106 -- Special Provisions in Cases of Lengthy Adjudication

AC21 106 permits H-IB nonimmigrants to obtain an extension of H-1B status beyond the 6-year maximum period, when:

(a) the H-IB nonimmigrant is the beneficiary of an employment based (EB) immigrant petition or an application for adjustment of status; and

(b) 365 days or more have passed since the filing of a labor certification application, Form ETA 750, that is required for the alien to obtain status as an EB immigrant, or 365 days or more have passed since the filing of the EB immigrant petition.

The Attorney General is required to grant the extension of stay of such H-IB nonimmigrants in 1-year increments, until a final decision is made on the H-1B nonimmigrant's lawful permanent residence.

**1. Procedures for Obtaining Extension of Status in Cases of Lengthy Adjudication**

In order for an H-1B nonimmigrant to receive an extension of stay under AC21 106 beyond the maximum 6-year limit, a petitioner must file a Form I-129 on behalf of the nonimmigrant beneficiary. The petitioner may be either the beneficiary's current employer or a new employer. If the H-1B petition is approved, the petition will be valid for a period of 1 year. One-year extensions of the beneficiary's H-lB status may continue until a final decision is made on the alien's lawful permanent resident status. A petitioner is required to file a new Form I-129 and pay the $110 filing fee for the request for a 1-year extension of status under AC21 106. Existing guidelines in the instructions to the Form I-129W for payment of the $1,000 H-lB Nonimmigrant Petitioner Account Fee shall be followed. For example, if the petitioner is a nonprofit research organization or the petition is a second or subsequent request for extension of stay filed by that petitioner on behalf of that beneficiary, the petitioner is exempt from payment of the $1,000 H-1B Nonimmigrant Petitioner Account Fee.

The status of a dependent of an H-lB nonimmigrant is derivative of and linked to the status of the principal H- 1B nonimmigrant. Therefore, dependents are eligible for H-4 status upon the filing of an H- 1B petition on behalf of the principal alien, and the filing of a Form I-539 with filing fee and all necessary supporting documentation for the dependent. Dependents should be advised to file the Form I-539 concurrently, whenever possible, with the H- 1B petition filed on behalf of the principal H- 1B nonimmigrant.

F.  AC21 106(c) - Change of Employment Permitted in Cases of Lengthy Adjustment Adjudication

The AC21 106(c) provides that the certification or Form I-140 approval of an EB immigrant petition shall remain valid when an alien changes jobs, if:

(a) a Form I485, Application to Adjust Status, on the basis of the EB immigrant petition has been filed and remained unadjudicated for 180 days or more; and
(b) the new job is in the same or similar occupational classification as the job for which the certification or approval was initially made.

**1. Procedures for Processing Benefits under AC21 106(c)**

If an alien has complied with the above statutory requirements, adjudicators shall not deny applications for adjustment of status on the basis that the alien has changed jobs. Under present practices it is expected that an I-485 applicant notify the Service when they no longer intend to enter into employment with the employer who sponsored them on the I-140 petition. The Service should continue to expect the applicant to submit a letter notifying INS of this change in intent, if the Adjudicator has reason to believe that the applicant's intent has changed a Request for Evidence (RFE) may be issued to clarify the applicant's intent in regards to employment.

In instances where the applicant no longer intends to be employed by the employer who sponsored him/her on the I-140, the Service should request a letter of employment from the new

employer. The letter from the new employer verifying that the job offer exists should contain the new job title, job description and salary. This information is necessary to determine whether the new job is in the same or similar occupation and to determine whether the alien is admissible under the public charge ground of inadmissibility at INA 8212(a)(4). To determine whether a new job is in the same or similar occupational classification as the original job for which the certification or approval was initially made, the adjudicating officer may consult the Department of Labor's Dictionary of Occupational Titles or its online O'NET classification system or similar publications.

The Service is currently formulating proposed regulations to establish a policy framework in which to adjudicate AC21 106(c) benefits. Until the Service promulgates final regulations establishing such a policy framework, adjudicators shall consult, on a case by case basis, with Headquarters before denying cases on the basis that the new job is not in the same or similar classification.

## G. AC21 108 -- Recovery of Visas Obtained Fraudulently

The AC21 108 provides that when approval of an H-IB petition is revoked on the basis of fraud or the willful misrepresentation of a material fact, one number shall be restored to the H-IB cap in the FY in which the petition is revoked, regardless of the FY in which the petition was actually approved.

Any revocation based on fraud or misrepresentation must be updated correctly in CLAIMS, and the proper correspondence shall be sent to the petitioner.

## H. Extensions of Stay beyond the 6-Year Maximum Period of Stay and Unlawful Presence

As described above, AC21 provides for the extension of H-IB status in cases where an alien's immigrant visa petition or adjustment of status application is pending due to the per-country limitation on visas, or due to a lengthy adjudication process. Therefore, it is possible that an H-IB nonimmigrant may stay beyond the 6-year maximum period of stay * defined at INA 214(g)(4), yet remain in status under the AC21 provisions. As long as aliens in these circumstances remain in a period of stay authorized through extensions of nonimmigrant stay, they do not accrue unlawful presence.

* Petitions for Department of Defense projects may be extended to 10 years.

### III. OTHER LEGISLATION AFFECTING THE H-IB NONIMMIGRANT CLASSICATION

A. Public Law 106-31I- Increase of the H-IB Nonimmigrant Petitioner Fee from $500 to $1,000

This law raises the H-IB Nonimmigrant Petitioner Fee from $500 to $1,000 effective 60 days after enactment. The law was enacted on October 17, 2000. Therefore, unless exempt by statute from the H-1B Nonimmigrant Petitioner Fee, all Form I-129 H-1B petitions received by the Service on or after December 17, 2000, must be accompanied by the increased H-IB Nonimmigrant Petitioner Fee of $1,000. There are no provisions in the law for waiving the $1,000 H-IB Nonimmigrant Petitioner Fee.

The employer continues to be precluded from requiring an alien beneficiary to reimburse or otherwise compensate the employer for all or part of the H-IB Nonimmigrant Petitioner Fee. The petitioner may submit separate checks or one single remittance to cover the usual filing fee for the Form I-129 and the H-IB Nonimmigrant Petitioner Fee.

Under Public Law 106-311, the following employers are exempt from the H-IB Nonimmigrant Petitioner Fee, effective October 17, 2000:

(a) a primary or secondary educational institution;
(b) an institution of higher education, as defined in section 101 (a) of the Higher Education Act of 1965, 20 U.S:C. Sec. 1001(a);
(c) a nonprofit entity related to or affiliated with an institution of higher education;
(d) a nonprofit entity which engages in established curriculum-related clinical training of students at an institution of higher education;
(e) a nonprofit research organization; or
(f) a governmental research organization.

Guidance on these provisions will be forthcoming in regulation.

B. Public Law 106-396 - Exemption of Certain Employers from Requirement to File Amended Petitions

Under the provisions of this law, amended H-IB petitions are not required when the petitioning employer is involved in a corporate restructuring where:

(a) the new corporate entity succeeds to the interests and obligations of the original petitioning employer; and
(b) the terms and conditions of employment remain the same, except for the identity of the petitioner.

The eligible forms of corporate restructuring may include, but are not limited to, mergers, acquisitions or consolidations. Forthcoming regulations will define the eligible forms of corporate restructuring, and the type of evidence required, including the manner in which that evidence should be submitted for extension of stay requests by the new corporate entity.

The statute requires no affirmative action on the part of the employer in these corporate restructuring scenarios. In these instances, the previous approval and previously issued approval notice remain valid. Therefore, the Service will not issue amended approval notices bearing the new company name. Although not necessary, if an employer wishes to obtain an approval notice bearing the new company name, the appropriate procedure for obtaining a new approval notice will continue to be through the filing of an amended Form I-129 with fee.

1. **Admission Procedures for H-1B Nonimmigrants Working for Employers Claiming Exemption from the Requirement to file Amended H-1B Petitions**

An H-1B applicant for admission who no longer works for the original H-1B petitioner and now works for a new corporate entity claiming exemption from the requirement to file an amended H-1B petition may be admitted at a POE if:

   (a) he is otherwise admissible;

   (b) unless exempt, he is in possession of a valid, unexpired passport and nonimmigrant visa; and

   (c) he presents a letter from the new corporate entity stating that:

      (i)    the new corporate entity has succeeded to the interests and obligations of the original H-1B petitioning employer; and

      (ii)   the terms and conditions of employment of the H-1B nonimmigrant remain the same.

Questions regarding this memorandum may be directed to Tracy Renaud, Immigration Services Division at (202) 305-8010.