**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FREDERICK MAWALLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-1538 (EGS) |
| v. | ) |
| | ) |
| LINDA HOFFMAN, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

This case involves a malpractice action by a former client against his immigration attorneys.  Defendants have moved to dismiss.  The Court held a hearing on this motion on July 31, 2008.  Upon consideration of the motion, the response and reply thereto, the arguments presented at oral argument, and the applicable law, the Court finds that Plaintiff's complaint fails to state a claim upon which relief can be granted and therefore Defendant's Motion is **GRANTED.**

## I.  Background

Plaintiff Frederick Mawalla is a native of Tanzania.  Compl. ¶ 1.  In 2001, Mr. Mawalla was employed as a satellite engineer at Intelsat, a multi-national corporation based in Washington, D.C.  *Id.* ¶ 2.  During this time, Mr. Mawalla was a G-4 visa holder as an Intelsat employee.  *Id.*  In 2001, Intelsat agreed to sponsor employees with G-4 visas who wished to change their immigration status to legal permanent residents.  *Id.* ¶ 3.

Intelsat notified its employees that it would pay for legal and filing fees associated with the application for permanent residency if Defendants Linda Hoffman and the law firm Freilicher & Hoffman, P.C. were retained as counsel ("Ms. Hoffman" or "Defendants").  *Id.*  If employees wished to seek other counsel they were to pay their own legal fees.  *Id.*  Mr. Mawalla followed Intelsat's recommendation and contacted Ms. Hoffman and Freilicher & Hoffman, P.C.  *Id.*  ¶ 4.

Intelsat filed an Application for Alien Employment Certification on Mr. Mawalla's behalf, which was certified by the Department of Labor on March 18, 2002.  *Id.* ¶ 19.  On May 15, 2002, Intelsat also filed an Immigrant Petition for Alien Worker, form I-140 on Mr. Mawalla's behalf.  *Id.* ¶ 20.  In November 2002, Intelsat terminated Mr. Mawalla's employment pursuant to a reduction in force.  *Id.* ¶ 5.  Intelsat recognized the potential hardship this reduction could cause to its foreign employees relating to immigration procedures and agreed to reimburse employees requiring immigration assistance up to $750 towards potential legal fees.  *Id.* ¶ 23.  On December 20, 2002, Mr. Mawalla met with Ms. Hoffman to discuss options for staying in the United States after his termination from Intelsat.  Ms. Hoffman advised Mr. Mawalla that since he had lost his job, he was no longer eligible for an adjustment of status to permanent resident and that his only option to remain in the United States

was to change his status to a B-2 visitor visa.  *Id*. ¶ 25.  Mr. Mawalla subsequently executed a retainer agreement with Ms. Hoffman on January 23, 2003.  Ms. Hoffman was "engaged to assist Mr. Mawalla in changing his status to a holder of [a] B-2 visitor visa."  *Id*. ¶¶ 25-26.

In early 2003, Defendants filed an Application to Extend/Change Non-Immigrant Status (form I-539) and applied for a B-2 temporary visitor visa to grant Plaintiff additional time in the United States.  *Id*. ¶ 27.  Plaintiff alleges that the first Form I-539 was denied because it was submitted without Mr. Mawalla's signature and the second was denied because it was untimely.  *Id*.  The Immigration Service made a final denial of Mr. Mawalla's Form I-539 sometime in the summer of 2003.  *Id*. Later in 2003, Plaintiff discharged Defendants as counsel and sought advice from two other immigration attorneys.  *Id*. ¶¶ 28, 30, 32.  These attorneys were also unsuccessful in changing Mr. Mawalla's immigration status.  *Id*. ¶¶ 30, 35.

On August 20, 2007, Mr. Mawalla brought this legal malpractice action against Defendants Ms. Hoffman and her law firm Freilicher & Hoffman, P.C., alleging that Ms. Hoffman and her firm committed professional malpractice (Count I) and breached their fiduciary duty to Mr. Mawalla (Count II).  As to professional malpractice, Plaintiff claims that Defendants failed to exercise the degree of care and diligence in pursuing Mr.

3

Mawalla's immigration claims as used by attorneys engaged in the practice of law because Defendants failed to timely file the Form I-539 with immigration authorities and failed to promptly advise Plaintiff of his available immigration-related options. Concerning the breach of fiduciary duty claim, Mr. Mawalla contends that Defendants breached this duty because they failed to timely file the aforementioned immigration paperwork, there was a conflict of interest with Intelsat, and that Defendants "sabotaged" Mr. Mawalla's immigration case in order to further the interests of Intelsat.  Plaintiff seeks $1,000,000 in damages plus interest and costs for economic and emotional harm suffered as a result of the alleged malpractice.  Defendants move to dismiss, arguing that Mr. Mawalla's claim is barred by the statute of limitations, is untimely, insufficiently plead, and fails to state a cause of action.

## II.  Standard of Review

Under Federal Rule of  Civil Procedure 12(b)(6), a complaint will be dismissed for failure to state a claim if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that will entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Perez v. Goldin*, 360 F. Supp. 2d 12, 15 (D.D.C. 2003).  When considering a motion to dismiss, courts construe the complaint in the light most favorable to the plaintiff and accept the complaint's allegations as true.

4

*Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 16-17 (D.C. Cir. 2008); *Hosey v. Jacobik*, 966 F. Supp. 12, 13 (D.D.C. 1997).

## III. Discussion

Plaintiff has set forth two claims.  The first is for legal malpractice based on the alleged failure to advise Mr. Mawalla of his immigration options and the allegedly improper or untimely filing of certain immigration forms in early 2003 that resulted in the denial of Plaintiff's application for a B-2 visitor visa. Plaintiff's second claim is for a breach of fiduciary duty concerning the same filing of forms referenced in the malpractice count, as well as an alleged conflict of interest, and an unspecified claim that Defendants "sabotaged Mr. Mawalla's immigration case in order to further the interests of Intelsat." In this Count, Mr. Mawalla also alleges that on August 20, 2004, Defendants "knowingly engaged in conduct that made it impossible for Mr. Mawalla to adjust his status."  Compl. ¶ 50.  Construing the complaint in the light most favorable to the Plaintiff, the Court finds that Plaintiff's malpractice claim is time-barred. The Court further finds that Plaintiff's breach of fiduciary duty claim must also be dismissed because Plaintiff has failed to allege an injury proximately caused by the acts or omissions of his former counsel.

**a. Legal Malpractice Claim**

Under District of Columbia law, a legal malpractice claim must be brought within three years "from the time the right to maintain the cause of action accrues." D.C. Code § 12-301(8) (2008); *Fort Myers Seafood Packers, Inc. v. Steptoe & Johnson*, 381 F.2d 261, 262 (D.C. Cir. 1967), *cert. denied*, 390 U.S. 946 (1968); *Knight v. Furlow*, 553 A.2d 1232, 1233 (D.C. 1989). The essential elements of a claim of legal malpractice are that 1) there is an attorney-client relationship; 2) the attorney neglected a reasonable duty and 3) the attorney's negligence resulted in and was the proximate cause of a loss to the client. *Chase v. Gilbert*, 499 A.2d 1203, 1211-12 (D.C. 1985). In the District of Columbia, it has long been the rule that when an attorney is accused of negligence in the conduct of litigation, that attorney is not liable for negligence if, notwithstanding the negligence, the client had no cause of action or meritorious defense. *Macktal v. Garde*, 111 F. Supp. 2d 18, 21 (D.D.C. 2000). If the conduct of an attorney with respect to litigation results in no damage to his client, then the attorney is not liable. *See Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. 1949).

The majority of conduct that Plaintiff alleges took place in 2002 and 2003 and is therefore barred by the three year statute of limitations for malpractice actions. The alleged failures of Defendants surrounding the filing of Mr. Mawalla's I-539

6

application for a visitor visa took place in early 2003.  As
stated in the complaint, Mr. Mawalla was notified that his
application was denied in the summer of 2003, after which he
discharged Defendants, and retained new counsel in "late 2003."
Accordingly, Mr. Mawalla was, or should have been, aware of any
injury caused by Defendants pertaining to his application to
change his status to a B-2 visitor visa in late 2003 when his
application was denied and he chose to retain new counsel.  Mr.
Mawalla does not allege in his complaint that he did not know
about, or could not have discovered these claims before August
20, 2004.  Accordingly, because he filed this case on August 20,
2007, the malpractice claim is untimely.

    **b.    Breach of Fiduciary Duty Claims**

A cause of action for breach of fiduciary duty includes
breaches of the duty of loyalty or the duty of care.  Where acts
are alleged to be adverse to a former client, a plaintiff must
show an actual fiduciary breach that was the cause of the
resulting injury.  Mallen & Smith, *Legal Malpractice*, §17.28, at
1085-86.  The statute of limitations applicable to the breach of
fiduciary action is also three years.  D.C. Code § 12-301(8).  In
professional malpractice cases, additional claims which are based
on the underlying malpractice claim cannot survive if the
professional malpractice claim fails.  *Macktal v. Garde*, 111 F.
Supp. 2d 18, 23 (D.D.C. 2000).

As indicated above, Mr. Mawalla alleges that Defendants' breached their fiduciary duty through the misfiling of the I-539 visitor visa forms, an alleged conflict of interest, and by advising Intelsat to withdraw the I-140 petition it had filed on Mr. Mawalla's behalf.  The Court has already dismissed the claims concerning the visitor visa forms as time-barred.  The Court further finds that Mr. Mawalla's conflict of interest claim is also time-barred.  According to the allegations in the complaint, Plaintiff knew that Defendants were Intelsat's attorneys as of 2001.  He sets forth no facts or allegations in the complaint that he did not know, nor could not have known, of a potential conflict of interest until August 20, 2004.  In fact, Mr. Mawalla alleges in paragraph 47 of the complaint that his interests became incompatible with Intelsat's interests from the moment they terminated his employment in 2002.  Accordingly, Mr. Mawalla was on notice of any potentially actionable conflict of interest as of 2002 and this claim is also barred by the statute of limitations.

The only remaining conduct that is arguably not time barred is Mr. Mawalla's allegation that on August 20, 2004, precisely three years to the day before this complaint was filed, Intelsat sent a letter to the immigration authorities withdrawing the I-140 petition it had filed on Mr. Mawalla's behalf in 2002. According to the Plaintiff, an immigrant seeking to adjust his

8

status to legal permanent residency must have an I-140 form from a sponsoring employer on file with the immigration authorities. After an I-140 petition and an I-485 application to adjust status have been pending for 180 days, an immigrant has the opportunity to adjust even if the I-140 is later withdrawn.  Mr. Mawalla contends that Intelsat withdrew its I-140 upon the advice of Defendants and did so with the intent to "sabotage" his efforts to adjust his status.  He contends that if Intelsat had not withdrawn his petition "on the eve of the expiration of the 180-day period, Mr. Mawalla's I-485 would have been approved and he would have successfully adjusted his status" to that of legal permanent resident.

This claim also fails.  In his opposition, Plaintiff concedes that Intelsat had the right to withdraw the I-140 petition because Mr. Mawalla no longer worked there, and had not worked there for nearly two years.  Accordingly, whether or not Defendants instructed Intelsat to withdraw the petition is immaterial, as Intelsat was arguably obligated to withdraw the petition as soon as Mr. Mawalla's employment ceased. Furthermore, according to the allegations in the complaint, Mr. Mawalla himself put the immigration authorities on notice in early 2003 that he no longer worked at Intelsat when he filed his application to change his status to a visitor visa.  Plaintiff does not dispute that he was statutorily ineligible to adjust his

status long before Intelsat actually withdrew his I-140 petition.
Accordingly, Plaintiff's contention that he would have been able
to adjust his status based on a petition from an employer for
whom he no longer worked is nothing more than hope that his
application would have somehow slipped through the cracks.
Plaintiff's claim amounts to mere speculation that the
authorities would not have compared his pending I-140 petition
with his later filed application for a visitor visa indicating he
was no longer employed.

Mr. Mawalla did not allege in the complaint that he had
secured substitute employment such that he could have adjusted
his immigration status based on a new employer.  Nor did Mr.
Mawalla allege that Defendants had any knowledge that Plaintiff,
through successor counsel, had filed an adjustment application in
April 2004, based on a job that had terminated one and a half
years earlier.  At the hearing on this Motion, Plaintiff conceded
that no immigration attorney could have done anything to enable
him to adjust his status because he lacked appropriate substitute
employment.  Accordingly, Plaintiff has failed to allege that
Defendants caused him any injury when Intelsat withdrew its I-140
petition and this claim fails as a matter of law.

## IV.  Conclusion

For the reasons stated herein, the Court finds that
Plaintiff's malpractice claim is time-barred.  The Court further

finds that Plaintiff has failed to set forth any facts that, if true, would constitute a breach of fiduciary duty on the part of Defendants and therefore this claim fails as a matter of law. Accordingly, Defendants' motion is **GRANTED** and this case is dismissed. An appropriate Order accompanies this Memorandum Opinion.


**Signed:    Emmet G. Sullivan**
        **United States District Judge**
        **August 8, 2008**